**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ALEXANDER KESTENBAUM and STUDENTS AGAINST ANTISEMITISM, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE, <br> Defendant. | Case No. 1:24-cv-10092-RGS <br><br><br> Leave to file granted on April 29, 2024 |

**REPLY MEMORANDUM IN SUPPORT OF**
**HARVARD'S MOTION TO DISMISS AND MOTION TO STRIKE**

i

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.    PLAINTIFFS LACK STANDING TO PURSUE THEIR PREMATURE CLAIMS ............... 2

    A.    Plaintiffs' Claims Are Not Ripe ............................................................ 3

    B.    Plaintiffs Have No Justiciable Claim For Injunctive Relief ................... 4

    C.    SAA Lacks Standing ............................................................................. 7

II.   PLAINTIFFS' INJUNCTION AND PUNITIVE DAMAGES REQUESTS
      SHOULD BE STRUCK ...................................................................................... 8

III.  PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE INTENTIONAL
      DISCRIMINATION OR A CONTRACT VIOLATION ............................................. 11

    A.    Harvard Was Not Deliberately Indifferent As A Mater Of Law ............. 11

    B.    Plaintiffs Fail To Plead Discriminatory Animus ................................... 13

    C.    Plaintiffs Fail To Plead A Contract Claim ............................................ 14

CONCLUSION .................................................................................................... 15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Algonquin Gas Transmission, LLC v. Weymouth, Mass.*,
    919 F.3d 54 (1st Cir. 2019)......................................................................................3

*Allen v. Wright*,
    468 U.S. 737 (1984)..............................................................................................6

*Beaudreau v. Berryhill*,
    2017 WL 2656104 (D. N.H. June 20, 2017)......................................................2

*Boston Parent Coalition for Academic Excellence Corp. v. School Committee*,
    89 F.4th 46 (1st Cir. 2023)....................................................................................8

*Brown v. Hot, Sexy & Safer Products, Inc.*,
    68 F.3d 525 (1st Cir. 1995)............................................................................7, 13

*Brown v. Suffolk University*,
    2021 WL 2785047 (D. Mass. Mar. 31, 2021)..................................................14

*Brown v. Trustees of Boston University*,
    891 F.2d 337 (1st Cir. 1989)................................................................................9

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)................................................................................................5

*Clapper v. Amnesty International*,
    568 U.S. 398 (2013)..............................................................................................5

*Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*,
    551 F.3d 10 (1st Cir. 2008)................................................................................11

*Connor B. ex rel. Vigurs v. Patrick*,
    771 F. Supp. 2d 142 (D. Mass. 2011) ................................................................5

*Czerwienski v. Harvard University*,
    666 F. Supp. 3d 49 (D. Mass. Mar. 31, 2023) ................................................15

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)..............................................................................................7

*Dantzler, Inc. v. Empresas Barrios Inventory & Operations, Inc.*,
    958 F.3d 38 (1st Cir. 2020)..................................................................................7

*Davis v. Monroe Board of Education*,
    526 U.S. 629 (1999)....................................................................................9, 10, 11

*Doe v. Amherst College*,
    238 F. Supp. 3d 195 (D. Mass. 2017) ..............................................................14

*Doe v. Brandeis University*,
    177 F. Supp. 3d 561 (D. Mass. 2016) ..............................................................15

*Doe v. Brown University,*
  43 F.4th 195 (1st Cir. 2022)............................................................................13, 14

*Doe v. County of Centre,*
  242 F.3d 437 (3d Cir. 2001)..................................................................................4

*Doe v. Stonehill College, Inc.,*
  55 F. 4th 302 (1st Cir. 2022)...............................................................................15

*Doe v. Trustees of Boston College,*
  942 F.3d 527 (1st Cir. 2019)................................................................................10

*Doe v. University of Tennessee,*
  186 F. Supp. 3d 788 (M.D. Tenn. 2016).................................................................6

*EEOC v. Aviation Port Services, LLC,*
  2020 WL 1550564 (D. Mass. Apr. 1, 2020)............................................................9

*Ernst & Young v. Depositors Economic Protection Corp.,*
  45 F.3d 530 (1st Cir. 1995)...................................................................................4

*Felber v. Yudof,*
  851 F. Supp. 2d 1182 (N.D. Cal. 2011).................................................................12

*Fuller v. City of Oakland,*
  47 F.3d 1522 (9th Cir. 1995)................................................................................13

*Garcia-Rubiera v. Fortuno,*
  727 F.3d 102 (1st Cir. 2013).................................................................................10

*Goldshteyn v. American Airlines,*
  2023 WL 9022560 (S.D. Fla. Dec. 29, 2023)...........................................................8

*Gonzalez v. United States,*
  284 F.3d 281 (1st Cir. 2002)..................................................................................2

*Grace v. Board of Trustees,*
  85 F.4th 1 (1st Cir. 2023)....................................................................................12

*Guckenberger v. Boston University,*
  957 F. Supp. 306 (D. Mass. 1997)..................................................................12, 13

*Hagenah v. Community Enterprises, Inc.,*
  2016 WL 1170963 (D. Mass. Mar. 23, 2016)...........................................................8

*Harris v. University of Massachusetts Lowell,*
  43 F.4th 187 (1st Cir. 2022)..................................................................................5

*Jumpfly, Inc. v. Torling,*
  2010 WL 1978732 (N.D. Ill. May 17, 2010)............................................................9

*Lewis v. Casey,*
  518 U.S. 343 (1996)...............................................................................................7

*Madsen v. Women's Health Center, Inc.,*
  512 U.S. 753 (1994)...............................................................................................9

*National Association of Government Employees v. Mulligan*,
  914 F. Supp. 2d 10 (D. Mass. 2012) ....................................................7, 8

*New Hampshire Motor Transport Association v. Rowe*,
  448 F.3d 66 (1st Cir. 2006)..............................................................8

*Norris on behalf of A.M. v. Cape Elizabeth School District*,
  969 F.3d 12 (1st Cir. 2020)..............................................................12

*Nutrition Distribution, LLC v. New Health Ventures, LLC*,
  2018 WL 1524488 (S.D. Cal. Mar. 27, 2018) ....................................9

*O'Rourke v. City of Providence*,
  235 F.3d 713 (1st Cir. 2001)............................................................13

*Plymouth County Nuclear Information Committee, Inc. v. Boston Edison Co.*,
  655 F.2d 15 (1st Cir. 1981)..............................................................9

*Pocono Mountain Charter School v. Pocono Mountain School District*,
  908 F. Supp. 2d 597 (M.D. Pa. 2012) ...............................................6

*Porto v. Town of Tewksbury*,
  488 F.3d 67 (1st Cir. 2007)..............................................................11

*Ramirez v. MGM Mirage, Inc.*,
  524 F. Supp. 2d 1226 (D. Nev. 2007) ...............................................9

*Reilly v. United States*,
  863 F.2d 149 (1st Cir. 1988)............................................................10

*Rhode Island Association of Realtors, Inc. v. Whitehouse*,
  199 F.3d 26 (1st Cir. 1999)..............................................................4

*Roe v. Healey*,
  78 F.4th 11 (1st Cir. 2023)...............................................................5

*Ruffino v. State Street Bank & Trust Co.*,
  908 F. Supp. 1019 (D. Mass. 1995) ..................................................6

*Sexual Minorities Uganda v. Lively*,
  960 F. Supp. 2d 304 (D. Mass. 2013) ...............................................8

*Shulse v. Western New England University*,
  2020 WL 4474274 (D. Mass. Aug. 4, 2020) ......................................14

*Sindi v. El-Moslimany*,
  896 F.3d 1 (1st Cir. 2018)................................................................9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)........................................................................6

*Texas v. United States*,
  523 U.S. 296 (1998)........................................................................3

*Warth v. Seldin*,
  422 U.S. 490 (1975).........................................................................7

*Zeno v. Pine Plains Central School District*,
    702 F.3d 655 (2d Cir. 2012)...................................................................................10, 11

## OTHER AUTHORITIES

2 Moore's Federal Practice § 12.37[3] ..............................................................................8

Reynolds, Gerald A., Assistant Secretary, Office for Civil Rights, U.S.
    Department of Education, Dear Colleague Letter (July 28, 2003) ...................................12

**INTRODUCTION**

In their Opposition to Harvard's Motion to Dismiss and Motion to Strike, ECF No. 43 ("Opp."), Plaintiffs seek to lay the nationwide surge of antisemitism at the feet of an institution working to ensure the safety of its community members while respecting the rights of students and faculty to engage in lawful protest and dissent.  Plaintiffs scoff at Harvard's suggestion that it takes time and care to address allegations of discrimination and harassment amid heightened tensions on campus.  And they dismiss as empty gestures the steps Harvard has taken to increase on-campus security, provide supportive measures to victims of harassment, enforce policies governing on-campus protests, and respond to complaints.  *See* Weenick Decl. ¶¶ 3-6; Whelsky Decl. ¶¶ 4-14; Ellsworth Decl. Ex. 3.

Article III limits on judicial power and standards for liability under Title VI and contract law are not a delay tactic or a "'trust-me' defense."  They are important guardrails that reserve the federal courts for ripe controversies with redressable claims.  This lawsuit has neither.

Dismissal under Rule 12(b)(1) is warranted.  Plaintiffs' claims are not ripe because Harvard is actively engaged in responding to the incidents about which Plaintiffs complain. Plaintiffs lack standing to seek injunctive relief because they rely on past harms rather than a "certainly impending" injury traceable to Harvard and redressable by the Court.  SAA also lacks standing because it cannot pursue individualized claims on its members' behalf.  Plaintiffs do not explain how their claims can overcome these impediments.  Instead, from its opening pages, the Opposition introduces a new theory that protesters camping on Harvard Yard "confirm[]" that "Harvard's response to antisemitism has been utterly insufficient," Opp.2—reflecting "Harvard's egregiously inadequate response," Opp.28; *see also* Opp.1, 4, 11-12, 15, 22, 23.  Plaintiffs repeatedly reference (Opp.11-12, 15, 19, 22, 28 n.33) the declaration of SAA Member 1, who speculates that "Harvard administrators do not intend to enforce Harvard's policies, including

those prohibiting the encampment." SAA Member 1 Decl. ¶ 13. Yet unfolding events have already shown otherwise. Harvard quickly initiated disciplinary proceedings against dozens of students for participating in the encampment, and Interim President Garber announced on May 6, 2024, that those "who participate in or perpetuate its continuation will be referred for involuntary leave from their Schools." *See* Declaration of Felicia Ellsworth in Support of Defendant's Reply Exs. 1, 2 ("Ellsworth Reply Decl."). Rather than proving (as Plaintiffs proclaim) that Harvard is deliberately indifferent to antisemitism on campus, these developments show the opposite and underscore the prematurity of Plaintiffs' claims.

Plaintiffs' demand for punitive damages and injunctive relief should be struck under Rule 12(f) because they are foreclosed by law. Despite Plaintiffs' efforts to obfuscate the nature of the relief they seek, these remedies remain unavailable.

Finally, Rule 12(b)(6) warrants dismissal of each of Plaintiffs' claims. Plaintiffs do not—and could not—plausibly allege that Harvard is deliberately indifferent to severe and pervasive harassment. They argue Harvard is not bound by the First Amendment to allow unfettered speech on campus but fail to grapple with Harvard's responsibility to respect student and faculty expression or explain why the Title VI standard should be applied differently to state versus private universities. Plaintiffs also fail to plead a discriminatory double standard or a contract claim, relying on inapposite cases that do not support liability in this case.

## ARGUMENT

### I. PLAINTIFFS LACK STANDING TO PURSUE THEIR PREMATURE CLAIMS

This Court should dismiss Plaintiffs' claims under Rule 12(b)(1), and, notwithstanding Plaintiffs' arguments to the contrary (Opp.22), it may consider Harvard's declarations in doing so. *Beaudreau v. Berryhill*, 2017 WL 2656104, at *1 n.1 (D. N.H. June 20, 2017); *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). Plaintiffs cite no authority holding that

declarations lack "evidentiary quality" and thus cannot be taken into account.  Indeed, they responded to Harvard's motion by introducing their own declaration.

Harvard's 12(b)(1) arguments are not intertwined with the merits.  The jurisdictional facts that render Plaintiffs' claims unripe and that counter Plaintiffs' allegations of an ongoing or future injury traceable to Harvard (the ongoing processes, disciplinary proceedings, and initiatives identified) can be decided by the Court without determining any merits question.

### A.    Plaintiffs' Claims Are Not Ripe

Plaintiffs' claims are premature because they challenge Harvard's ongoing response to shifting and developing events and its in-progress efforts to prevent and punish harassment while protecting free speech rights, including through its established disciplinary processes, direct engagement with students who raise concerns about discrimination, and development and rollout of new initiatives to combat antisemitism on campus.  These are not empty gestures to "avoid liability" (*contra* Opp.27), but concrete actions on which progress is being made steadily.  These actions also demonstrate that Plaintiffs' claims—which assume that Harvard's efforts will fail— hinge on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998).  This imposes a *jurisdictional* bar to considering Plaintiffs' claims.  *Algonquin Gas Transmission, LLC v. Weymouth, Mass.*, 919 F.3d 54, 62 (1st Cir. 2019) ("Article III principles require us to first ask 'whether the claim involves uncertain and contingent events[.]'").  And unlike in *Algonquin*, a decision for Plaintiffs would not "remove a principal impediment that stands in the way" of a lawful educational environment. *Id.* at 63.  It would instead allow them to dictate what Harvard must do to deliver the educational environment Plaintiffs prefer, without regard for Harvard's right to safeguard free expression or its responsibilities to community members with whom Plaintiffs disagree.

Recent events indeed confirm that it is too early to judge the efficacy—let alone legal sufficiency—of Harvard's response.  Notwithstanding Plaintiffs' claim that the current encampment in Harvard Yard "confirm[s]" that "Harvard's response to antisemitism has been utterly insufficient," Opp.2—reflecting "Harvard's egregiously inadequate response," Opp.28, Harvard has announced that encampment participants "will be referred for involuntary leave." Ellsworth Reply Decl. Ex. 2.  That announcement follows Harvard's filing of disciplinary charges against dozens of students for their participation in this policy violation.  *Id.* Ex. 1.  And Harvard has taken further action to protect the community and enforce its policies, including by firing the employee who sent disturbing emails to Kestenbaum, closing the Yard to the public and staffing security at its gates, and by suspending a student group for violating protest guidelines.  *Id.* Exs. 3-6.  Manifestations of antisemitism at Harvard are a moving target.  Indeed, with each submission Plaintiffs report new allegations that Harvard is in the process of dealing with.  To say the least, the legal issues in this case thus are "likely to be significantly affected by further factual development."  *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995).  And Plaintiffs have not shown that postponing resolution of their claims pending that factual development would cause hardship.  The cases they cite (Opp.28-29) involve self-censorship, *Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999), or a discriminatory process that effectively insulated a government program from review, *Doe v. County of Centre*, 242 F.3d 437, 453 (3d Cir. 2001).  None involves a defendant working to address plaintiffs' concerns as those plaintiffs "hurry the federal courts toward a tangled … adjudication that may, in the end, prove to be inutile."  *Ernst & Young*, 45 F.3d at 539.

### B.    Plaintiffs Have No Justiciable Claim For Injunctive Relief

The Court should dismiss the requested injunctive relief.  *First*, as Plaintiffs do not dispute, Kestenbaum's imminent graduation renders his injunctive claims "inescapably moot"

4

and requires their dismissal.  *Harris v. University of Mass. Lowell*, 43 F.4th 187, 192 (1st Cir. 2022); Whelsky Decl. ¶ 3.

Second, neither Kestenbaum nor SAA establishes a "certainly impending" injury supporting prospective relief.  They concede (Opp.20) that "past harm" cannot confer standing to seek an injunction absent "ongoing injury or a sufficient threat that the injury will recur."  *Roe v. Healey*, 78 F.4th 11, 21 (1st Cir. 2023).  Still, they argue (Opp.21) that their "enrollment at Harvard" coupled with Harvard's "continuing ineffective response to antisemitism in violation of its policies" establishes such an injury.  Plaintiffs are incorrect.  Their subjective prediction that Harvard's response will be "ineffective" does not establish an injury that is "certainly impending."  *Clapper v. Amnesty Int'l*, 568 U.S. 398, 410 (2013).  Plaintiffs do not put forward facts substantiating their claims that they "remain subject to … a regularly recurring pattern of activity targeted at them as Jews" or that "Harvard continuously fails to apply its own policies in a nondiscriminatory manner that causes them ongoing harm."  Opp.20-21 nn.23, 24 (quoting third-party criticisms of Harvard's response and asserting in conclusory fashion that Harvard's response has been insufficient).  Nor do their allegations of past harm translate to an "adequately pled ongoing injury [or] imminent risk of continued injury," Opp.21 & n.25, as they have not shown "a sufficient likelihood that [they] will again be wronged again in a similar way."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiffs' authorities (Opp.21) turned on facts demonstrating a stagnant institutional response or systemic failures that stand in stark contrast to the steps Harvard is taking to address the complex and shifting situation at the center of Plaintiffs' suit.  *See Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 152 (D. Mass. 2011) (standing to enjoin foster care practices due to "understaffed and improperly trained workforce" and "inability to provide children with basic

health and educational services"); *Doe v. University of Tenn.*, 186 F. Supp. 3d 788, 814 (M.D. Tenn. 2016) (standing to enjoin sexual assault procedures based on "*patterns* of bias in the proceedings and disregard for victims' rights").  And the cases Plaintiffs cite (Opp.20) do not relieve them of their burden to show Harvard's alleged conduct has affected each plaintiff "in a personal and individual way."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  One case found particularized harm to the student plaintiffs because each could establish personal injury traceable to discriminatory efforts to close their school.  *Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 908 F. Supp. 2d 597, 615 (M.D. Pa. 2012).  The other did not discuss standing at all. *Ruffino v. State St. Bank & Tr. Co.*, 908 F. Supp. 1019 (D. Mass. 1995).  Plaintiffs cannot rely on incidents that affected other people or controversial statements directed to no one in particular.

 *Third*, Plaintiffs cannot show any "certainly impending" injury traceable to Harvard. Plaintiffs claim (Opp.22) "the latest events in Harvard Yard … confirm that Harvard's unlawful conduct … will continue to injure [them]"—even though Harvard has announced that participants will be referred for involuntary leave and is at this very moment engaged in disciplinary proceedings regarding those events.  Ellsworth Reply Decl. Exs. 1-2.  It is apparent on the face of the Amended Complaint that the "line of causation between" Harvard's alleged "illegal conduct" and the harassment Plaintiffs allege at the hands of third parties is "attenuated at best."  *See Allen v. Wright*, 468 U.S. 737, 757 (1984).  Plaintiffs' own allegations—which identify the myriad ways in which Harvard has been responding to complaints of antisemitism, *e.g.*, AC ¶¶ 84-87, 96, 97, 99, 101, 117, 120, 124, 127-128, 147, 177, 195, 217, 225—and the uncontroverted evidence of Harvard's continuing efforts to prevent and punish harassment, Weenick Decl. ¶¶ 3-8, undermine any "direct causal connection" between the institutional

response Plaintiffs challenge and the harms they expect will befall them.  *Dantzler, Inc. v. Empresas Barrios Inventory & Ops., Inc.*, 958 F.3d 38, 47 (1st Cir. 2020).

*Lastly*, Plaintiffs have not established redressability because the injunction they request—which would install a monitor to superintend every policy and practice at every Harvard school to ensure that it does not disadvantage Jewish students "in any way," and would force Harvard to expel and terminate students and faculty and return donations—is unavailable as a matter of law. *See infra* Part II.  Contrary to Plaintiffs' suggestion (Opp.24 n.30), the principle that plaintiffs lack standing to seek overbroad remedies is not limited to gerrymandering cases; it applies to, and forecloses, Plaintiffs' claims.  *E.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (Commerce Clause case); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (prisoners' rights case).  Granting Plaintiffs "the benefit of all reasonable inferences" (Opp.23) does not transform their requested remedy into one the law would allow.

### C.      SAA Lacks Standing

SAA lacks standing to sue for its members because this lawsuit plainly requires the individualized participation of the students allegedly harmed.  *National Ass'n of Gov't Emps. v. Mulligan*, 914 F. Supp. 2d 10, 14 (D. Mass. 2012).  Plaintiffs do not dispute SAA lacks standing to seek damages.  *Warth v. Seldin*, 422 U.S. 490, 515-516 (1975) (association that "alleges no monetary injury to itself" "has no standing to claim damages on [member's] behalf").  Nor do Plaintiffs contest that their hostile environment claims require individualized inquiries into whether each member "subjectively perceive[d] the environment to be abusive."  *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 540-541 (1st Cir. 1995), *abrogated on other grounds by Martinez v. Cui*, 608 F.3d 54 (1st Cir. 2010).  Plaintiffs say (Opp.26) no individual participation is required because they challenge a "widespread practice" and "seek[] injunctive relief."  But even when an injunction is sought, "representational standing is inappropriate if adjudicating the

merits of an association's claim requires the court to engage in a 'fact-intensive-individual inquiry.'" *New Hampshire Mot. Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006).

SAA cannot escape an individualized inquiry here.  Indeed, Plaintiffs all but concede this point by relying upon evidence of SAA Member 1's subjective experience of the encampment in Harvard Yard.  As in *Mulligan*, the Court "cannot resolve the case without individualized consideration" of each SAA member's experience, because "a finding of discrimination against representative members will be an insufficient basis on which to ground … a judgment that all of the aggrieved [SAA] members were discriminated against."  914 F. Supp. 2d at 14.  Plaintiffs' authorities are distinguishable.  In *Boston Parent Coalition for Academic Excellence Corp. v. School Committee*, no individual participation was required "given the documented and apparently uncontested nature of the student-specific facts" at issue, "i.e., GPA and school preference."  89 F.4th 46, 55 (1st Cir. 2023).  And in *Sexual Minorities Uganda v. Lively*, the court permitted an LGBT rights group to seek an injunction against "persecution," a claim that did not require evidence of any individual plaintiff's subjective experience and did not rely on a showing that any individual plaintiff was treated differently when compared to a similarly situated individual.  960 F. Supp. 2d 304, 327 (D. Mass. 2013).

## II.    PLAINTIFFS' INJUNCTION AND PUNITIVE DAMAGES REQUESTS SHOULD BE STRUCK

It is black-letter law that "motions to strike requests for certain types of relief, such as punitive or compensatory damages, are generally granted if such relief is not recoverable under the applicable law."  2 Moore's Federal Practice § 12.37[3]; *Goldshteyn v. American Air.*, 2023 WL 9022560, at *1 (S.D. Fla. Dec. 29, 2023).  Courts accordingly strike remedies when, as here, they are unavailable.  *E.g.*, *Hagenah v. Community Enters., Inc.*, 2016 WL 1170963, at *8 (D. Mass. Mar. 23, 2016).  Plaintiffs do not dispute that punitive damages are unavailable, so that remedy should be struck.  And courts properly strike injunctive requests when the law forbids the

relief sought.  *E.g.*, *Plymouth Cnty. Nuclear Info. Comm., Inc. v. Boston Edison Co.*, 655 F.2d 15, 16 (1st Cir. 1981); *Jumpfly, Inc. v. Torling*, 2010 WL 1978732, at *3 (N.D. Ill. May 17, 2010); *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226, 1237-1238 (D. Nev. 2007).

Plaintiffs cannot seriously contend (Opp.30) that their request to enjoin "Harvard and its agents from establishing, implementing, instituting, maintaining, or executing policies, practices, procedures, or protocols that penalize or discriminate against Jewish students, including Kestenbaum and SAA's members, in any way," AC, Prayer for Relief, is "narrowly tailored to give only the relief to which plaintiffs are entitled," *Brown v. Trustees of Bos. Univ.*, 891 F.2d 337, 361 (1st Cir. 1989).  Plaintiffs' argument to the contrary notwithstanding (Opp.29), that narrow tailoring requirement is a "general rule" applicable to all injunctions.  *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).  And as in *Brown*, Plaintiffs flout this requirement and improperly seek to "embroil the courts in the University's internal affairs" by requesting an injunction that would essentially command Harvard to "obey the statute," 891 F.2d at 361, by not "penaliz[ing] or discriminat[ing] against Jewish students … in any way."  Courts must not enter an injunction that "'sweeps … more broadly than necessary'" by restraining the defendant in ways not necessary to afford plaintiffs complete relief.  *Sindi v. El-Moslimany*, 896 F.3d 1, 33-34 (1st Cir. 2018); *see EEOC v. Aviation Port Servs., LLC*, 2020 WL 1550564, at *12 (D. Mass. Apr. 1, 2020) (denying injunctive relief broader than necessary to benefit individual plaintiffs); *Nutrition Distrib., LLC v. New Health Ventures, LLC*, 2018 WL 1524488, at *4 (S.D. Cal. Mar. 27, 2018) (striking request to enjoin practices beyond those that harmed plaintiffs).

Plaintiffs also seek to avoid controlling law holding that Title VI does not authorize plaintiffs to make "particular remedial demands," *Davis v. Monroe Bd. of Educ.*, 526 U.S. 629, 648 (1999), by denying (Opp.30) that they "request 'specific remedial measures.'"  If Plaintiffs

are no longer seeking to force Harvard to take "disciplinary measures," including termination of administrators, faculty, and staff and expulsion of students; to decline and return donations; to institute required training; or to appoint a court monitor, AC, Prayer for Relief A(i)-(v), that is reason enough to strike those demands.  But contrary to Plaintiffs' claims (Opp. 30 n.35), those demands must also be struck under *Davis*.  *Davis* took pains to clarify that "victims of peer harassment" have no "right to make particular remedial demands," 526 U.S. at 648, in response to concerns that plaintiffs would induce "federal courts [to] administer school discipline" and become "the final arbiters of school policy," *id.* at 684-686 (Kennedy, J., dissenting).  Contrary to Plaintiffs' suggestion (Opp. 30 n.35), Harvard invokes its "right to select among various appropriate remedies" not as "a shield against liability," but as a basis for striking an injunctive demand that would improperly restrict Harvard to the particular remedies Plaintiffs request.  *Cf. Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 671 n.15 (2d Cir. 2012).  Such an injunction would contravene well-established principles of judicial deference to the judgment and autonomy of academic institutions, which must have "'flexibility to adopt diverse approaches to student discipline matters.'"  *Doe v. Trustees of Bos. Coll.*, 942 F.3d 527, 535 (1st Cir. 2019).

Finally, Plaintiffs cannot justify the preemptive appointment of a court-ordered monitor to superintend Harvard's compliance with the requested injunction.  Plaintiffs invoke Rule 53 (Opp.25) without acknowledging its well-defined limits: it does not support appointment of a monitor absent explicit statutory authorization, "some exceptional condition," difficult damages calculations, or an inability of the court to "proceed[] forward in a timely and effective manner." *Garcia-Rubiera v. Fortuno*, 727 F.3d 102, 114 (1st Cir. 2013).  Appointment of a technical advisor is likewise a "near-to-last resort" that "must arise out of some cognizable judicial need" presenting "the best of cause."  *Reilly v. United States*, 863 F.2d 149, 156-157 (1st Cir. 1988).

Plaintiffs identify no such need here, nor can a monitor be justified by the "prospect of noncompliance with a preliminary injunction"—no such injunction exists, and no allegations establish that Harvard is likely to resist compliance with any injunction.  *Cf. Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 13-14, 19 (1st Cir. 2008).

III.    **PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE INTENTIONAL DISCRIMINATION OR A CONTRACT VIOLATION**

A.    **Harvard Was Not Deliberately Indifferent As A Matter Of Law**

Plaintiffs' Title VI claim must be dismissed because Harvard's response to concerns about antisemitism on campus has not been, as a matter of law, "clearly unreasonable in light of the known circumstances."  *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007).  To the extent Plaintiffs suggest (Opp.10) that allegations of deliberate indifference must be weighed by a factfinder, they are wrong.  "[T]here is no reason why courts, on a motion to dismiss … could not identify a response as not 'clearly unreasonable' as a matter of law."  *Davis*, 526 U.S. at 649.  Because Plaintiffs' nonconclusory allegations do not establish that Harvard's response was "clearly unreasonable," their Title VI claim fails "as a matter of law."  *Id.*

Plaintiffs concede that Harvard has condemned antisemitic conduct, listened to student concerns, offered supportive resources, enforced policies, launched investigations and disciplinary proceedings, and made long-term commitments to addressing antisemitism.  *See, e.g.*, AC ¶¶ 68, 70, 84-87, 96-97, 99, 101, 117, 120, 124-128, 147, 177, 195, 217, 225.  Plaintiffs' frustration (Opp.11) that Harvard has not adopted their preferred approach or acted on their preferred timeline does not render Harvard's response "toothless" or insufficiently "meaningful[]," let alone deliberately indifferent.  And Harvard has not "continue[d] to use th[e] same methods to no avail," *cf. Zeno*, 702 F.3d at 669—it has continually reevaluated and worked to improve the methods it uses to address antisemitism.

Plaintiffs resist (Opp.12-14) the Department of Education's long-held position that Title VI "should not be interpreted in ways that would lead to the suppression of protected speech on public or private campuses." Gerald A. Reynolds, Assistant Sec'y, Off. for Civ. Rts., U.S. Dep't of Educ., Dear Colleague Letter (July 28, 2003). Harvard thus did not act with deliberate indifference by not censoring the wide swathe of alleged conduct that involved speeches, rallies, boycotts, protests, public statements, and academic assignments. Plaintiffs point to inapposite cases (Opp.13-14) stating the obvious points that a decisionmaker's use of "[r]acially charged code words" or "disparaging Israel" can support a jury verdict of discrimination by that decisionmaker, or that abusive insults directed at plaintiffs ("'homophobic epithets,'" "comments such as 'dumb bitch,'" "comments about a student's body") can contribute to a hostile environment. *E.g., Grace v. Board of Trustees*, 85 F.4th 1, 12 (1st Cir. 2023). None establishes that a school acts with deliberate indifference when, in actively responding to alleged harassment, it also strives to respect the free-speech rights of students and faculty. To the contrary, imposing hostile-environment liability based on "unpopular speech" by school officials, *Guckenberger v. Boston University*, 957 F. Supp. 306, 316 (D. Mass. 1997), or "expressive conduct" at student protests, *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011), imperils free expression.

Plaintiffs' argument (Opp.12-13) that Harvard is merely relabeling "verbal harassment" as "'political' speech" to avoid liability ignores controlling authority that tasks schools with drawing the appropriate line. The First Circuit has held that "school administrators must be permitted to exercise discretion in determining when certain speech crosses the line from merely offensive to more severe or pervasive bullying or harassment." *Norris on behalf of A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 29 n.18 (1st Cir. 2020). Harvard does not act with deliberate

indifference simply because it does not toe Plaintiffs' line as to what speech is protected and what speech violates its harassment and discrimination policies.

Finally, Plaintiffs do not plead severe and pervasive harassment.  Plaintiffs wrongly claim (Opp.8) that this element "must be determined by the fact-finder."  *O'Rourke v. City of Providence*, cited by Plaintiffs, merely clarified that when a jury does consider severity and pervasiveness, they must do so "'in light of the record as a whole and the totality of the circumstances.'" 235 F.3d 713, 728 (1st Cir. 2001).  Courts routinely dismiss claims that fail as a matter of law to plausibly plead severe and pervasive harassment; and in making that determination, courts heavily weigh plaintiffs' failure to allege "physically threatening or humiliating" conduct or conduct "directed specifically at the plaintiffs."  *See Brown*, 68 F.3d at 540-541; *Guckenberger*, 957 F. Supp. at 315-316; *see also Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) ("whether the conduct found was sufficiently severe and pervasive to constitute sexual harassment is a question of law").

## B.     Plaintiffs Fail To Plead Discriminatory Animus

Plaintiffs do not come close to plausibly alleging discriminatory animus in the form of a double standard that disfavors Jewish students.  "For comparator proof to raise a red flag … the two 'incidents' circumstances must be reasonably comparable' and 'the nature of the infraction and knowledge of the evidence by college officials need be sufficiently similar to support a finding of facial inconsistency.'"  *Doe v. Brown Univ.*, 43 F.4th 195, 207 (1st Cir. 2022).  The First Circuit therefore held that a school could reasonably treat a sexual assault complaint by a male student who had already been found responsible for sexual misconduct differently from a complaint by a female student who had not.  *Id.* at 207-208.  Another court found no plausible claim of discrimination based on allegations that "only male students of color" had been expelled for sexual assault because the plaintiff did not plead that "there are other students who were

found responsible for similar violations and received lesser punishments." *Doe v. Amherst College*, 238 F. Supp. 3d 195, 224 (D. Mass. 2017).

Here too, Plaintiffs fail to compare apples to apples.  They argue (Opp.14) that Harvard must "discipline students" they accuse of harassment in this lawsuit because Harvard has previously "censored controversial speakers," "cancel[ed] a sports season for a team's sexist remarks," and "rescind[ed] an incoming freshman's admission because he used racial slurs."  But nowhere do Plaintiffs detail how they are "similarly situated" to a sports team or an incoming student, or how these events are sufficiently "equivalent" to plausibly show that Harvard "acted with discriminatory intent." *Brown Univ.*, 43 F.4th at 207-208.  Plaintiffs do not allege that those they accuse of antisemitism were found to have violated similar policies, but "received lesser punishments," than others Harvard has disciplined. *Amherst Coll.*, 238 F. Supp. 3d at 224.  Nor do they allege Harvard has the same evidence of policy violations now as it did on past occasions.  Certainly, Plaintiffs fall far short of the required showing that Harvard "selectively enforced its rules … due to" Plaintiffs' race. *Brown Univ.*, 43 F.4th at 207.

### C.      Plaintiffs Fail To Plead A Contract Claim

Plaintiffs do not plausibly allege breach of contract or the implied covenant of good faith and fair dealing, because they still have not identified any "definite and certain promises about the university's environment or services" that Harvard has broken. *Brown v. Suffolk Univ.*, 2021 WL 2785047, at *6 (D. Mass. Mar. 31, 2021).  Instead, the Amended Complaint simply lists provisions of five different policies, without identifying which policies applied to Plaintiffs, which policies required Harvard to act under any particular circumstance, what the applicable policies required Harvard to do, or how Harvard fell short. *See* AC ¶ 282.

Plaintiffs' suggestion (Opp. 16-18) that courts have found plausible claims of breach based on similar allegations is wrong.  In *Shulse v. Western New England University*, the

plaintiff identified violations of specific affirmative undertakings in multiple policies that, "taken together," supported a breach of contract claim for failing to provide timely disability accommodations. 2020 WL 4474274, at *9 (D. Mass. Aug. 4, 2020). A statement in a student handbook that the university would provide an "environment free from discrimination" was not dispositive; the court instead relied on several other representations by the university, including that it "offer[s] services for students with disabilities based on current documentation and academic need," and "adheres to the stipulations" of the ADA. *See id.* Plaintiffs contend (Opp. 16-17) that *Czerwienski v. Harvard University*, 666 F. Supp. 3d 49 (D. Mass. Mar. 31, 2023), involved "similar promises" to those alleged here. But contrary to Plaintiffs' claim (Opp. 16 n.18), none of the promises that formed a contract in *Czerwienski* were similar to the Non-Discrimination Policy's general prohibition on "discriminatory harassment." *Czerwienski* relied on Harvard's contractual undertaking to take "far more specific" actions, such as "provid[ing] prompt and equitable methods of investigation and resolution," and "protect[ing] from retaliation [those] who make good faith reports of suspected violations of the law or University policy." *Id.* at 100. Plaintiffs allege no such definite promises here.

Plaintiffs' implied covenant claim cannot succeed where their breach of contract claim fails because they do not "identify a distinct basis for th[e] claim" or "explain … how the facts supporting the [various] claims differ." *Doe v. Stonehill Coll., Inc.*, 55 F. 4th 302, 337-338 (1st Cir. 2022). Moreover, "[t]he essential inquiry" in an implied covenant claim "is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 612 (D. Mass. 2016). This mirrors the "reasonable expectation" standard that forecloses their claim for breach. *See id.*

## CONCLUSION

The Court should dismiss Plaintiffs' Amended Complaint with prejudice.

DATED:  May 6, 2024

Respectfully Submitted,

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

By its attorneys,

_/s/ Felicia H. Ellsworth_

Mark A. Kirsch (*pro hac vice*)
Gina Merrill (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
mkirsch@kslaw.com
gmerrill@kslaw.com
Tel: (212) 790-5329
Fax: (212) 556-2222

Zachary Fardon (*pro hac vice*)
KING & SPALDING LLP
110 N. Wacker Drive
Suite 3800
Chicago, IL 60606
zfardon@kslaw.com
Tel: (312) 764-6960
Fax: (312) 995-6330

Zoe M. Beiner (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
zbeiner@kslaw.com
Tel: (202) 626-5575
Fax: (202) 626-3737

Felicia H. Ellsworth, BBO #665232
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel:  (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
Bruce M. Berman (*pro hac vice*)
Jeremy W. Brinster (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel:  (202) 663-6000
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
bruce.berman@wilmerhale.com
jeremy.brinster@wilmerhale.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2024, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth