Joshua Lapin, Pro Se Proposed-Amicus

401 E 8th ST
STE 214 PMB 7452
Sioux Falls SD 57103

Email: thehebrewhammerjosh@gmail.com

Facsimile: (605) 305-3464

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALEXANDER KESTENBAUM and STUNTS AGAINST ANTISEMITISM, INC., <br><br> Plaintiffs <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE, <br><br> Defendant | Case No.: 1:24-cv-10092-RGS <br><br> **[PROPOSED] AMICUS BRIEF OF** <br><br> **PROPOSED-AMICUS JOSHUA LAPIN** |

COMES NOW Proposed-Amicus Joshua Lapin, and hereby submits his proposed amicus brief, should this court grant him leave to file the same.

# Table Of Contents

**SECTION**                                                                                 **Page**

I.  ARTICLE III STANDING OVERVIEW…………………………………...1

    A.  ARTICLE III STANDING VS STATUTORY STANDING; (AMICUS
    ONLY ADDRESSES THE FORMER)…………………………………1

    B.  ELEMENTS OF ARTICLE III STANDING…………………………..1

        1.  INJURY-IN-FACT……………………………………………1

        2.  TRACEABILITY [DOES NOT REQUIRE PROXIMATE
        CAUSATION]……………………………………………….....2

        3.  REDRESSABILITY………………………………………….2

II.  INJURIES OF PLAINTIFF'S & SAA MEMBERS……………………….2

    A.  SAA…………………………………………………………………3

    B.  KESTENBAUM……………………………………………………..3

    C.  SAA MEMBER #1……………………………………………...…3

    D.  SAA MEMBER #2…………………………………………….…3

    E.  SAA MEMBER #3…………………………………………...…..4

    F.  SAA MEMBER #4…………………………………………...…..4

    G.  SAA MEMBER #5…………………………………………...…..4

III.  PLAINTIFF KESTENBAUM AND SAA MEMBERS 1-5 (ARGUENDO)
HAVE ARTICLE III STANDING…………………………………………5

    A.  HARVARD'S ALLEGATIONS…………………………………….5

    B.  SUFFICIENT ART. III STANDING HAS BEEN PLED………………5

        1)  MONETARY HARMS ALWAYS CONSTITUTE AN
        INJURY-IN-FACT…………………………………………5

# Table Of Contents (Continued)

**SECTION**                                                                              **Page**

    2. ALL PLAINTIFF'S PLEAD SUFFICIENT INTANGIBLE
       HARMS RE: INJURY-IN-FACT.......................................6

       A) FOR DAMAGES..................................................6

          1) HARMS RESEMBLE THOSE WITH
            COMMON-LAW ANALOGUES.......................7

              A) INTRUSION UPON SECLUSION..............7

              B) INTENTION INFLICTION OF EMOTIONAL
                 DISTRESS...........................…..……....8

              C) CONVERSION...................................9

          B) FOR INJUNCTIVE RELIEF..............................9

    3. ALL PLAINTIFF'S PLEAD TRACEABLE AND
       REDRESSABLE CLAIMS..........................................10

       A) PLAINTIFF'S DECISION TO STOP USING THE
          LOUNGE DOES NOT RENDER THE INJURY NON-
          TRACEABLE TO HARVARD.................................10

       B) "CHAINS OF CAUSATION" SUFFICE FOR
          TRACEABILITY PRONG......................................11

IV KESTENBAUM DOES NOT LOSE STANDING AFTER HE GRADUATES.12

    A) NO BEARING ON KESTENBAUM'S CLAIMS FOR MONETARY
       DAMAGES.............................................................12

    B) "CAPABLE OF REPETITION, YET EVADING REVIEW,"
       EXCEPTION TO MOOTNESS..............................................12

V STUDENTS AGAINST ANTISEMITISM, INC HAS ART. III STANDING....14

    A) THREE-PRONG TEST FOR ASSOCIATIONAL [ART. III]
       STANDING RE: HUNT.......................…...............................14

---

# Table Of Contents (Continued)

**SECTION**                                                                                          **Page**

    B.  WARTH V. SELDIN, 422 U.S. 490, 511 (1975)…………………………...15

    C.  *HUNT* AND *WARTH* PROVE SAA HAS ART. III STANDING………15

CONCLUSION…………………………………………………………………………...16

# Table Of Authorities

**Case** **Page**

Allen v. Wright, 468 U.S. 737 (1984)...................................................................2,10

Already, LLC. v. Nike, Inc., 133 S. Ct. 721, 726 (2013)................................................2

Brookline Opportunities, LLC v. Town of Brookline, 21-cv-770-PB (D.N.H. July 7, 2023)......10

DiCocco v. Garland, 18 F.4th 406 (4th Cir. 2021).......................................................10

DiCroce v. McNeil Nutritionals, LLC, 640 F. Supp. 3d 182 (D. Mass. 2022)........................1

Doe v. Hopkinton Pub. Schs., 19 F.4th 493 (1st Cir. 2021)...........................................13

Equity in Athletics, Inc. v. Dept. of Educ, 639 F.3d 91 (4th Cir. 2011)................................2

Gratz v. Bollinger, 539 U.S. 244 (2003)...................................................................5

Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333 (1977)..........................14,15

Katz v. Pershing, LLC, 672 F.3d 64 (1st Cir. 2012).......................................................1

Larson v. Valente, 456 U.S. 228, 244 (1982).............................................................2

Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).......................10,11

Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992)..........................................................1,2

MagríZ-Marrero v. UnióN De Tronquistas De P.R., 933 F. Supp. 2d 234 (D.P.R. 2013)...........13

Maio v. Td Bank, Civil Action 1:22-CV-10578-AK (D. Mass. Mar. 10, 2023).......................8

Major v. Nederland Independent School Dist., 772 F. Supp. 944 (E.D. Tex. 1991).................13

Martin v. Mooney, 448 F. Supp. 3d 72 (D.N.H. 2020)...................................................7

McBreairty v. Miller, No. 23-1389 (1st Cir. Feb. 21, 2024)..............................................9

Merriam v. Demoulas, CIVIL ACTION No. 11-10577-RWZ (D. Mass. June 3, 2013)............2,11

O'Hara v. Diageo-Guinness, USA, Inc., C.A. No. 15-14139-MLW (D. Mass. Mar. 27, 2018).....9

O'Shea v. Littleton, 414 U.S. 488 (1974)...................................................................9

Pitta v. Medeiros, Civil Action 22-11641-FDS (D. Mass. May 19, 2023)............................14

Ramirez v. Sanchez Ramos, 438 F.3d 92 (1st Cir. 2006).................................................9

Roe v. Wade, 410 U.S. 113 (1973)......................................................................12,13

Socy' of Holy Transfiguration Monastery v. Gregory, 689 F.3d 29 (1st Cir. 2012).................2

Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016)......................................................1,6,11

Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

## Case                                                                 Page

Taylor v. Am. Chem. Council, 576 F.3d 16 (1st Cir. 2009)………………………………………2

TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021)…………………………………………1,5,6,7

Warth v. Seldin, 422 U.S. 490, 515-516 (1975)……………………………………………14,15

Webb v. Injured Workers Pharm., 72 F.4th 365………………………………………………...6

Weekes v. Cohen Cleary, P.C., Civil Action 23-10817-NMG (D. Mass. Mar. 15, 2024)…………6

Wine and Spirits v. Rhode Island, 418 F.3d 36 (1st Cir. 2005)……………………………………2

## Statutes                                                             Page

15 U.S.C. § 1125 the "Lanham Act"………………………………………………………...11

42 U.S.C. § 1983……………………………………………………………………………...13,14

42 U.S.C. § 2000d "Title VI"……………………………………………………………………3,5,9

29 U.S.C. §§ 621–634 Age Discrimination in Employment Act ('ADEA')………………………...10

Restatement (Second) of Torts § 652B………………………………………………………….7

Title VII the "Civil Rights Act"………………………………………………………………...10

U.S. Const. art. III, § 2 (Article III)…………………………………………………1,2,5,9,10,11,13,15

## Other                                                                Page

https://alumni.harvard.edu/………………………………………………………………12, n.2

https://hds.harvard.edu/academics/degree-programs/mts-program…………………………12, n.1

PROPOSED AMICUS BRIEF

Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

## I  Article III Standing Overview

### A.  Article III Standing vs Statutory Standing; (Amicus Only Addresses the Former)

"When a plaintiff alleges injury to rights conferred by a statute, two separate standing-related inquiries pertain: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)" *Katz v. Pershing, LLC,* 672 F.3d 64, 75 (1st Cir. 2012).  "Article III standing presents a question of justiciability; if it is lacking, a federal court has no subject matter jurisdiction over the claim . . . . By contrast, statutory standing goes to the merits of the claim." *DiCroce v. McNeil Nutritionals, LLC,* 640 F. Supp. 3d 182, 188 (D. Mass. 2022), quoting Katz v. Pershing, LLC, *supra,* at 75.  Proposed-Amicus withholds commentary as to the merits of plaintiff's claim and limits his participation to the issue of the plaintiff's article III, or constitutional, standing to raise these claims *in Federal Court.*

### B.  Elements of Article III Standing

In 2021 this court reviewed the prerequisites to Art. III, "To establish Article III standing, a plaintiff must establish an injury in fact that is (1) concrete, particularized, and actual or imminent, (2) traceable to the challenged action of the defendant, and (3) redressable by a favorable ruling." *Delaney v. Baker,* 511 F. Supp. 3d 55, 67 (D. Mass. 2021), relying on *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992).

#### 1) Injury-In-Fact

The US Supreme Court just revised this requirement in *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021), a case, surprisingly, *neither* party cites to in their briefing on the pending motion to dismiss.  The plaintiff must have "suffered an injury in fact that is concrete, particularized, and actual or imminent" TransUnion LLC v. Ramirez, *supra,* at 2203.  The injury is concrete if it is "harm that is real, not abstract, but not necessarily tangible," *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1556 (2016).  "[C]ertain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms...[but] [v]arious intangible harms can also be concrete [if they resemble] harms traditionally recognized as providing a basis for lawsuits in American courts...for example, reputational harms, disclosure of private

PROPOSED AMICUS BRIEF
Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

information, and intrusion upon seclusion.

### 2) Traceability [Does Not Require Proximate Causation]

*Merriam v. Demoulas*, CIVIL ACTION No. 11-10577-RWZ, at *7 (D. Mass. June 3, 2013), "To establish standing, a plaintiff must show that his injury is 'fairly traceable' to some conduct for which the defendant may be held liable. Already, LLC. v. Nike, Inc., 133 S. Ct. 721, 726 (2013) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). But this causation standard does not require that the defendant personally commit the act that harms the plaintiff. For instance, a plaintiff can have standing to sue a principal for acts committed by his agent. See Socy' of Holy Transfiguration Monastery v. Gregory, 689 F.3d 29, 57 (1st Cir. 2012) (citing Restatement (Third) of Agency § 7.04)). Likewise, a plaintiff can have standing to sue one conspirator for harms directly caused by the actions of a co-conspirator. See Taylor v. Am. Chem. Council, 576 F.3d 16, 34-35 (1st Cir. 2009). In such cases, Article III is satisfied because the plaintiff's injury is fairly traceable to acts for which the defendant may be held liable, even if the defendant did not directly cause or commit those acts. In other words, Article III's causation requirement does not eliminate all forms of vicarious liability," nor does it "exclude injuries produced by 'coercive effect upon the action of someone else.' *Wine and Spirits v. Rhode Island*, 418 F.3d 36 (1st Cir. 2005).

### 3) Redressability

"[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury" *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982). "[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' *Lujan v. Defs. of Wildlife, supra*, at 561. "[N]o explicit guarantee of redress to a plaintiff is required to demonstrate a plaintiffs standing" *Equity in Athletics, Inc. v. Dept. of Educ*, 639 F.3d 91, 100 (4th Cir. 2011).

### II Injuries of Plaintiff's & SAA Members

For ease-of-reference, proposed-amicus made a list of all injuries of all plaintiff's which proposed-amicus believes to meet the requirements of Article III to raise the relief sought in federal court; it's possible that some are lacking, and the list shall not be construed to minimize harms which were

Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

omitted by proposed-amicus's own oversight.  Further, all plaintiffs took great efforts to e-mail faculty, file complaints with agencies, and experienced hardships, but proposed-amicus only lists those which he believes will confer Art. III standing for the requested relief, other injuries which *may* be too indirect or conclusory for the purposes of Art. III (not liability) are omitted; do NOT interpret the below as a minimization of your stories, your efforts, or your experiences.

**A. SAA** is a not-for-profit corporation (*AC*, ¶ 13) to which all plaintiff's, Kestenbaum+SAA Members 1-5, are members(*Id*, ¶15-20).  More on associational standing in Title VI claims later.

**B. Kestenbaum** encoutered the same mob that SAA Members 1-3 and 5 encountered at *AC*., ¶ 110, when it moved from the Harvard Law building to Harvard Kennedy *Id*, ¶112.

He "put up posters of Israeli children kidnapped by Hamas on a bulletin board in Harvard Divinity's common area, all of which were ripped down." *Id*, 125.

He "intended to study at Widener [Library]," but changed course after, "Harvard PSC, Harvard BDS, and Harvard Afro oversaw a disruptive, aggressive, flag- and banner-waving takeover of Harvard's Widener Library" *Id* ¶139.

When visiting a site in Harvard Yard dedicated to the Jewish hostages taken by Hamas, Kestenbaum saw a on a poster of ten-month-old baby-hostagee Kfir Bibas, someone wrote "HEAD STILL ON," causing him to miss the first day of class as he spent "his first day...attend[ing] to these horrific posters" *Id*, 182, to which a financial and Systems Coordinator at Harvard (Gustavo Espada) apparently took responsibility *Id*, 185.

**C. SAA Member # 1** had to hide from the mob which stormed Harvard Law's main building, and hide likeness of their Judaism *Id*, ¶ 110, causing them to "miss class later that day" *Id*, ¶112

Was prevented from using the Caspersen lounge when an [apparently policy-violating] event promoting 'radical student activism' about Palestine took over the space, including faculty Professor Bowie and Professor Ryan D. *Id*, ¶ 224

**D. SAA Member # 2** had to hide from the mob which stormed Harvard Law's main building, and hide likeness of their Judaism *Id*, ¶ 110.

On Oct. 30th when Harvard PSC and Harvard GS4P "t[ook]over of Harvard Law's main

common lounge in Caspersen Student Center" they had to "stop using Caspersen lounge as a study space to avoid being harassed because they are Jewish" *Id*, ¶118.

To avoid the "[o]ct 27[th] 'family weekend' due to a 'die-in and protest' run by Harvard PSC and Harvard GS4P which was advertised as being '[o]pen to non-HUID Holders'…'[she had to take] a ride-share service home because she did not feel safe walking through the protest to access her usual train'" *Id*, at 115.

**E.  SAA Member # 3** had to hide from the mob which stormed Harvard Law's main building, and hide likeness of their Judaism *Id*, ¶ 110.

On Oct. 30th when Harvard PSC and Harvard GS4P "t[ook]over of Harvard Law's main common lounge in Caspersen Student Center" they had to "stop using Caspersen lounge as a study space to avoid being harassed because they are Jewish" *Id*, ¶118.

**F.  SAA Member # 4** On Oct. 30th when Harvard PSC and Harvard GS4P "t[ook]over of Harvard Law's main common lounge in Caspersen Student Center" they had to "stop using Caspersen lounge as a study space to avoid being harassed because they are Jewish" *Id*, ¶118.

**G.  SAA Member # 5** had to hide from the mob which stormed Harvard Law's main building, and hide likeness of their Judaism *Id*, ¶ 110.

On Oct. 30th when Harvard PSC and Harvard GS4P "t[ook]over of Harvard Law's main common lounge in Caspersen Student Center" they had to "stop using Caspersen lounge as a study space to avoid being harassed because they are Jewish" *Id*, ¶118.

"[H]ung at Harvard Law, [an] advertise[ment]…hosted by the student group Alliance for Israel, [but it was] ripped down" *Id*, 124.

Attended an event hosted by Harvard Chabbad and Harvard Law Alliance, which was "closed" under Harvard Law policies, which was disrupted  by students "who blocked the audience's view of the invited speaker with signs." Id, ¶ 218.

Was prevented from using the Caspersen lounge when an [apparently policy-violating] event

promoting 'radical student activism' about Palestine took over the space, including faculty Professor Bowie and Professor Ryan D. *Id*, ¶ 224.

### III Plaintiff Kestenbaum and SAA Members 1-5 (*Arguendo*) have Article III Standing

### A) Harvard's Allegations

"Kestenbaum [cannot] establish standing to seek prospective injunctive relief." *Dkt. 36*, pg. 10, because, according to Harvard, "[Plaintiff's] do not plausibly establish an injury-in-fact because they are not "particularized" to these Plaintiffs," have not "[plead] a future injury to themselves, traceable to Harvard." *Id*. "[Kestenbaum's] claims for injunctive relief will become...moot...when he graduates next month and ceases to be a Harvard student, as there will be "simply 'no ongoing conduct to enjoin' presently affecting [him]." Notwithstanding the disruptions personally experienced by plaintiff's, Harvard maintains that the "past injur[ies]" Plaintiffs allege "cannot support standing to seek an injunction against future harm." Harvard further alleges plaintiff lack Art. III standing because they cannot show a "likelihood that the requested relief will redress the alleged injury." and characterize the relief as a "vastly overbroad injunction"(citations omitted) *Id*, pg. 15.

### B) Sufficient Art. III Standing Has Been Pled

In the context of an equal protection claim, quite similar to Title VI, the US Supreme Court holds "[t]he `injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit" *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003).

#### 1) Monetary Harms Always Constitute an Injury-in-Fact

"If a defendant has caused...monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." TransUnion LLC v. Ramirez, *supra*, at 2204. Kestenbaum and SAA Member 5 had their Jewish-event-promoting posters ripped down; such posters cost a non-zero amount of time and money to prepare. Further, SAA Member #2 had to take a rideshare service home to avoid a policy-violating protest, as opposed to the train she usually took home. The presumption that the rideshare service is more expensive than the train is a reasonable inference that can be drawn in favor of this plaintiff for the purposes of a motion to dismiss. These monetary

5

harms are concrete per se under *Spokeo* and *Transunion*, but in any event, they resemble the harms that traditionally form the basis of suits in American and English courts; stolen posters resemble larceny and intrusion upon seclusion, and a disruptive & policy-violating "die-in" protest resembles breach of contract and intentional infliction of emotional distress. "Central to assessing concreteness is whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts" TransUnion LLC v. Ramirez, *supra*, at 2200.

### 2) All Plaintiff's Plead Sufficient Intangible Harms Re: Injury-In-Fact
### A) For Damages

In *Webb v. Injured Workers Pharm.*, 72 F.4th 365, the 1st circuit properly relied on *Transunion* to see if the complaint plead a "close historical or common-law analogue for their asserted injury," for the purpose of Art. III. Webb had alleged that a pharmacy's failure to prevent a data breach, and the leaking of his personally identifiable data (PII), resulted in third-party hackers filing a false tax return on his behalf. *Id,* at 369. The court found the pharmacy's failure to prevent a data breach, resulting in third-party's unauthorized access to plaintiff's <u>resulting in actual misuse</u> of the PII constituted an injury in fact incurred by Webb.

This court relied on *Webb* recently in *Weekes v. Cohen Cleary, P.C.*, Civil Action 23-10817-NMG (D. Mass. Mar. 15, 2024) to find the same. The complaint alleged "defendant law firm Cohen Cleary P.C...failed to safeguard plaintiff's data properly...enabl[ing] hackers to gain access to the PII...of plaintiff and approximately 12,000 other individuals." *Id*, at 1-2. Court found this sufficient to satisfy Art. III, "The complaint alleges either actual misuse of plaintiff's PII or that another victim of the breach has had his or her PII misused, along with other indicia of imminent harm. If proven true, damages caused by the actual misuse or efforts expended to prevent imminent misuse of plaintiff's PII satisfy the damages requirement for negligence." *Id*, at 9-10.

Webb and Weeks (*supra*) closely follow *Transunion's* distinction which found Art. III standing only for the 1,853 class members whose credit reports were <u>actually transferred</u> to third parties since they "suffered a harm with a 'close relationship' to the harm associated with the tort of

defamation" Transunion, *supra*, at 2209, but denied Art. III standing to the remaining 6,332 class members whose reports were "not disseminated to third-party businesses did not suffer a concrete harm" *Id*, 2212.  The instant plaintiff's are analogous to the former 1,853 TransUnion-plaintiff's because they personally experienced a policy-violating, highly offensive act.  Rather, Jewish students which support the instant plaintiff's suit, with strong empathy because they are also Jewish and care for their fellow Jews, may be more analogous to the latter 6,332 Transunion-plaintiff's whose were not *personally* affected by the same, and as such, may lack Art. III standing.  (for non-lawyers reading this, I'm not minimizing their cause and their pain).

### 1) Harms Resemble Those With Common-Law Analogues

The complaint alleges concrete, particularized injuries, condensed above in s. II "Injuries of the Plaintiff's," which  have a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts" TransUnion LLC v. Ramirez, *supra*, at 2200.

### A) Intrusion Upon Seclusion

Some plaintiff's had to remove indica of their Jewishness and hide while attempting to use a study lounge at Harvard's Law Library, when an agitated, pro-palestinian mob barged through, including non-HUID cardholders, and this resembles the common law tort of intrusion upon seclusion.  "A party is liable for intrusion upon seclusion if it "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns."*Martin v. Mooney*, 448 F. Supp. 3d 72, 82 (D.N.H. 2020), relying on Restatement (Second) of Torts § 652B.  "the intrusive conduct must go "beyond the limits of decency" and "the defendant should have realized that it would be offensive to persons of ordinary sensibilities." *AC*, 82.  This distinguishes the angry mob's act of depriving the Jewish student's use of the study room from, *arguendo*, another group of students who pre-booked and/or arrived at the study room before the Jewish students; the latter has not committed an act because such study rooms are available on a first come, first serve basis, and in any event, because the latter's conduct does not "go beyond the limits of decency," the way a highly intimidating and agitated group bypassed card-scanners, including for non-HUID cardholders to flood out and deprive other students (Jewish and otherwise) of the productive use of the space.  Still others were attempting to use the main lounge in the Caspersen Student Center

when a seperate, agitated mob "t[aking] over of Harvard Law's main common lounge in Caspersen Student Center" and thus had to "stop using Caspersen lounge as a study space to avoid being harassed because they are Jewish" *AC*, ¶118, and others were prevented from using the same space when a faculty-participating protest occurred. *Id*, ¶ 224. This resembles intrusion upon seclusion for the same reasons as-in the library incident explained above.

### B) Intention Infliction of Emotional Distress

When visiting a site in Harvard Yard dedicated to the Jewish hostages taken by Hamas, Kestenbaum saw a on a poster of ten-month-old baby-hostagee Kfir Bibas, someone wrote "HEAD STILL ON," causing him to miss the first day of class as he spent "his first day...attend[ing] to these horrific posters" *Id*, 182, to which a financial and Systems Coordinator at Harvard (Gustavo Espada) apparently took responsibility *Id*, 185. Above and beyond garden-variety intimidation, threats, and antagonistic conduct, this action somehow resembles the tort of intentional infliction of emotional distress. "Massachusetts courts 'have placed reckless and intentional infliction of emotional distress in the same category,' and...[p]laintiffs must show:

(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct;

(2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community;

(3) that the actions of the defendant were the cause of the plaintiff's distress; and

(4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it."

*Maio v. Td Bank*, Civil Action 1:22-CV-10578-AK, at *11-12 (cleaned up) (D. Mass. Mar. 10, 2023).

Proposed-Amicus has elected not to 'tie the loose' ends on this one, and instead to allow the court to draw reasonable inferences as to how writing "Head Still On," on a kidnapped baby, resembes IIED from the perspective of Kestenbaum who encountered the message and missed class tending to those posters.

### C) Conversion

While having one's posters ripped down is a *per se* injury-in-fact (see s. III, ¶1 "Monetary Harms…,") it's a notable "honorable mention" that this act can only truly be described as committing the tort of conversion, which "requires an intentional or wrongful exercise of dominion or control over personal property of another by one with no right to immediate possession. " *Kelley v. Laforce*, 288 F.3d 1, 11 (1st Cir. 2002).

### B) For Injunctive Relief

To satisfy Article III standing for injunctive relief, plaintiff's must show a "real and immediate threat of future injury," as required to establish standing for injunctive relief. *O'Hara v. Diageo-Guinness, USA, Inc.*, C.A. No. 15-14139-MLW, at *44 (D. Mass. Mar. 27, 2018), quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, <u>if unaccompanied by any continuing, present adverse effects</u>." (underlined added) O'Shea v. Littleton, *supra*, 495-96. The first circuit adopted, and recently reenforced, a standard for Article III standing seeking injunctive relief based on past injury. In relevant part, a plaintiff, must "[state] an intention to engage in any activity that . . . fall[s] within the [challenged rule]." *McBreairty v. Miller*, No. 23-1389 (1st Cir. Feb. 21, 2024), quoting *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 99 (1st Cir. 2006). Here, plaintiff's sufficiently allege they intend to engage in activity protected by Title VI. The amended complaint is choke-full of examples of "mobs [which] have occupied buildings, classrooms, libraries, student lounges, plazas, and study halls, often for days or weeks at a time, promoting violence against Jews and harassing and assaulting them on campus," Id, ¶1; the plaintiff's allege they've been forced to "sto[p] using Caspersen lounge as a study space to avoid being harassed because they are Jewish" *Id*, ¶118, and "intend to engage" in using lounge (and library) yet again in furtherance of their studies, and seek injunctive relief disciplining those who are depriving Jewish students of their use of the space *Id*, pg. 106 "Prayer For Relief," ¶(A)  ; in other words, the complaint pleads in non-conclusory, non-hypothetical fashion that real and imminent harm is likely, but not for Harvard's suspension and/or expulsion of the students causing plaintiff's deprivation of

9

Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

the protected activity (using the lounge and libraries which are frequent targets of the 'mobs'.)

### 3) All Plaintiff's Plead *Traceable* and *Redressable* Claims

Proposed-Amicus elects to address the latter two prongs of Art. III together because, "[i]n many cases, traceability and redressability are addressed together as 'two sides of a causation coin.' " *Brookline Opportunities, LLC v. Town of Brookline*, 21-cv-770-PB (D.N.H. July 7, 2023) at *5 n.8," and were "initially articulated by this Court as "two facets of a single causation requirement." *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)."

### A) Plaintiff's Decision To Stop Using The Lounge Does Not Render The Injury Non-Traceable to Harvard

The US Supreme Court explains, "Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)." Relying on *Id*, the 4th Circuit found a Title VII claim over physical fitness tests was traceable to the government even though the plaintiff chose to resign, rather than take the test. Phrased differently, plaintiff didn't fail the test, and therefore go on to be denied employment, rather she resigned in shame to avoid the same. The case was *DiCocco v. Garland*, 18 F.4th 406 (4th Cir. 2021). therein, "Dr. Jane DiCocco brought Title VII and Age Discrimination in Employment Act ("ADEA") claims against the U.S. Attorney General because she failed an allegedly discriminatory physical-fitness test that was a condition of her federal employment and was told to either retake the test, resign, or be fired. She resigned." Relying on Lexmark Int'l, Inc. v. Static Control Components, Inc, *supra*, at n.6, the 4th circuit found while "a plaintiff's injury is not fairly traceable to the defendant's action if the plaintiff 'independently caused his own injury,' " (citations omitted) *Id*, at 412, because "Dr. DiCocco's choice to resign instead of retaking the test <u>was</u> a proximate cause of her injuries...[s]he has alleged that her injuries were caused by BOP's allegedly discriminatory policy requiring new hires to take and pass the test or be terminated." (underline added) *Id*, at 413. Here, the students decision to stop using the lounge and libraries they enjoyed was a proximate cause of Harvard's failure to enforce its own policies; as such, it would be unfair to say this was the plaintiff's

unilateral decision.

### B) "Chains of Causation" Suffice for Traceability Prong

"Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." Spokeo, Inc. v. Robins, *supra,* at 1549, and "the causal chain linking Static Control's injuries to consumer confusion is not direct, but includes the intervening link of injury to the remanufacturers." Lexmark Int'l, Inc. v. Static Control Components, supra at 139; this portion of Lexmark, is well-summarized by *Cnty. of Cook v. Wells Fargo & Co.,* 314 F. Supp. 3d 975, 984 (N.D. Ill. 2018), "Static Control—the manufacturer of components necessary to refurbish and resell brand-name printer cartridges—sued Lexmark, a brand-name cartridge manufacturer, under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for misleading cartridge refurbishers into believing that they were legally prohibited from refurbishing Lexmark's cartridges with Static Control's products, and for misleading customers into thinking that they were obligated to return their used printer cartridges directly to Lexmark. Id. at 1383–84. Because it did not direct its communications to Static Control, Lexmark argued that Static Control was too removed from its allegedly unlawful conduct to satisfy proximate cause...The Supreme Court disagreed, holding that 'Static Control adequately alleged proximate causation by alleging that it designed, manufactured, and sold microchips that both (1) were necessary for, and (2) had no other use than, refurbishing Lexmark toner cartridges." [Lexmark, *supra*]. at 1394. The Court explained that '[t]aking Static Control's assertions at face value, there is likely to be something very close to a 1:1 relationship between the number of refurbished ... cartridges sold (or not sold) by the remanufacturers and the number of [components] sold (or not sold) by Static Control.' " Here, there's a strong causuational link between Harvard's failure to enforce it's own policies and the angry mob's violation of the same, or as *this* court has said, "Article III is satisfied because the plaintiff's injury is fairly traceable to acts for which the defendant may be held liable, even if the defendant did not directly cause or commit those acts. In other words, Article III's causation requirement does not eliminate all forms of vicarious liability." Merriam v. Demoulas, *supra,* at *7 (D. Mass. June 3, 2013)." This effectively bars Harvard from hiding behind its most unruly students and their agitated, unauthorized guests.

PROPOSED AMICUS BRIEF
Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

### IV  Kestenbaum Does Not Lose Standing After He Graduates

Harvard alleges, "Kestenbaum['s] claims for **injunctive** relief will become 'inescapably moot'
when he graduates next month and ceases to be a Harvard student, as there will be 'simply no
ongoing conduct to enjoin presently affecting [him].' " (citations omitted, bold added) *Dkt. 36*, pg.
10, last ¶.

### A)  No Bearing on Kestenbaum's Claims For Monetary Damages

Kestenbaum's non-equitable claims for actual and punitive, monetary damages AC, ¶286, (B)-(D),
are wholly unaffected by the instant allegations *even if* they were found meritorious, because  these
damages are based on past events, rather than future, imminent harm.  In fact, Harvard's attack on
Kestenbaum's  *injunctive* standing, but not *damages* standing, in relation to his graduation, is
a confession-of-sorts of his standing for the latter.

### B) "Capable of Repetition, Yet Evading Review," Exception to Mootness

Reversed on unrelated grounds, this mootness exception was popularized in *Roe v. Wade*,
410 U.S. 113 (1973), "[T]he normal 266-day human gestation period is so short that the pregnancy
will come to term before the usual appellate process is complete. If that termination makes a case
moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review
will be effectively denied. Our law should not be that rigid. Pregnancy often comes more than once
to the same woman, and in the general population, if man is to survive, it will always be with us.
Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be
'capable of repetition, yet evading review.' *Roe v. Wade*, 410 U.S. 113, 125 (1973).  Kestenbaum is
"enrolled in the Masters in Theological Studies program," AC, ¶ 15, which is merely "a **two-year**
full-time degree[1]." (bold added) Therefore, Harvard students taking two-year masters may be barred
from declaratory injunctive, and other equitable forms of relief against Harvard simply because they
will have ended their students prior to the granting of such relief.  However, Kestenbaum never
alleged that he will never return to Harvard, will never study at Harvard in the future, will never be
a future public speaker at Harvard or participate as an alumni.[2]  Kestenbaum is "pregnant" for our

---

[1]https://hds.harvard.edu/academics/degree-programs/mts-program
[2]https://alumni.harvard.edu/

PROPOSED AMICUS BRIEF
Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

purposes; time at Harvard "often comes more than once" for a plaintiff such as Kestenbaum just as "pregnancy often comes more than once to the same woman" in *Roe*. Taking a traditional approach to mootness herein would likewise be unjust because Kestenbaum's circumstances, "provid[e] a classic justification for a conclusion of nonmootness. It truly could be 'capable of repetition, yet evading review.' " Roe, *supra*. Courts have applied this principle to find nonmootness in cases similar to the instant matter. In *Major v. Nederland Independent School Dist.*, 772 F. Supp. 944 (E.D. Tex. 1991), "Plaintiffs filed suit on January 4, 1991 under 42 U.S.C. § 1983 alleging that the NISD maintains an admissions policy that violates state and federal law." *Id*, 944. "NISD asserts that the Plaintiffs' claim is moot...NISD avers that Naomi has returned to school in the Orangefield School District and thus there no longer remains an Article III 'case or controversy.' The court disagrees. Although Naomi no longer seeks admission to the NISD, the balance of her claims remain viable. She is entitled to pursue her **claim for damages for the past** violation of her constitutional rights. And, since this is the type of legal dispute that is 'capable of repetition, yet evading review,' see Roe v. Wade, <u>410 U.S. 113, 125</u>, <u>93 S.Ct. 705, 713</u>, <u>35 L.Ed.2d 147</u> (1973), she is also entitled to seek **declaratory relief** regarding the NISD's admissions policy." *Id*, 946-947. This is notable because the *Major* court allowed the non-monetary, equitable relief to proceed cited to the same non-mootness principal from the same section in *Roe*; this court should do the same.

### 1) 1st Circuit Adopts The Doctrine: Legal Standard

"[The] exception applies only when: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party w[ill] be subjected to the same action again." *Doe v. Hopkinton Pub. Schs.*, 19 F.4th 493, 511 (1st Cir. 2021). As to the first prong, the delta between the fallout of the Oct. 7th massacre on the Harvard campus, and Kestenbaum's graduation, *may be* too short to be fully litigated. As to the second prong, antisemitism is prevalent and someone who is proudly and visibly Jewish is, unfortunately, likely to be subject to the same mistreatment in the future. In *MagríZ-Marrero v. UnióN De Tronquistas De P.R.*, 933 F. Supp. 2d 234 (D.P.R. 2013), the district of puerto rico relied on this exception to find nonmootness of the plaintiff's allegations, who sued over alleged retaliation "in order to prevent plaintiffs from running for Union office." *Id*, 247. "Defendant's...argument is that plaintiffs' claims and requested remedies became moot once

PROPOSED AMICUS BRIEF

Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

elections were held," but the court applied the "Capable of Repetition, Yet Evading Review," exception (at *247).  In *Pitta v. Medeiros*, Civil Action 22-11641-FDS (D. Mass. May 19, 2023), "Plaintiff Scott Pitta is the parent of a child who receives individualized education program ("IEP") services in the Bridgewater-Raynham Regional School District. After the District allegedly omitted certain facts from the official minutes of an IEP meeting, Pitta sought to video record future meetings with District staff. The District denied his request, citing its policy against video recording. Pitta then sued the school district and the Administrator of Special Education, Dina Medeiros, under 42 U.S.C. § 1983, alleging a violation of his First Amendment right to record government officials in the performance of their duties."  This very court observed in a footnote, "It is also possible that the exception applicable to matters that are 'capable of repetition yet evading review' applies here. The harm resulting from any individual, unrecorded IEP meeting could arguably be 'too short to be fully litigated prior to its cessation,' and it is not unreasonable to expect that plaintiff may suffer the same injury again." *Id*, at *8 n.6.

### V  Students Against Antisemitism, Inc has Art. III Standing

Harvard alleges "SAA—which does not allege its own injury—lacks standing to sue on behalf of its members."  *Dkt*. 36, ¶ C. For this they cite to *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) and *Warth v. Seldin*, 422 U.S. 490, 515-516 (1975).  Apparently Harvard did not go to Harvard, as these two cases, most ironically, *confer* associational standing onto SAA.

### A)  Three-Prong Test For Associational [Art. III] Standing Re: Hunt

*Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333 (1977):

(a) An association has standing to bring suit on behalf of its members when

> (1) its members would otherwise have standing to sue in their own right;

> (2) the interests it seeks to protect are germane to the organization's purpose; and

> (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of **each** of the individual members. (bold added)

For (A)(1), proposed-Amicus will defer to S. III "Kestenbaum and SAA Members 1-5 (who are not

PROPOSED AMICUS BRIEF
Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

individual plaintiff's but likely could be) have Article III Standing.

For (A)(2), the entire purpose of the interests sought to be protected by Students Against Antisemitism...is to protect students against antisemitism.

For (A)(3) the bolded word "each" is absent from Harvard's cherry-picked citation to a latter part of Hunt, *supra*, also at 333, which omits the word each: but in the three-prong test (same subsection,) it is clear the true purpose is to ensure that the organization needs not *each-and-every* member of the organization for standing purposes. In any event, Hunt makes clear, at *342, that "this Court has recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity, e. g., Warth v. Seldin, supra, at 511 [sic]," which is quite incredible given that counsel cites Warth, *supra* for the opposite proposition. Naturally, lets turn to *Warth* at *511 and see what it has to say for itself:

### B) *Warth v. Seldin*, 422 U.S. 490, 511 (1975):

"There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy. Moreover, in attempting to secure relief from injury to itself the association may assert the rights of its members, at least <u>so long as the challenged infractions adversely affect its members' associational ties</u>. (underline added)...Even in the absence of injury to itself, an association may have standing solely as the representative of its members...The association must allege that its members, **or any one of them,** are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justifiable case had the members themselves brought suit. (bold added, citations omitted).

### C) *Hunt* and *Warth* Prove SAA Has Art. III standing

Taking prong (A)(3) from Hunt, *supra*, at 333, together with "any one of them" as used in Warth, *supra*, at 511 (shown in bold above), it is clear that if SAA is not alleging its own independent injury, it need only allege that at least *one* of its members has Art. III standing for the relief sought.

Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37

Harvard's burden is high:  It must demonstrate that neither Kestenbaum nor SAA Members 1-5 have standing, as SAA can "carry the flag," with as little as one Art.III-having member.

## Conclusion

All plaintiff's have Article III standing.


/s/ Joshua A. Lapin
Joshua A Lapin
Pro Se Proposed-Amicus 5/06/24          05 / 07 / 2024
_____
Signature

PROPOSED AMICUS BRIEF
Doc ID: 7dbd41aacf704ea0a8dab31c70cacbe0cea5fe37