UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------X
ALEXANDER KESTENBAUM and              :
STUDENTS AGAINST ANTISEMITISM,        :
INC.,                                 :   Case No. 1:24-cv-10092-RGS
                                      :
            Plaintiffs,               :
                                      :
       v.                             :
                                      :
PRESIDENT AND FELLOWS OF              :
HARVARD COLLEGE,                      :
                                      :
            Defendant.                :
                                      :
-----------------------------------------------------X
```

**PLAINTIFFS' MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT AND
<u>A CONTINUANCE OF ORAL ARGUMENT</u>**

Plaintiffs Shabbos Kestenbaum ("Kestenbaum") and Students Against Antisemitism, Inc. ("SAA") hereby respectfully move this Court for an order giving them, pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend their First Amended Complaint ("FAC") (Dkt. 32) to include additional allegations concerning pertinent events that have occurred since the filing of the FAC and granting a continuance of the May 30, 2024 oral argument.[1]

## PRELIMINARY STATEMENT

Plaintiffs seek leave to amend their FAC to add allegations showing that Harvard's severe and pervasive antisemitic hostile environment—and its, at best, deliberate indifference to that environment—have worsened since the filing of the FAC.

In its motion to dismiss the FAC, Harvard does not, as it cannot, deny that severe antisemitism pervades its campus, but argues that Plaintiffs' claims were "premature" and "contingent on establishing the deficiency of Harvard's ongoing response to antisemitism." Dkt. 36 at 2. Harvard's argument, which rests on the disfavored doctrine of "ripeness," is not only wrong on the law and on the facts already alleged in the FAC, but its argument should also be viewed in light of the SAC's new allegations further directly refuting it. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Since the filing of the FAC, Harvard, as alleged in the proposed SAC, has tolerated and indeed accommodated an occupation of Harvard Yard by students, faculty, and others, during which Jewish students have been harassed and intimidated, and antisemitic calls for genocide against the Jewish people and the destruction of Israel, the sole Jewish country in the world, have been trumpeted. As also alleged, Harvard then, after three weeks, negotiated an end to the

---

[1] Attached hereto as Exhibit 1 is a copy of Plaintiffs' proposed Second Amended Complaint ("SAC"). Capitalized terms not defined herein have the meanings ascribed to them in the FAC. The parties met and conferred on this motion. Harvard advised that it "will file a Response" to this motion.

1

unsanctioned protest, promising the occupiers meetings with Harvard's governing financial body concerning their demands that Harvard "divest" from Israel. Had any other group been targeted even by far less, Harvard would not have tolerated such an occupation at all, let alone consider capitulating to any of the occupiers' demands, as Harvard has done here.

Particularly given that leave to amend is freely granted, Plaintiffs should be given leave to file their SAC. Plaintiffs also respectfully request that the Court grant a continuance of the May 30, 2024 oral argument on Harvard's motion to dismiss the FAC, and order a new briefing schedule if Harvard intends to move to dismiss the SAC.

## BACKGROUND

### I.  Procedural Background

Plaintiffs filed this Action on January 10, 2024. Dkt. 1. Plaintiffs filed the FAC on March 29, 2024. Dkt. 32. Harvard moved to dismiss on April 12, 2024, Dkts. 35-39, which Plaintiffs opposed on April 26, 2024, Dkts. 42-44, 48. On May 6, 2024, Harvard filed a reply brief. Dkt. 50. The Court set a hearing on the motion to dismiss for May 30, 2024. Dkt. 49.

### II.  Plaintiffs' Proposed Second Amended Complaint

Plaintiffs seek leave to file their proposed SAC, in which Plaintiffs will add new allegations pertaining to Harvard's continued deliberate indifference towards antisemitic discrimination, harassment, and its hostile educational environment. The SAC alleges, among other things, that "Harvard permitted hundreds of Harvard students, faculty members, and others to occupy Harvard Yard for weeks, erecting an encampment to further their antisemitic agenda, replete with calls for global intifada and other antisemitic slogans, chants, and banners, disrupting Jewish and other students living in Harvard Yard dormitories and harassing, threatening, and intimidating Jewish students walking through the Yard" (SAC ¶ 2; *see also* SAC ¶¶ 249-75); that Harvard

administrators "refused to respond" to Kestenbaum's concerns about the encampment and made clear Harvard "did not intend to enforce its own policies and would let the encampment continue to grow" (SAC ¶¶ 255-56; *see also* SAC ¶ 266); that "[v]arious Harvard administrators confirmed that the encampment violated Harvard policy" (SAC ¶ 259; *see also* SAC ¶ 260); and that these events, as expected, drastically exacerbated the discrimination and hostile environment to which Jewish Harvard students, including Plaintiffs, are subject (*see* SAC ¶¶ 253, 257-58, 262-63, 265, 270-72). The encampment expanded in size and to additional locations (SAC ¶¶ 257, 264, 273), and was a source of repeated antisemitic harassment (SAC ¶¶ 249-75).

Because of the encampment and its leaders—and Harvard's refusal to take any effective action to discourage it—Jewish students, including Plaintiffs and SAA's members, were blocked from traveling through Harvard Yard (by students and Harvard staff alike) (SAC ¶¶ 250, 257-58, 265), followed and intimidated by so-called "safety marshals" (SAC ¶¶ 257-58), and faced repeated antisemitic chants including "there is only one solution, Intifada revolution," which calls for death to Jews worldwide (SAC ¶¶ 253, 270, 272). Students and faculty regularly flouted any attempt to return campus to normalcy. The demonstrators made their antisemitic intentions clear— "the campers hung a large banner over the encampment, which depicted Interim President Garber, who is Jewish, as a devil with horns and a tail." (SAC ¶ 271).

Harvard finally claimed to start handing out disciplinary sanctions against some demonstrators—more than two weeks after the encampment began, even appending to their reply brief articles detailing Harvard's purported actions, including that student participants would be "referred for involuntary leave" and have charges filed against them. Dkts. 50 at 2, 4, 6; 51-1; 51-2. But as the SAC alleges, last week Harvard agreed to "reinstat[e] demonstrators who had been placed on involuntary leave, . . .expedite Administrative Board hearings in line with 'precedents

3

of leniency,' and [announced] that [the unregistered student group Harvard Out of Occupied Palestine] would be offered meetings with Harvard's governing boards about divestment from Israel." (SAC ¶ 274). This capitulation comes notwithstanding that the students and organizations involved have made it abundantly clear that they will "'re-group and carry out this protracted struggle through other means,' and that supporters should 'rest assured' that the concessions it gained from Harvard would not 'pacify' [them]." (SAC ¶ 275). As one participant stated: "This action, this movement, wasn't just the finale of a semester, it was the beginning." (*Id*.).

The SAC also discusses how Plaintiffs are not alone in not trusting Harvard to correct its antisemitism problem on its own. Over the last week, the Harvard Jewish Alumni Association and the U.S. House of Representatives' Committee on Education and the Workforce each released an investigative report, which confirmed that Harvard's actions in the face of systemic antisemitism—including and especially in regard to the encampment—reflects its deliberate indifference. (SAC ¶¶ 7-9).

## **ARGUMENT**

"The Civil Rules take a liberal stance toward the amendment of pleadings, consistent with the federal courts' longstanding policy favoring the resolution of disputes on the merits." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Under Rule 15(a)(2), courts are to "'freely give' leave to amend where the interests of justice so require[,] . . . even where a party requests leave to amend after a motion to dismiss has been fully briefed." *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192, 195 (1st Cir. 2015) (cleaned up); *see also* 5A Wright, Miller & Kane, Fed. Prac. & Proc. § 1474 ("Typically amendments of this character involve adding a necessary allegation in order to state a claim for relief" or to "make an amendment to amplify a previously alleged claim or defense.").

The Court should give Plaintiffs leave to amend because justice requires that Plaintiffs have the opportunity to litigate their claims and allegations against Harvard. Plaintiffs seek in good faith to add information to their complaint about the occupation that began on April 24, 2024—nearly a month after Plaintiffs filed the FAC and two weeks after Harvard moved to dismiss—which is thus "new information, not available to [them] when [they] drafted [their] original complaint[s]." *Amyndas*, 48 F.4th at 40. As alleged in the SAC, this occupation resulted in enormous harm to Plaintiffs and other Jewish students, and although it finally ended after three weeks, after Harvard agreed to accommodate the occupiers' demands with, among other things, meetings with Harvard's governing financial body concerning their demand that Harvard "divest" from Israel, the occupiers have made clear that they intend to resume their efforts, presumably including after summer vacation.

Plaintiffs' proposed amendment will not result in undue delay. Plaintiffs' motion comes soon after Harvard introduced articles relating to the encampment in its reply in support of its motion to dismiss, *see* Dkts. 50-51. The new events included in the SAC—namely, the unsanctioned occupation of Harvard Yard by disruptive and harassing anti-Israel and antisemitic protestors permitted by Harvard's ongoing deliberate indifference towards antisemitism, and the release of new reports from Congress and an alumni association—had not occurred when Plaintiffs filed the FAC. Accordingly, amendment is appropriate here. *See Amyndas*, 48 F.4th at 39 (granting leave to amend where plaintiffs filed motion "less than two months after the emergence of new evidence"); *see also Savoy v. White*, 139 F.R.D. 265, 268–69 (D. Mass. 1991) (rejecting argument that year-long delay made motion for leave to amend untimely); *Carmona v. Toledo*, 215 F.3d 124, 136 (1st Cir. 2000) (noting instances where leave to amend was granted despite motion for leave being delayed as much as two-and-a-half years).

Nor would granting the motion result in any prejudice to Harvard. Such prejudice, which normally "takes the form of additional, prolonged discovery and a postponement of trial," is absent here. *Klunder v. Brown Univ.*, 778 F.3d 24, 34 (1st Cir. 2015). And "Rule 15(a)'s leave freely given standard typically applies even where a party requests leave to amend after a motion to dismiss has been fully briefed." *D'Agostino*, 802 F.3d at 195; *see also Fortuna v. Winslow Sch. Comm.*, 2022 WL 844046, at *3 (D. Me. Mar. 22, 2022) ("Although [plaintiff] amended his complaint once already, reliance on a pending motion to dismiss as justification to deny a motion to amend 'would appear to contravene the principle that leave to amend should be freely given.'" (quoting *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)).

Plaintiffs also respectfully request that oral argument on Harvard's motion to dismiss the FAC be adjourned pending any motion by Harvard to dismiss the SAC, should Harvard decide to file one.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend and for a continuance of oral argument should be granted.

Dated:   May 22, 2024                    Respectfully submitted,

ALEXANDER KESTENBAUM and STUDENTS AGAINST ANTISEMITISM, INC.

By their attorneys,

*/s/ Marc E. Kasowitz*
    Marc E. Kasowitz*
    Daniel R. Benson*
    Mark P. Ressler*
    Andrew L. Schwartz*
    Joshua E. Roberts*
    Andrew C. Bernstein*
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
mkasowitz@kasowitz.com
dbenson@kasowitz.com
mressler@kasowitz.com
aschwartz@kasowitz.com
jroberts@kasowitz.com
abernstein@kasowitz.com

Timothy H. Madden (BBO #654040)
**DONNELLY, CONROY & GELHAAR, LLP**
260 Franklin Street, Suite 1600
Boston, MA 02110
Tel: (617) 720-2880
thm@dcglaw.com

*Admitted *pro hac vice*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

I hereby certify that Plaintiffs have conferred with Counsel for Defendant in a good-faith attempt to resolve or narrow the issue.

*/s/ Marc E. Kasowitz*
Marc E. Kasowitz

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Marc E. Kasowitz*
Marc E. Kasowitz
