**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ALEXANDER KESTENBAUM and STUDENTS AGAINST ANTISEMITISM, INC., | Case No. 1:24-cv-10092-RGS |
| Plaintiffs, | |
| v. | Leave to file granted on July 8, 2024 |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | |
| Defendant. | |

**REPLY MEMORANDUM IN SUPPORT OF
HARVARD'S MOTION TO DISMISS AND MOTION TO STRIKE**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.   PLAINTIFFS LACK STANDING TO PURSUE THEIR PREMATURE CLAIMS ................................ 1

    A.   SAA's Members Lack Standing To Seek Injunctive Relief ................................... 2

    B.   SAA Lacks Standing To Sue For Its Members ........................................................ 5

    C.   Plaintiffs' Claims Are Premature ............................................................................ 7

II.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE INTENTIONAL DISCRIMINATION ......................... 9

    A.   Harvard Was Not Deliberately Indifferent As A Matter Of Law ........................... 9

    B.   Plaintiffs Fail To Plead Discriminatory Animus .................................................. 11

III.   PLAINTIFFS FAIL TO PLEAD A CONTRACT CLAIM ............................................................. 12

IV.   PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF SHOULD BE STRUCK .............................. 13

CONCLUSION ...................................................................................................................... 15

i

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Alexander* v. *Sandoval*, 532 U.S. 275 (2001) ...............................................................9

*Algonquin Gas Transmission, LLC v. Weymouth*, 919 F.3d 54 (1st Cir. 2019) ...........8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................12

*Boston Parent Coalition for Academic Excellence Corp. v. School Committee*,
     89 F.4th 46 (1st Cir. 2023)................................................................................7

*Brown v. Hot, Sexy & Safer Productions., Inc.*, 68 F.3d 525 (1st Cir. 1995)................6

*Brown v. Suffolk University*, 2021 WL 2785047 (D. Mass. Mar. 31, 2021) ................12

*Brown v. Trustees of Boston University*, 891 F.2d 337 (1st Cir. 1989)...................14, 15

*California v. Texas*, 593 U.S. 659 (2021) .......................................................................4

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ..........................................................2

*Clapper v. Amnesty International USA*, 568 U.S. 398 (2013)..........................................2

*Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*,
     551 F.3d 10 (1st Cir. 2008)...............................................................................15

*Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142 (D. Mass. 2011) ..................3

*Czerwienski v. Harvard University*, 666 F. Supp. 3d 49 (D. Mass. 2023) ...................13

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38
     (1st Cir. 2020) ....................................................................................................4

*Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).........................9, 15

*Doe v. Amherst College*, 238 F. Supp. 3d 195 (D. Mass. 2017)...................................12

*Doe v. Brandeis University*, 177 F. Supp. 3d 561 (D. Mass. 2016) ..............................13

*Doe v. Brown University*, 43 F.4th 195 (1st Cir. 2022)................................................12

*Doe v. University of Maine System*, 2020 WL 981702 (D. Me. Feb. 20, 2020).........8, 9

*Doe v. University of Tennessee*, 186 F. Supp. 3d 788 (M.D. Tenn. 2016) .....................3

*Ernst & Young v. Depositors Economic Protection Corp.*,
45 F.3d 530 (1st Cir. 1995)........................................................................................8

*Felber v. Yudof*, 851 F. Supp. 2d 1182 (N.D. Cal. 2011) ...............................................11

*Feminist Majority Foundation v. Hurley*, 911 F.3d 674 (4th Cir. 2018)........................11

*Garcia-Rubiera v. Fortuno*, 727 F.3d 102 (1st Cir. 2013) ............................................15

*Gill v. Whitford*, 585 U.S. 48 (2018)................................................................................5

*Grace v. Board of Trustees, Brooke East Boston*, 85 F.4th 1 (1st Cir. 2023) ...............10

*Guckenberger v. Boston University*, 957 F. Supp. 306 (D. Mass. 1997).......................11

*Hagenah v. Community Enterprises, Inc.*, 2016 WL 1170963 (D. Mass. Mar. 23,
2016) ......................................................................................................................14

*Hayes v. McGee*, 2011 WL 39341 (D. Mass. Jan. 6, 2011)...........................................14

*Howard v. Feliciano*, 583 F. Supp. 2d 252 (D.P.R. 2008) ............................................10

*In re McCabe*, 2006 WL 8462691 (D. Mass. Apr. 3, 2006)..........................................14

*Jumpfly, Inc. v. Torling*, 2010 WL 1978732 (N.D. Ill. May 17, 2010) ..........................14

*Morrell v. United States*, 185 F.R.D. 116 (D.P.R. 1999)...............................................14

*National Association of Government Employees v. Mulligan*,
914 F. Supp. 2d 10 (D. Mass. 2012) ...................................................................5, 6

*New Hampshire Motor Transport Association v. Rowe*, 448 F.3d 66 (1st Cir.
2006) .........................................................................................................................5

*NLRB v. Express Publishing Co.*, 312 U.S. 426 (1941).................................................14

*Norris ex. rel. A.M. v. Cape Elizabeth School District.*, 969 F.3d 12
(1st Cir. 2020) ........................................................................................................11

*Penobscot Nation v. Frey*, 3 F.4th 484 (1st Cir. 2021)....................................................8

*Plymouth County Nuclear Information Committee, Inc. v. Boston Edison Co.*,
655 F.2d 15 (1st Cir. 1981)....................................................................................14

*Pocono Mountain Charter School v. Pocono Mountain School District*,
908 F. Supp. 2d 597 (M.D. Pa. 2012) .....................................................................3

*Porto v. Town of Tewksbury*, 488 F.3d 67 (1st Cir. 2007)..............................................9

*Rapuano v. Trustees of Dartmouth College*, 334 F.R.D. 637 (D.N.H. 2020)................................6

*Roe v. Healey*, 78 F.4th 11 (1st Cir. 2023) ..............................................................................2

*Ruffino v. State Street Bank & Trust Co.*, 908 F. Supp. 1019 (D. Mass. 1995)...........................4

*Sexual Minorities Uganda v. Lively,* 960 F. Supp. 2d 304 (D. Mass. 2013) .................................7

*Shulse v. Western New England University,* 2020 WL 4474274 (D. Mass. Aug. 4, 2020) .............................................................................................................................13

*Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018) ........................................................................14

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...............................................................................3

*Van v. American Airlines, Inc.*, 370 F. Supp. 3d 218 (D. Mass. 2019)......................................1, 2

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................................................5, 6

*Zeno v. Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012)...........................10, 15

## RULE PROVISIONS

Fed. R. Civ. P.
     Rule 12 ......................................................................................................................1
     Rule 53 ....................................................................................................................15

## OTHER AUTHORITIES

Gerald A. Reynolds, Assistant Secretary, Office for Civil Rights, United States Department of Education, *Dear Colleague Letter* (July 28, 2003), https://www2.ed.gov/about/offices/list/ocr/firstamend.html ..............................................10

2 *Moore's Federal Practice* § 12.37 (2014) ...............................................................................13

At issue in this case is not whether criticism of Israel or manifestations of antisemitism have erupted at Harvard and on campuses across the country, but rather whether Harvard has been, and will continue to be, deliberately indifferent to antisemitism such that it can be said to be intentionally discriminating against its Jewish students. That is what Plaintiffs must show in this private Title VI action, and the Second Amended Complaint itself shows that no such intentional discrimination has been plausibly pled. SAC ¶¶ 75, 77, 91-94, 103-104, 106, 108, 124, 127, 131, 134-135, 155, 191, 232, 240, 274, ECF 63. The case also is jurisdictionally defective. Article III's limits on judicial power are not a delay tactic or "trust us" defense. They are important guardrails that, along with Plaintiffs' failure to state a claim, require dismissal.

## ARGUMENT

### I.      PLAINTIFFS LACK STANDING TO PURSUE THEIR PREMATURE CLAIMS

The Court should dismiss under Rule 12(b)(1). Plaintiffs concede that Kestenbaum's injunctive claims are moot. Opp. 13 n.9, ECF 80. SAA's injunctive claims also fail because its members lack standing to seek injunctive relief; they rely on past harms rather than a "certainly impending" injury traceable to Harvard and redressable by the Court. SAA cannot sue for its members because its claims require individual participation. And Plaintiffs' claims are premature because Harvard is responding to the incidents about which Plaintiffs complain.

In evaluating this Rule 12(b)(1) motion, the Court should certainly take account of the supporting declarations, which provide jurisdictional facts that demonstrate Harvard is acting to address complaints of antisemitism, including complaints raised by Plaintiffs. *See, e.g.*, Weenick Decl. ¶¶ 3-8. The legal significance of these facts is not "dependent on factual issues going to the merits." *Van v. American Airlines, Inc.*, 370 F. Supp. 3d 218, 224 (D. Mass. 2019). The Court therefore "is free to weigh the evidence" and decide—without reaching any merits question—that Harvard's ongoing response renders Plaintiffs' claims premature and defeats their

1

allegations of injury traceable to Harvard.  *Id.*  Plaintiffs have "'the burden of proving by a preponderance of the evidence the facts supporting jurisdiction[,]'" *id.* at 223, and they have pled no facts putting Harvard's jurisdictional evidence in dispute.

### A.     SAA's Members Lack Standing To Seek Injunctive Relief

The only claims for injunctive relief remaining in this suit belong to SAA—Kestenbaum has graduated—and its members have not shown the "certainly impending" injury required for such relief.  Plaintiffs concede (Opp.14) "past harm" cannot confer standing for an injunction absent "ongoing injury or a sufficient threat that the injury will recur."  *Roe v. Healey*, 78 F.4th 11, 21 (1st Cir. 2023).  And they are wrong to argue that their "enrollment at Harvard," coupled with Harvard's alleged "continuing inadequate response" to antisemitism, establishes injury.

The sole basis for SAA's claim of future harm traceable to Harvard is its "subjective apprehension," *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983), that Harvard's response will be "inadequate" (Opp.14).  But even an "objectively reasonable likelihood" of harm is insufficient to establish standing for injunctive relief—"threatened injury must be certainly impending to constitute injury in fact."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).  SAA argues that its members were "subject to … a regularly recurring pattern of antisemitic activity" (Opp.14 n.11) and thus face "ongoing harm to their educational experience while enrolled at Harvard" (Opp.12 n.8).  But SAA does not plead any facts substantiating ongoing or imminent harm.

The facts instead show that Harvard has taken action to prevent ongoing or future harm. Harvard increased on-campus security and bolstered resources for student complaints in the immediate aftermath of October 7, published new guidelines tailored to on-campus protests, directly engaged with students who raised concerns about discrimination, and used both disciplinary and non-disciplinary tools to secure a peaceful end to the encampment in Harvard

Yard.  Weenick Decl. ¶¶ 3-8; Whelsky Decl. ¶¶ 4-14; Ellsworth Decl. Ex. 3-4, 11-12; Reply

Decl. Exs. 1, 11.  Encampment participants have faced real consequences: dozens were placed on

probation and some were not conferred degrees at Commencement.  Reply Decl. Exs. 1-3, 11.

SAA's allegations regarding the encampment acknowledge that Harvard successfully eliminated,

among others, this principal source of the harm Plaintiffs claim.  SAC ¶¶ 2, 274.  And Harvard's

work to prevent the future harm that Plaintiffs fear remains ongoing, with new programming to

address antisemitism slated for the Fall.  Last month, the Task Force on Combating Antisemitism

released initial recommendations, demonstrating the attention and resources Harvard has devoted

to ensuring that Jewish community members are safe and welcome on campus.  Reply Decl. Exs.

4-5.  The Task Force will assist in the development of programs to implement its preliminary

recommendations and deliver a final report in the coming academic year.  *See id.*

Plaintiffs' authorities (Opp.14) turned on facts demonstrating a stagnant institutional

response or systemic failures that stand in stark contrast to the steps Harvard is taking to address

complaints of antisemitism.  *See Connor B. ex rel. Vigurs v. Patrick*, 771 F. Supp. 2d 142, 152

(D. Mass. 2011) (standing to enjoin foster care practices due to "understaffed and improperly

trained workforce" and "inability to provide children with basic health and educational

services"); *Doe v. University of Tenn.*, 186 F. Supp. 3d 788, 814 (M.D. Tenn. 2016) (standing to

enjoin sexual assault procedures based on "*patterns* of bias in the proceedings and disregard for

victims' rights").  Nor do Plaintiffs' cases (Opp.13) relieve them of their burden to show

Harvard's alleged conduct has affected each plaintiff "in a personal and individual way."

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  One involved a finding of particularized harm

to student plaintiffs because each could establish personal injury traceable to discriminatory

efforts to close their school.  *Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 908 F. Supp. 2d

597, 615 (M.D. Pa. 2012).  The other did not discuss standing at all.  *Ruffino v. State St. Bank & Tr. Co.*, 908 F. Supp. 1019 (D. Mass. 1995).  Plaintiffs cite no precedent for their claimed right to litigate, through an association representing some unnamed students, the personal experiences of yet other students who are not alleged to belong to the association and may not share its goals.

Plaintiffs also cannot show that any "certainly impending" injury would be traceable to Harvard.  Plaintiffs have the "burden" to establish "a causal relation between injury and challenged action."  *See California v. Texas*, 593 U.S. 659, 675 (2021).  Their own theory (Opp.15) is that Harvard has caused them injury by "creat[ing] a worsening hostile educational environment that will continue to injure [them]."  To establish standing for prospective relief, they therefore must demonstrate a "direct causal connection" between Harvard's institutional conduct and the harassment they fear will be committed by third parties.  *Dantzler, Inc. v. Empresas Berrios Inventory & Ops., Inc.*, 958 F.3d 38, 47 (1st Cir. 2020).  In other words, Plaintiffs must show a certainly impending injury is traceable not just to harassment by Harvard community members, but also to Harvard's allegedly ineffective efforts to address any future harassment.  Any such showing is refuted by Plaintiffs' allegations identifying the ways Harvard has worked to combat harassment, *e.g.*, SAC ¶ 274, and uncontroverted evidence of Harvard's continuing efforts to do so, Weenick Decl. ¶¶ 3-8; *see supra* pp.2-3.

Finally, Plaintiffs have not established that the injunction they request—which would install a monitor to superintend every policy and practice at every Harvard school to ensure its compliance with Title VI and would force Harvard to expel and terminate students and faculty and return donations—is appropriately tailored to redress Plaintiffs' alleged harm.  *See infra* Part IV.  Decades of caselaw hold that plaintiffs lack standing to seek overbroad remedies.  In *Gill v. Whitford*, the Supreme Court reiterated the principle that "a plaintiff's remedy must be 'limited

to the inadequacy that produced [his] injury in fact,'" and explained what such a remedy looked like: one that redressed "the individual's own" injury resulting from a misdrawn legislative district.  585 U.S. 48, 66 (2018).  Plaintiffs' requested injunction would extend far beyond their own asserted injuries, affecting policies and practices at Harvard schools in which Plaintiffs have never set foot and Harvard community members whom Plaintiffs have never met.

**B.**     **SAA Lacks Standing To Sue For Its Members**

Even if SAA's *members* had standing, SAA lacks associational standing because its claims plainly require the individualized participation of the students allegedly harmed.  *National Ass'n of Gov't Emps. v. Mulligan*, 914 F. Supp. 2d 10, 14 (D. Mass. 2012).  Plaintiffs do not dispute SAA lacks standing to seek damages.  *Warth v. Seldin*, 422 U.S. 490, 515-516 (1975).  But they argue (Opps.17-18) that SAA may "seek[] injunctive relief" because it "challenges a widespread unlawful pattern and practice."  Even when an injunction is sought, "representational standing is inappropriate if adjudicating the merits of an association's claim requires the court to engage in a 'fact-intensive-individual inquiry.'"  *New Hampshire Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72 (1st Cir. 2006), *aff'd*, 552 U.S. 364 (2008).  Associational standing is not permitted where, as here, "'member circumstances differ and proof of them is important.'"  *Id.*

A factfinder could not determine that any SAA member experienced a hostile environment, was denied educational opportunities, was subjected to a discriminatory double standard, or experienced a breach of contract without evaluating the unique circumstances of that member.  It is not enough for SAA to argue (Opp.18 n.15) that it seeks "policy-level changes that will affect all students equally."  For one thing, SAA does not seek relief that "will affect all students equally."  *Id.*  As part of its overbroad injunctive request, SAA impermissibly asks the Court to order SAA-specific relief by firing or expelling administrators, professors, and students allegedly "responsible for the antisemitic abuse … SAA members experience."  SAC, Prayer for

Relief (A).  And many students and faculty have strongly opposed the discipline SAA seeks.
Reply Decl. Exs. 6-8.

Regardless of the relief sought, associational standing is inappropriate where, as here,
"the nature of the claim…make[s] the individual participation of each injured party indispensable
to proper resolution of the cause."  *See Warth*, 422 U.S. at 511.  SAA's hostile environment
claims will require individualized inquiries into whether any given SAA member "subjectively
perceive[d] the environment to be abusive."  *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d
525, 540 (1st Cir. 1995), *abrogated on other grounds by Martinez v. Cui*, 608 F.3d 54 (1st Cir.
2010).  As another district court has recently observed, the "need to litigate the individualized
issue of each class member['s] subjective perception of the environment" would likely preclude
certification of a litigation class on hostile educational environment claims.  *Rapuano v. Trustees
of Dartmouth Coll.*, 334 F.R.D. 637, 651 (D.N.H. 2020).  SAA's discriminatory double standard
claims will also require the Court to "review the individual circumstances surrounding each"
incident "to assess … which [SAA] members, if any, were discriminated against."  *Mulligan*,
914 F. Supp. 2d at 14.  Plaintiffs' contract claims likewise will require the same individualized
inquiry to determine the nature and extent of any breach.

Indeed, SAA's claims hinge on allegations that one or more of its members personally
experienced harassment and discrimination, *e.g.*, SAC ¶¶ 77, 79, 116-117, 125, 131, and that
these experiences affected those members in ways that denied them educational opportunities, *id.*
¶¶ 304-310.  For SAA to prevail on these claims, its members will have to substantiate SAA's
allegations with evidence of their personal experiences.  For instance, they will have to offer
testimony and submit to cross-examination so that a factfinder can make credibility
determinations.  That is especially true because SAA does not purport to represent all—or even

6

most—Jewish students at Harvard.  *See id.* ¶¶ 20-26; Reply Decl. Ex. 9-10.  Its claims cannot

meaningfully be adjudicated without the participation of those for whom it claims to speak.

Plaintiffs' authorities are inapt.  *Boston Parent Coalition for Academic Excellence Corp.*

*v. School Committee* involved a facial challenge to a school policy with an allegedly disparate

impact.  89 F.4th 46, 56 (1st Cir. 2023).  No individual participation was required "given the

documented and apparently uncontested nature of the student-specific facts" underlying the

disparate impact allegations, "i.e., GPA and school preference."  *Id.* at 55.  And in *Sexual*

*Minorities Uganda v. Lively*, the court permitted an LGBTQ rights group to seek an injunction

against "persecution" under the Alien Tort Statute—a claim that did not require evidence of any

individual plaintiff's subjective experience and did not rely on a showing that any individual was

treated differently when compared to a similarly situated individual.  960 F. Supp. 2d 304, 327

(D. Mass. 2013).  Here, by contrast, SAA members will have to participate in the litigation to

establish the student-specific facts necessary to prevail on their claims.

### C.    Plaintiffs' Claims Are Premature

In any event, Plaintiffs' claims are premature because they challenge Harvard's response

to shifting events and its in-progress efforts to prevent and respond to harassment while

protecting free speech rights.  In each of their pleadings, Plaintiffs assert that Harvard has not yet

done enough to protect Jewish students and combat antisemitism on campus.  But as Plaintiffs'

own allegations demonstrate, and unfolding developments reveal, Harvard has responded and is

responding to complaints.  Plaintiffs filed their third and latest complaint in this action to include

allegations about the encampment formed in Harvard Yard in May, proclaiming that it proves

that Harvard has turned a blind eye to its Jewish students and that the "time, place, and manner"

restrictions the University implemented in January are hollow "pieties."  But Harvard disbanded

the encampment and disciplined students for violating its University-wide policy.  SAC ¶ 274;

Ellsworth Decl. Ex. 11-12; Reply Decl. Exs. 1-3, 11.  Harvard's response has evolved as events have evolved, resulting in increased safety and reporting resources, stronger rules governing on-campus events, and concrete recommendations for a path forward.  *See supra* pp.2-3.

Plaintiffs concede Harvard is taking action (Opp.1-3), but dismiss as empty gestures what Harvard has done, is doing, and has committed to do.  They scoff at the suggestion that it takes time and care to address allegations of identity-based harassment amid heightened tensions and widespread protest activity.  But in evaluating ripeness and Harvard's efforts to date, it is crucial to take account of the unprecedented and evolving circumstances.  This past year, for the first time in memory—perhaps ever—large blocs of students and faculty strongly disagreed with, and opposed, each other on an issue of profound significance.  And Jewish students and faculty have come down on both sides.  *See, e.g.*, SAC ¶ 100; Reply Decl. Exs. 9-10.

Plaintiffs' insistence (Opp.11) that "their claims in no way depend on the outcome of Harvard's efforts" is not plausible given that this lawsuit is premised entirely on Plaintiffs' dissatisfaction with the results of Harvard's response to date.  *See* Opp.1, 23.  Plaintiffs' claims, which hinge on the outcome of these efforts, "'involve[] uncertain and contingent events.'" *Algonquin Gas Transmission, LLC v. Weymouth*, 919 F.3d 54, 62 (1st Cir. 2019).  Article III therefore dictates that this Court refrain from deciding them at this juncture.  *Id.*  Dismissal is also warranted based on prudential considerations that, despite Plaintiffs' contrary assertion (Opp.10), the First Circuit continues to apply.  *See Penobscot Nation v. Frey*, 3 F.4th 484, 509 (1st Cir. 2021).  In particular, the legal issues in this case are "likely to be significantly affected by further factual development." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995).  Plaintiffs cite *Doe v. University of Maine System*, 2020 WL 981702, at *11 (D. Me. Feb. 20, 2020), but the claim found fit for resolution in *Doe* involved a completed

process that had injured plaintiffs, obviating the need for "further factual development."  By

contrast, Plaintiffs' claims "hing[e] on the outcome" of processes that remain ongoing.  *Cf. id.*

**II.    PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE INTENTIONAL DISCRIMINATION**

Plaintiffs do not state a claim under Title VI because they do not plausibly allege

intentional discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

### A.    Harvard Was Not Deliberately Indifferent As A Matter Of Law

Plaintiffs fail to plead that Harvard has shown "deliberate indifference to known acts of

harassment" that "amounts to an intentional violation" of Title VI, which is required to state a

hostile environment claim.  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).

Instead, Plaintiffs describe the myriad ways Harvard has acted in response to complaints of

antisemitism.  Opp.23; SAC ¶¶ 75, 77, 91-94, 103-104, 106, 108, 124, 127, 131, 134-135, 155,

191, 232, 240, 274.  Plaintiffs argue (Opp.23-26) they have pleaded deliberate indifference

because they believe Harvard's response has not yet delivered their preferred outcomes and has

not eliminated from its campus protected speech Plaintiffs oppose.  Neither contention

establishes that Harvard's response has been "clearly unreasonable in light of the known

circumstances," and thus Plaintiffs' claim fails "as a matter of law."  *Davis*, 526 U.S. at 648-649.

*First*, the deliberate indifference standard does not require universities "to 'remedy' peer

harassment" or "to 'ensure that students conform their conduct to' certain rules."  *Davis*, 526

U.S. at 648 (alterations omitted).  It is, instead, "a stringent standard of fault, requiring proof that

[Harvard] disregarded a *known or obvious* consequence of [its] action or inaction."  *Porto v.

Town of Tewksbury*, 488 F.3d 67, 73 (1st Cir. 2007) (quotation omitted).  Allegations that

Harvard "could or should have done more" are "insufficient to establish deliberate indifference"

as a matter of law.  *Id.*  Plaintiffs' frustration (Opp.22-24) that Harvard has not adopted their

preferred approach or acted on their preferred timeline does not render Harvard's response

"toothless," let alone deliberately indifferent.  Indeed, Plaintiffs' authorities (Opp.23-24) explain what does constitute deliberate indifference: "continu[ing] to use th[e] same methods to no avail" despite "actual knowledge that its efforts to remediate are ineffective," *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 669 (2d Cir. 2012); "d[oing] nothing or fail[ing] to take additional reasonable measures" once "initial remedies" prove ineffective, *Grace v. Board of Trs., Brooke East Boston*, 85 F.4th 1, 11 (1st Cir. 2023); or abandoning all efforts to fix the problem, *see Howard v. Feliciano*, 583 F. Supp. 2d 252, 257 (D.P.R. 2008).  Harvard has done no such thing; it has continually reevaluated and worked to improve its response to complaints of antisemitism, including by implementing new policies, creating a new task force, and clearing the protest encampment in Harvard Yard that violated Harvard's time, place, and manner rules—themselves implemented in January in response to the events on campus.  *E.g.*, SAC ¶¶ 52, 191, 274.

*Second*, Plaintiffs resist (Opp.24-26) the fact that, as the Department of Education has long held, Title VI "should not be interpreted in ways that would lead to the suppression of protected speech on public or private campuses."  Gerald A. Reynolds, Assistant Sec'y, Off. for Civ. Rts., U.S. Dep't of Educ., *Dear Colleague Letter* (July 28, 2003).  Harvard thus did not act with deliberate indifference by not censoring the wide swathe of alleged conduct that involved speeches, rallies, boycotts, protests, public statements, and academic assignments.  Plaintiffs point to inapposite cases stating the obvious points that a decisionmaker's use of "[r]acially charged code words" or "disparaging Israel" can supply evidence of discrimination by a decisionmaker (Opp.21 n.19), or that abusive insults directed at plaintiffs ("'homophobic epithets,'" "comments such as 'dumb bitch,'" "comments about a student's body") can contribute to a hostile environment (Opp.24 n.27).  None establishes that a school acts with deliberate indifference when, in actively responding to alleged harassment, it also strives to

respect the expressive rights of students and faculty.  To the contrary, imposing hostile-environment liability based on "unpopular speech" by school officials, *Guckenberger v. Boston University*, 957 F. Supp. 306, 316 (D. Mass. 1997), or "expressive conduct" at student protests, *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011), imperils free expression.  Because liability in such circumstances would violate a public institution's constitutional obligations to its community, it cannot be the basis of a Title VI claim against private universities either.

Plaintiffs' argument (Opp.24) that Harvard is relabeling "verbal harassment" as "'political' speech" to avoid liability ignores that schools are tasked with determining when speech crosses the line.  *See Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 29 n.18 (1st Cir. 2020).  Deliberate indifference is a high bar, and Harvard does not act with deliberate indifference simply because it does not toe Plaintiffs' line as to what speech is protected and what speech violates its policies.  Plaintiffs cannot seriously suggest (Opp.26) that Harvard only responds to transphobic, ageist, or fatphobic speech but never antisemitism, given their allegations that Harvard has responded to complaints of antisemitism, including in recent months.  Just a handful of examples show that this case is nothing like *Feminist Majority Foundation v. Hurley*, where a university took only "one-off" "short-term countermeasure[s]" and claimed it was "powerless" to address violent threats.  911 F.3d 674, 690-691 (4th Cir. 2018).  When Kestenbaum reported threats, Harvard fired the perpetrator.  SAC ¶ 204.  Harvard worked with Sidechat—a platform it neither owns nor operates—to address antisemitic posts, including by strictly limiting Sidechat access.  *Id.* ¶ 149.  And Harvard ended the encampment Plaintiffs allege was a site of threatening behavior toward Jewish students.  *Id.* ¶ 274.

### B.    Plaintiffs Fail To Plead Discriminatory Animus

Plaintiffs do not come close to plausibly alleging discriminatory animus in the form of a double standard that disfavors Jewish students.  "For comparator proof to raise a red flag … the

two 'incidents' circumstances must be reasonably comparable' and 'the nature of the infraction and knowledge of the evidence by college officials need be sufficiently similar to support a finding of facial inconsistency.'" *Doe v. Brown Univ.*, 43 F.4th 195, 207 (1st Cir. 2022). Plaintiffs fail to "raise a red flag" because they do not compare apples to apples.

Plaintiffs argue (Opp.27) that Harvard must "discipline students" they accuse of harassment in this lawsuit because Harvard has previously "censored controversial speakers," "cancel[ed] a sports season for a team's sexist remarks," and "rescind[ed] an incoming freshman's admission because he used racial slurs." But nowhere do Plaintiffs detail how they are "similarly situated" to the individuals involved in those incidents, or how these events are sufficiently "equivalent" to plausibly show that Harvard "acted with discriminatory intent." *Brown Univ.*, 43 F.4th at 207-208. Plaintiffs do not allege that those they accuse of antisemitism were found to have violated similar policies, but "received lesser punishments[,]" than others Harvard has disciplined. *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 224 (D. Mass. 2017). Nor do they allege Harvard has the same evidence of policy violations now as it did on past occasions. Plaintiffs cannot simply claim (Opp.27) that a discriminatory double standard will be "revealed in discovery." Plaintiffs are "not entitled to discovery" if they cannot plausibly allege a violation of Title VI. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Plaintiffs' conclusory assertions that Harvard is "sympathetic" to students who engage in harassment rather than students who experience it (Opp.29) falls far short of the required showing that Harvard "selectively enforced its rules … due to" Plaintiffs' ancestry. *Brown Univ.*, 43 F.4th at 207.

## III.     PLAINTIFFS FAIL TO PLEAD A CONTRACT CLAIM

Plaintiffs do not plead breach of contract because they still have not identified any "definite and certain promises about the university's environment or services" Harvard is alleged to have broken. *Brown v. Suffolk Univ.*, 2021 WL 2785047, at *6 (D. Mass. Mar. 31, 2021).

Plaintiffs simply list provisions of different policies, without identifying which policies applied to Plaintiffs, which required Harvard to act under any particular circumstance, what they required Harvard to do, or how Harvard fell short.  *See* SAC ¶ 333.  Plaintiffs' suggestion (Opp. 29-30) that courts have found plausible claims of breach based on similar allegations is simply wrong.  In *Shulse v. Western New England University*, a statement in a student handbook that the university would provide an "environment free from discrimination" was not dispositive.  2020 WL 4474274, at *9 (D. Mass. Aug. 4, 2020).  The court instead looked to other representations, including that the university "offer[s] services for students with disabilities based on current documentation and academic need[,]" and "adheres to the stipulations" of the ADA.  *Id.*  And none of the policy provisions that formed a contract in *Czerwienski v. Harvard University*, 666 F. Supp. 3d 49 (D. Mass. 2023), involved "similar promises" (Opp.29) to the general prohibition on "discriminatory harassment" at issue here.  SAC ¶ 47.  *Czerwienski* relied on a promise to take "far more specific" actions, such as "provid[ing] prompt and equitable methods of investigation and resolution," and "protect[ing] from retaliation [those] who make good faith reports of suspected violations of the law or University policy."  666 F. Supp. 3d at 100.

Plaintiffs' implied covenant claim cannot succeed where their Title VI and contract claims fail.  Just as Plaintiffs fail to plead a breach of their reasonable expectations, they put forward no plausible allegations that Harvard violated their "reasonable understanding of performance obligations."  *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 612 (D. Mass. 2016).  The claim that policies have been applied selectively (Opp.30) certainly does not establish a breach of the implied covenant, as Plaintiffs fail to plead a double standard.  *Supra* Section II.B.

## IV.   PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF SHOULD BE STRUCK

"[M]otions to strike requests for certain types of relief … are generally granted if such relief is not recoverable under the applicable law."  2 *Moore's Federal Practice* § 12.37[3]

(2024).  Courts strike remedies where, as here, they are unavailable.  *E.g.*, *Hagenah v. Community Enters., Inc.*, 2016 WL 1170963, at *8 (D. Mass. Mar. 23, 2016).  And they properly strike injunctive requests when the law forbids the relief sought.  *E.g.*, *Plymouth Cnty. Nuclear Info. Comm., Inc. v. Boston Edison Co.*, 655 F.2d 15, 16 (1st Cir. 1981); *Jumpfly, Inc. v. Torling*, 2010 WL 1978732, at *3 (N.D. Ill. May 17, 2010).  Plaintiffs' authorities (Opp.18) do not hold that motions to strike impermissible relief require a showing of redundancy or prejudice. *Morrell v. United States*, 185 F.R.D. 116, 117-118 (D.P.R. 1999) (describing standard for "motion to strike surplus matter from an answer"); *Hayes v. McGree*, 2011 WL 39341, at *2 (D. Mass. Jan. 6, 2011) (motion to strike "excessively detailed" complaint).

Plaintiffs' requested injunction should be struck because it is not "narrowly tailored to give only the relief to which plaintiffs are entitled." *Brown v. Trustees of Bos. Univ.*, 891 F.2d 337, 361 (1st Cir. 1989).  The injunction would instead "sweep[] … more broadly than necessary" by restraining Harvard in ways that are not necessary to afford Plaintiffs complete relief.  *See Sindi v. El-Moslimany*, 896 F.3d 1, 33-34 (1st Cir. 2018).  Plaintiffs argue (Opp.16) that the Court may broadly enjoin "acts which are of the same type or class as [the] unlawful acts" for which they allege Harvard is responsible.  *In re McCabe*, 2006 WL 8462691, at *5 (D. Mass. Apr. 3, 2006) (quoting *NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941)).  But Plaintiffs ignore the admonition that even finding Harvard liable for a Title VI violation would "not justify an injunction broadly to obey the statute," which could "subject [Harvard] to contempt proceedings" based on future alleged violations that may be "unlike and unrelated to" those that prompted the injunction.  *See Express Publ'g*, 312 U.S. at 435-436.  Plaintiffs argue (Opp.19) that their request is narrow because they only ask that Harvard "be compelled to take measures to ensure that its Jewish students are treated equally and not subjected to severe and

pervasive discrimination," but this merely paraphrases the standard for liability under Title VI, confirming that their requested injunction risks "embroil[ing] the courts in the University's internal affairs" by commanding Harvard to "obey the statute." *Brown*, 891 F.2d at 361.

Plaintiffs deny (Opp.19) that they "request 'particular remedial measures'" in violation of *Davis*. If Plaintiffs are no longer seeking to force Harvard to terminate administrators, faculty, and staff and expel students; to decline and return donations; to institute required training; or to appoint a court monitor, SAC, Prayer for Relief A(i)-(v), that is reason enough to strike those demands. But those demands must also be struck under *Davis*. *Davis* took pains to clarify that "victims of peer harassment" have no "right to make particular remedial demands[,]" 526 U.S. at 648, in response to concerns that plaintiffs would induce "federal courts [to] administer school discipline" and become "the final arbiters of school policy," *id.* at 684-686 (Kennedy, J., dissenting). Harvard invokes its "right to select among various appropriate remedies" not as "a shield against liability[,]" but to strike a demand that would improperly require Harvard to adopt the particular remedies Plaintiffs request. *Cf. Zeno*, 702 F.3d at 671 n.15.

Finally, Plaintiffs cite no authority that could justify the appointment of a court monitor. There is none—not under Title VI and not under the carefully circumscribed terms of Rule 53. *See Garcia-Rubiera v. Fortuno*, 727 F.3d 102, 114 (1st Cir. 2013). Plaintiffs' own authority makes clear that monitors require "some exceptional condition[]" such as the need to prevent "'noncompliance with a preliminary injunction.'" *See Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 19 (1st Cir. 2008) (alterations omitted). Plaintiffs certainly do not identify any basis for concluding that Harvard will refuse to comply with any court-ordered relief. Their preemptive request to appoint a monitor should be struck.

## CONCLUSION

The Court should dismiss Plaintiffs' Second Amended Complaint with prejudice.

DATED:  July 10, 2024

Respectfully Submitted,

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

By its attorneys,

/s/ Felicia H. Ellsworth

Felicia H. Ellsworth, BBO #665232
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Mark A. Kirsch (*pro hac vice*)
Gina Merrill (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: (212) 790-5329
Fax: (212) 556-2222
mkirsch@kslaw.com
gmerrill@kslaw.com

Seth P. Waxman (*pro hac vice*)
Bruce M. Berman (*pro hac vice*)
Jeremy W. Brinster (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel:  (202) 663-6000
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
bruce.berman@wilmerhale.com
jeremy.brinster@wilmerhale.com

Zachary Fardon (*pro hac vice*)
KING & SPALDING LLP
110 N. Wacker Drive
Suite 3800
Chicago, IL 60606
zfardon@kslaw.com
Tel: (312) 764-6960
Fax: (312) 995-6330

Zoe M. Beiner (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
Tel: (202) 626-5575
Fax: (202) 626-3737
zbeiner@kslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2024, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth