IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

------------------------------------------------------------ X
ALEXANDER KESTENBAUM and
STUDENTS AGAINST ANTISEMITISM,
INC.,

                Plaintiffs,                Civil Action No. 1:24-cv-10092-RGS

      v.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,

                Defendant.
------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF KESTENBAUM'S OPPOSED MOTION FOR LEAVE TO FILE HIS THIRD AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Judicial economy, fairness, and good cause support the Plaintiffs' Motion for leave to file an amended complaint. This Motion and the Amended Complaint seek only to join John Doe #1 and John Doe #2 as Plaintiffs without adding new claims or legal theories, to focus and clarify the remaining issues in this case, and to allow this case to be decided on a single litigation track and on the merits rather than by procedural maneuvering.

This matter first began as two lawsuits—one lawsuit by Plaintiff Kestenbaum and SAA, of which John Doe #1 was a student-member, and a separate lawsuit by the Louis D. Brandeis Center for Human Rights under Law ("Brandeis Center") and Jewish Americans for Fairness in Education ("JAFE"), of which John Doe #2 was a

1

student-member. Following a motion by Harvard, the lawsuits were consolidated for discovery. On January 21, 2025, Plaintiffs SAA, Brandeis Center, and JAFE settled and dismissed their claims against Harvard. Plaintiff Kestenbaum did not join the settlement. Plaintiffs John Doe #1 and John Doe #2 were likewise unsatisfied with the settlement agreements and decided to pursue their own claims against Harvard.

Plaintiffs have good cause to seek leave to file and join an amended complaint. The student associations ultimately directed and decided the settlements, and the settlements were executed *after* the amended pleading deadline on December 6, 2024. Accordingly, none of the three Plaintiffs had any reason to know, before December 6, that an amended pleading would be necessary. The Plaintiffs have good cause to amend and join in a single suit, moreover, because it is the most efficient and effective path forward. Even if John Does #1 and #2 were not permitted to join this lawsuit, they intend to file their own lawsuits—which would likely be consolidated, just like the previous two cases, leading to the same outcome this Motion seeks, but with more briefing and wasted resources.

Either way, consolidation is highly likely because Harvard already represented to this Court that the Title VI lawsuits challenging Harvard's deliberate indifference should be consolidated for efficiency. Dkt. 68. Harvard is thus estopped from taking the opposite position. Harvard was also correct the first time: each of Plaintiffs' claims involves the same hostile environment on campus for Jews, each claim implicates Harvard's broadly applicable policies and inaction to protect Jews as a group, and each Plaintiffs' individual experiences will be relevant to the others' claims. *See, e.g.*,

*Jackson v. Quanex Corp.*, 191 F.3d 647, 660 (6th Cir. 1999) (discriminatory conduct against other minorities is relevant in hostile environment claim).

By contrast, having two (or three) separate tracks of litigation on the same claims, defenses, and subject matter would be a hassle for the Court and the Parties. The witnesses would be deposed multiple times, substantively similar document requests would be propounded in various iterations, and legally and factually similar arguments would be repeated throughout separate cases. John Does #1 and #2 also informed Harvard that they do not intend to add any new claims to the amended complaint, only to join the claims this Court has already sustained from Harvard's motion to dismiss. Accordingly, Harvard is not prejudiced; to the contrary, it stands to benefit from the streamlining of process. Further, this case has already been delayed and extended by ongoing settlement talks, and Harvard cannot claim any prejudice by further amendment at this very early stage in the proceedings.

Nonetheless, Harvard opposes this Motion, which would otherwise preserve this Court's time and resources. Harvard's motives are clear: it wants to squeeze Plaintiff Kestenbaum on a tight scheduling order and use its vast resources to divide and conquer the lawsuits—notwithstanding that the operative case had already been delayed by an informal stay of discovery for settlement discussions in November, December, and January. Indeed, Harvard did not make its initial document production until March 5, 2025, with only two-and-one-half months before the end of fact discovery on May 23, 2025. Even then, it produced only *ten* documents, all of which are Harvard University policies that appear to be publicly available.

3

Accordingly, if the Court does not grant leave to amend and vacate the Scheduling Order, it should extend the Scheduling Order by six months. The meager discovery produced thus far, coupled with the limited time to conduct additional discovery due to settlement discussions, is insufficient to ensure a fair process. Absent adequate time for meaningful discovery and depositions, this case risks being resolved through procedural maneuvering rather than a decision on the merits.

## BACKGROUND

### A. Procedural History

On January 10, 2024, Mr. Kestenbaum and SAA filed the original Complaint in this action and first amended complaint as of right shortly after. *See* Dkts. 1, 32. On April 12, 2024, Harvard filed a combined Motion to Dismiss and Motion to Strike Plaintiffs' First Amended Complaint. Dkt. 35. Following briefing on Harvard's motions, Plaintiffs moved for leave to file the SAC, which the Court granted. Dkts. 54, 60. Plaintiffs filed the SAC on May 28, 2024. Dkt. 63.

On May 22, 2024, the Brandeis Center and JAFE filed a parallel lawsuit against Harvard. *See Brandeis Center*, No. 1:24-cv-11354-RGS, Dkt. 1. After the *Brandeis Center* plaintiffs flagged the relationship between these cases, the *Brandeis Center* case was assigned to this Court. *Id.* at Dkts. 1, 7.

On June 11, 2024, Harvard filed its Amended Motion for Consolidation to consolidate "for all pretrial purposes *Kestenbaum v. President and Fellows of Harvard College*, No. 1:24-cv-10092- RGS, and *The Louis D. Brandeis Center for Human Rights Under Law v. President and Fellows of Harvard College*, No. 1:24-cv-11354-RGS."

4

Dkt. 68, at 1. In its motion, Harvard argued that "[t]he *Kestenbaum* and *Brandeis Center* actions should be consolidated because they assert similar claims based on many of the same factual allegations against the same defendant." *Id.* at 2. Harvard detailed the many benefits of consolidation and stated that "[t]he *Kestenbaum* Plaintiffs . . . will not be prejudiced by any modest delay resulting from the consolidation of these cases for pretrial purposes." *Id.* at 2-4.

On August 6, 2024, the Court issued an order granting in part and denying in part Harvard's Motion to Dismiss and denying the Motion to Strike. Dkt. 93. The Court allowed Plaintiffs' Title VI and contract claims to proceed. *Id.* On October 2, 2024, the Plaintiffs in *Kestenbaum* served their first set of Requests for Document Production. Decl. of J. Torchinsky ¶ 7.

On November 5, 2024, the Court granted Harvard's Amended Motion for Consolidation, allowing for consolidated discovery. Dkt. 100. On November 6, 2024, the Court issued a scheduling order establishing joint discovery deadlines. Dkt. 101. The order provided that amendments to the pleadings and/or joinder of additional parties must be completed by December 6, 2024, and for initial discovery requests to be served on December 27, 2024. *Id.*

Counsel for Harvard emailed counsel for *Kestenbaum* and *Brandeis* that the because of the consolidation order, their understanding was "that the written discovery previously served by the *Kestenbaum* plaintiffs [on October 2, 2024] will be replaced by forthcoming combined discovery requests on behalf of all plaintiffs." Decl. of J. Torchinsky, Ex. A. Thereafter, the Parties discussed the mechanics of discovery

5

and, on December 11, 2024, agreed with the Plaintiffs from both lawsuits serving joint discovery requests, except that the Plaintiffs in *Kestenbaum* would not withdraw their October 2, 2024 document requests. Decl. of J. Torchinsky ¶ 14, Ex. A. The Parties further agreed to negotiate deadlines for interrogatory requests and request for admissions. *Id.*

On December 6, 2024, counsel Jason B. Torchinsky and Douglas S. Brooks filed notices of appearance on behalf of Mr. Kestenbaum. Dkt. 102-03. At the same time these discovery discussions were occurring, the Parties engaged in productive settlement discussions and orally agreed to an informal stay of discovery deadlines. *See* Decl. of J. Torchinsky ¶ 12. Without first agreeing to lift the informal stay, however, Harvard served its Responses and Objections to the October 2, 2024 Requests for Production on December 27, 2024—*i.e.*, 86 days later. *See id.* ¶¶ 12, 15. Harvard also served its first Request for Production on all Plaintiffs in the *Kestenbaum* matter on December 27, 2024. *See* Decl. of J. Torchinsky ¶ 16.

The settlement discussions continued in December and January. *Id.* ¶ 17. On January 20, 2025, Harvard reached a settlement with the Brandeis Center, SAA, and JAFE, and the settling plaintiffs and Harvard filed a joint Motion to Dismiss with Prejudice on January 21, 2025. Dkt. 104. Their lawsuit was dismissed on January 23, 2025. Dkt. 105.

Plaintiffs Kestenbaum and John Does #1 and #2 were unsatisfied with the settlement agreements. Still, Mr. Kestenbaum and the John Does #1 and #2 continued to discuss settlement with Harvard separately. Mr. Kestenbaum's

6

settlement discussions with Harvard continued until January 15, 2025. Decl. of J. Torchinsky ¶ 20. John Does #1 and #2 continued settlement discussions into March. *Id.* ¶ 21.

When it was apparent that settlement for John Does #1 and #2 was no longer promising by February 2025, they notified Harvard of their intent to file an amended complaint, with the first communications expressing that position on February 14, 2025. *Id.* ¶ 23. The Parties met and conferred via call on February 14, 2025, and the Plaintiffs conveyed their intent to file an amended complaint without any new claims and with the addition of John Does #1 and #2 as plaintiffs. *Id.* Plaintiffs also proposed modifying discovery deadlines and amending the scheduling order in light of the delays in the case and the January 20, 2025 settlements with the associations. *Id.*, Ex. B.

On February 24, 2025, the Plaintiffs reiterated their intent to file an amended complaint given that settlement talks had faltered. *Id.* ¶ 26. That same day, Harvard informed the Plaintiffs that it was opposed to the amended complaint and opposed the addition of John Does #1 and #2 as plaintiffs. *Id.* ¶ 27. From February 24 to March 7, 2025, the Parties communicated their positions on the propriety of seeking leave to amend. *Id.* ¶ 29. The Parties again communicated on March 6, 2025, in which the Parties discussed settlement, the amended complaint and other topics. *Id.* ¶ 30. Following this call, it was clear that Harvard definitively rejected further settlement discussions and refused to consent to this Motion. *Id.*

Promptly after it became evident that further negotiations were futile, Plaintiffs filed this Motion.

### B. Plaintiffs' Proposed Third Amended Complaint

Plaintiffs seek leave to file a proposed Third Amended Complaint ("TAC"), appended as **Exhibit A**. The Complaint adds John Does #1 and #2, as well as relevant allegations not in the original complaint; but it does not add any new claims or theories of liability. John Does #1 and #2 join the claims that this Court already sustained in its Order. Dkt. 93. The proposed TAC also removes the allegations of SAA, which settled with Harvard and voluntarily dismissed, thereby streamlining the complaint.

## LEGAL STANDARD

The Federal Rules of Civil Procedure "take a liberal stance toward the amendment of pleadings, consistent with the federal courts' longstanding policy favoring the resolution of disputes on the merits." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Pursuant to Rule 15(a)(2), courts "'freely give' leave to amend where the interests of justice so require[,] . . . even where a party requests leave to amend after a motion to dismiss has been fully briefed." *U.S. ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 192, 195 (1st Cir. 2015) (cleaned up).

If a party seeks to amend a pleading after a deadline in the Court's scheduling order, it must establish "good cause." *Wahlstrom v. Zurich Am. Ins. Co.*, 2022 U.S. Dist. LEXIS 243934, *5 (citing *United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d

188, 192 (1st Cir. 2015). The good cause standard "focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019). While prejudice to the non-moving party is relevant, "the moving party's diligence or lack of diligence serves as the dominant criterion." *Id.* (citation and internal quotation marks omitted). "District court judges enjoy great latitude in carrying out case-management functions" like permitting amendments. *O'Brien v. Town of Bellingham*, 943 F.3d 514, 527 (1st Cir. 2019).

Courts have found good cause in granting leave to amend after the amendment deadline when a moving party acts diligently. *See Medeiros v. United States*, 621 F.2d 468, 470 (1st Cir. 1980) (citation omitted) (acknowledging "the strong policy favoring disposition of cases on the merits"); *Wahlstrom v. Zurich Am. Ins. Co.*, 2022 U.S. Dist. LEXIS 243934, *6-7 (granting the motion for leave to amend after the amendment deadline because the moving party acted diligently and showed "good cause").

## ARGUMENT

### I. Plaintiffs Have Good Cause To File an Amended Complaint

#### A. Plaintiffs Seek To File an Amended Complaint Shortly After the Deadline Because the Other Plaintiffs Settled Their Suit *After* the Amended Pleading Deadline Passed

John Does #1 and #2 have good cause to seek leave to amend the complaint and join in a single lawsuit alongside Plaintiff Kestenbaum. As of December 6, 2024—the deadline for filing amended pleadings in this matter—John Does #1 and #2 were members of associations proceeding in consolidated lawsuits against Harvard, without foreknowledge that their associations would eventually settle with Harvard. The settlements were executed on January 20, 2025, and the case was dismissed on

9

January 23, 2025 (*see* Dkt. 105), after the amended pleading deadline. John Does #1 and #2 were not satisfied with the settlement and now intend to pursue their own lawsuits. But John Does #1 and #2 had no reason to do so until after the settlements and *after* the amended pleading deadline had passed.

For these reasons, John Does #1 and #2 have good cause for filing this Amended Complaint at this stage. The settlements were factual developments that fundamentally altered the nature of the case and that warrant extension of previously imposed deadlines. *See Amyndas*, 48 F.4th at 39 (permitting amendment when the plaintiffs filed a motion for leave "less than two months after the emergence of new evidence"); *Carmona v. Toledo*, 215 F.3d 124, 136 (1st Cir. 2000) (recognizing cases where leave to amend was granted even after delays of up to two-and-a-half years); *see also Savoy v. White*, 139 F.R.D. 265, 268–69 (D. Mass. 1991) (rejecting the assertion that a one-year delay for filing a motion for leave was untimely).

Moreover, the Parties had informally stayed discovery to engage in settlement negotiations. Harvard took advantage of this stay by serving its own responses and objections three months after the initial requests were served, and it never agreed or expressed its intent to lift the informal stay before unilaterally trying to restart the case. It was not until February 24, 2025 that Harvard communicated its belief that the stay had been lifted back in December 2024, "at the latest." Decl. of J. Torchinsky ¶ 25 & Ex. B. In this unique procedural situation and with the settlement of associational cases in late January 2025, John Does #1 and #2 should not be

prejudiced in their ability to join an amended lawsuit after the amended pleading deadline in December 2024.

### B. Permitting Leave To Amend Is More Efficient and Practical Than Filing of a New Lawsuit Premised on the Same Facts and Claims

There is also good cause for amendment because permitting John Does #1 and #2 to join this action will advance judicial economy for all Parties by eliminating duplicative litigation involving similar facts, claims, witnesses, and discovery. Conversely, if the Court denies this Motion, John Does #1 and #2 intend to initiate separate lawsuits, which will run parallel to the present action, duplicating efforts and wasting judicial and party resources. Amendment and joinder is the best path forward in terms of efficiency, consistency of judicial decisions, and the avoidance of redundant proceedings.

At the outset, there is substantial overlap in facts and legal issues between Kestenbaum and John Doe #1 and #2's claims, which strongly favors consolidation. For example, here, all Plaintiffs' claims turn on antisemitic conduct not just directed at them, but on Harvard's campus generally. They all assert the same claims for breach of contract and violations of Title VI. Under Title VI hostile environment jurisprudence, moreover, students may rely on discriminatory incidents experienced by others in establishing the severity and pervasiveness of harassment—meaning there is even more reason to consolidate Title VI suits by students at the same school. *See Bray*, 596 F. Supp. 3d at 156-57; *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998) ("[R]acist attacks need not be directed at the

11

complainant in order to create a hostile educational environment."); *Jackson*, 191 F.3d at 660.

This Court has already sustained Mr. Kestenbaum's claims based on events that affected John Doe #1 and vice versa, further highlighting the factual interdependence of their claims. *See* Dkt. 93. All Plaintiffs will therefore be seeking similar documents, witnesses, and sources in discovery to establish similar facts and identical claims. For example, the Parties would have to take multiple depositions of identical witnesses, engage in repetitive rounds of discovery, and duplicate filings, motions, and hearings.

Harvard itself has also recognized this substantial factual and legal overlap in seeking and obtaining consolidation of related claims earlier in this proceeding. *See* Dkt. 68. On June 11, 2024, Harvard filed its Amended Motion for Consolidation to consolidate, arguing that "[t]he *Kestenbaum* and *Brandeis Center* actions should be consolidated because they assert similar claims based on many of the same factual allegations against the same defendant." *Id.* at 2. Harvard extensively detailed the similarities in these cases:

> The "threshold legal issue" under Rule 42(a) "is whether the two proceedings involve a common party and common issues of fact or law." *Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Grp., Inc.*, 878 F.2d 5, 8 (1st Cir. 1989). That standard unquestionably is met here. The *Kestenbaum* and *Brandeis Center* actions are each brought against a single common defendant (Harvard). Both allege intentional discrimination against Jewish students in violation of Title VI, asserting a discriminatory double-standard and deliberate indifference to a hostile educational environment. *Compare Kestenbaum*, No. 1:24-cv-10092-RGS, Dkt. 63 ¶¶ 312-328, with *Brandeis Center*, No. 1:24-cv-11354-RGS, Dkt. 1 ¶¶ 209-234. The two actions also share significant factual overlap, as many of the allegations in *Brandeis Center* are asserted as bases for Title VI liability in *Kestenbaum*, as well. *Compare, e.g., Kestenbaum* No.

12

> 1:24-cv-10092- RGS, Dkt. 63 ¶¶ 91-94 (allegations about an individual professor at one of Harvard's graduate schools); ¶¶ 100-110 (allegations about statements by Harvard administrators after October 7); ¶¶ 114-115 (allegations about specific event on Harvard's campus on October 18, 2023), with *Brandeis Center*, No. 1:24-cv-11354-RGS, Dkt. 1 ¶¶ 37-80 (allegations about the same individual professor at one of Harvard's graduate schools); ¶¶ 82-92 (allegations about statements by Harvard administrators after October 7); ¶¶ 111-125 (allegations about the same specific event on Harvard's campus on October 18, 2023).

*Id.* at 3. Harvard also underscored how the "benefits of consolidation for pretrial purposes weigh heavily in favor of consolidation in this instance":

> Both cases are in their earliest stages, meaning consolidation will allow the Court to "coordinate the pretrial briefing schedule" and "address any disputes that may arise in both cases in a single hearing," thus "substantially reduc[ing] the judicial time and resources required to manage" both actions [sic] *Id.* at 341. Consolidation will also "be more cost effective and less time consuming for the parties" if the cases proceed to discovery because it will eliminate duplicative discovery requests and depositions. Id. By contrast, neither the *Brandeis Center* Plaintiffs nor the *Kestenbaum* Plaintiffs would be prejudiced by consolidation of these cases for pretrial purposes. The *Kestenbaum* Plaintiffs have themselves made repeated requests for this Court to defer its consideration of Harvard's motion to dismiss their complaint, and so will not be prejudiced by any modest delay resulting from the consolidation of these cases for pretrial purposes.

*Id.* at 3-4.

Accordingly, if this Motion were denied, John Does #1 and #2 intend to file a new lawsuit and move to consolidate their lawsuit with Mr. Kestenbaum's. John Does #1 and #2 would then cite Harvard's prior successful motion to consolidate these cases based on their similar factual and legal patterns. At that point, Harvard would be estopped from opposing consolidation, as it already took the opposite position in this matter, obtained the relief it sought at that time, and would now receive an unfair advantage from obtaining consolidation only when it served its own litigation

13

interests. *See RFF Fam. P'ship, LP v. Ross*, 814 F.3d 520, 528 (1st Cir. 2016) (party is estopped when (1) its positions are "directly inconsistent," (2) its prior position was accepted by the Court, and (3) it would receive an unfair advantage).

Once there is a consolidation at that point, then it would be effectively the same result as the Court granting this Motion for Leave—but with substantially more time and resources wasted, and a delay in justice. By contrast, denying this Motion would require both the Parties and the Court to duplicate efforts needlessly. This redundant and inefficient outcome would burden both the Court and the litigants and would increase litigation costs without any benefit to judicial economy or fairness.

### C. Harvard Will Not Be Prejudiced Because Plaintiffs Are Not Adding New Claims, Only Joining Claims that Have Already Been Sustained

Harvard will not be prejudiced by the granting of this Motion because Harvard has already been on notice of all Plaintiffs' claims and allegations, and John Does #1 and #2 do not seek to introduce any new claims. Rather, this Motion only seeks to join claims previously sustained by the Court.

Courts routinely hold that there is no prejudice to defendants when plaintiffs join existing claims, especially when those claims have already survived motions to dismiss. *See, e.g.*, *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1521 (S.D.N.Y. 1995) ("Given that the added plaintiffs' claims in this case are identical to those of the original plaintiffs, defendants have not been prejudiced in their ability to mount a defense."); *Aigeltinger v. Target Corp.*, 642 F. Supp. 3d 274, 281 (N.D.N.Y. 2022) (noting courts have held that "avoidance of multiple litigation weighs in favor of

14

joinder of a party") (internal quotation omitted); *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 39 (1st Cir. 2022) ("It is common ground that '[a]mendments may be permitted pre-judgment, *even after* a dismissal for failure to state a claim'" because "the 'when justice so requires' standard of Rule 15(a) puts a thumb on the scale in favor of allowing amendments in non-frivolous cases.") (emphasis added and citations omitted).

Moreover, Harvard has long been on notice of these allegations, particularly because Harvard and its outside counsel are aware of the identities of John Does #1 and #2, whose claims and experiences have already been referenced in earlier pleadings and filings. Specifically, John Does #1 and #2 have been identified as members of organizations central to the factual allegations underpinning this litigation, providing Harvard full notice and opportunity to investigate or rebut these claims throughout the discovery process.

Furthermore, the short time between the amended pleading deadline in early December 2024 and John Does #1 and #2's notice to Havard in February 2025 of their intent to proceed in litigation clearly weighs against any assertion of prejudice. John Does #1 and #2 acted promptly upon recognizing that the settlement agreements and dismissals were insufficient to address their claims and concerns adequately. They immediately retained new counsel and filed new counsel notices of appearance on December 6, 2024. The Plaintiffs have been diligent throughout this entire proceeding and communicated their intent to file an amended complaint as soon as settlement discussions proved futile.

15

Notably, any modest extension of the litigation schedule resulting from granting the Motion benefits, rather than prejudices, Harvard. An extended schedule provides Harvard additional time to conduct discovery, prepare defenses, and manage litigation strategy effectively. Thus, Harvard stands to lose nothing by allowing leave to amend to add John Does #1 and #2 to this lawsuit, and indeed, gains from the procedural clarity and judicial efficiency created by consolidating overlapping claims. In its Amended Motion for Consolidation, Harvard itself referred to consolidation of these cases as only a "modest delay" that would not prejudice the Parties. Dkt. 68, at 4 ("The *Kestenbaum* Plaintiffs . . . will not be prejudiced by any modest delay resulting from the consolidation of these cases for pretrial purposes."). Further, as noted above, this case has already been stayed and delayed by settlement talks—which Harvard itself took advantage of in filing its own responses and objections three months after they were served, and then making its first document production another two months later, with less than three months left before the fact discovery deadline.

Harvard's opposition appears motivated by litigation tactics aimed at isolating Plaintiff Kestenbaum and the John Does #1 and #2 and applying pressure rather than by any genuine risk of prejudice or expenditure of unnecessary resources. The Court should reject such maneuvering, as allowing John Does #1 and #2 to join this action promotes judicial economy, fairness, and efficiency for all involved.

## II. If the Court Denies Leave To Amend, It Should Extend the Current Scheduling Order

If the Court denies Plaintiffs' Motion, Plaintiffs respectfully request that the Court grant an extension of the current Scheduling Order by at least six months to ensure a fair and complete adjudication of the case on its merits.[1] Plaintiffs seek this extension because the timeline remaining for discovery is wholly insufficient to permit Plaintiffs to fully and adequately explore all relevant evidence essential to the claims already sustained by this Court. Discovery was stayed when the Parties were engaged in settlement negotiations beginning in November 2024. *See* Decl. of J. Torchinsky ¶ 12. Again, Harvard did not make any document productions until there were only 2.5 months left in discovery, and it produced only *ten* publicly available documents. *Id.* ¶ 28.

The discovery process to date—constrained by settlement discussions undertaken in good faith by John Does #1 and #2 and by an informal stay of discovery between the Parties—has resulted in limited disclosures and an incomplete record. As the settlement agreements and dismissals ultimately proved inadequate for all remaining Plaintiffs, it only recently became clear that further discovery is required. The current Scheduling Order, established under materially different circumstances where the Parties were actively pursuing settlement (with some settling), does not provide sufficient time to correct these limitations. *See Jubilant Generics Ltd. v. Dechra Veterinary Prods., LLC*, 2024 U.S. Dist. LEXIS 207478, *4 (finding good cause

---

[1] Alternatively, if the Court grants this Motion, the Court should vacate the existing Scheduling Order to accommodate John Does #1 and #2.

17

for the extension of a scheduling order because the parties were engaged in settlement discussions). Without additional discovery, Plaintiffs will be severely prejudiced as the case risks being decided on procedural technicalities rather than its substantive merits.

Extending the Scheduling Order will not prejudice or unfairly surprise Harvard because the extension only facilitates the full exploration of claims that Harvard has been fully aware of and has already defended against in earlier stages of this litigation, and in the *Brandeis* lawsuit. This Motion also does not introduce any new claims.

Accordingly, if the Court denies Plaintiffs' Motion, Plaintiffs respectfully request that the Court modify the Scheduling Order by at least six months to accommodate the critical additional discovery necessary to fairly resolve the claims before it. Harvard has not made any meaningful document production at this stage, and there is insufficient time for the Parties to resolve inevitable discovery disputes, to schedule and take depositions, and to substantially complete discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend should be granted. In the alternative, this Court should amend the Scheduling Order.

Dated: March 20, 2025

Respectfully submitted,

*/s/ Jason Torchinsky*

Jason B. Torchinsky
John C. Cycon
HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK, PLLC
2300 N Street NW
Suite 643
Washington, DC 20037
(202) 737-8808
jtorchinsky@holtzmanvogel.com
jcycon@holtzmanvogel.com

Mark I. Pinkert
HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK, PLLC
119 S. Monroe Street
Suite 500
Tallahassee, FL 32301
mpinkert@holtzmanvogel.com

Jonathan Lienhard
HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK, PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
jlienhard@holtzmanvogel.com

*Counsel for Plaintiff Alexander Kestenbaum*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on March 20, 2025.

*/s/Jason Torchinsky*
Jason B. Torchinsky
