IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER KESTENBAUM,<br><br>            Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>            Defendant. | Case No. 1:24-cv-10092-RGS |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

      This litigation commenced in January 2024 when Plaintiff Alexander Kestenbaum filed suit alongside Students Against Antisemitism ("SAA"), an association representing Jewish and Israeli students at Harvard.  In May 2024, a separate suit was brought by the Louis D. Brandeis Center for Human Rights Under Law and Jewish Americans for Fairness in Education (collectively, the "Brandeis Center").  In January 2025, Harvard, SAA, and the Brandeis Center reached historic settlement agreements to combat antisemitism on campus by strengthening Harvard's nondiscrimination policies, bolstering its investigation and enforcement efforts, committing to detailed reporting on complaints of antisemitic harassment, and investing in training and educational.  The important work that Harvard has committed to under these settlement agreements is well underway, and Harvard has already implemented many of the agreed measures.

1

In the meantime, Mr. Kestenbaum, the sole remaining plaintiff in this case, refuses to pursue his claim for damages or even engage in the lawsuit that he brought, while using it as a platform to raise his public profile. Although Mr. Kestenbaum is entitled to indulge in litigation by social media, he is not entitled to ignore his obligations in this proceeding. He must either engage in the litigation he brought—including by fulfilling his discovery duties—or else abandon it. Mr. Kestenbaum's effort to recover retrospective, compensatory damages—the only relief he has standing to pursue now that he has graduated—should proceed under the Court's current schedule, which provides ample time for discovery of facts relevant to his narrow claims. Following the close of fact discovery, Harvard expects that its summary judgment motion will establish that Mr. Kestenbaum's claims fail as a matter of law.

Yet Mr. Kestenbaum refuses to put his sole remaining claim (for which only limited monetary damages are available) to the test in adversarial litigation. Although Mr. Kestenbaum has publicly and repeatedly stated his intent to go to trial, he has never responded to Harvard's discovery requests. Instead, he has chosen to use his status as a plaintiff against Harvard to amplify his presence on social media, while neglecting his actual, considerably narrowed, legal case. Most pertinent to this motion, Mr. Kestenbaum has refused to provide Harvard with the relevant and proportional document discovery to which it is entitled and that it must have in order to depose witnesses and prepare for summary judgment. This lapse is no excusable neglect; Mr. Kestenbaum has blown past his discovery deadline by seven weeks, declining to produce a single document, let alone respond to Harvard's discovery requests. Moreover, Mr. Kestenbaum has rebuffed multiple follow-up requests by Harvard to keep this litigation on track.

Counsel for Mr. Kestenbaum informed Harvard on February 14, 2025, that instead of fulfilling his discovery obligations, Mr. Kestenbaum would move for leave to amend his complaint for the third time, and also seek to modify this Court's scheduling order to extend discovery deadlines. For five weeks, however, no such motion materialized. Mr. Kestenbaum finally filed that motion after the Court's filing deadline on March 20, 2025, and Harvard will oppose that motion in due course. Irrespective of that motion, however, any objections Mr. Kestenbaum might have to producing the requested documents have been waived. Harvard therefore respectfully requests that this Court compel Mr. Kestenbaum to produce all nonprivileged documents within his possession, custody, or control that are responsive to Requests for Production 2-3, 5-14, 16-19, and 21-32. *See* Ellsworth Decl. Ex 1.[1]

## BACKGROUND

**A.   Harvard's Historic Settlement Agreements With Former Parties To This Litigation Have Substantially Narrowed The Case Before The Court**

Harvard is committed to fighting antisemitism, ensuring that members of its Jewish and Israeli community are protected and that the university is an environment free from harassment and discrimination. And in furtherance of that commitment, Harvard has entered into two comprehensive settlement agreements, one with SAA and another with the Brandeis Center. Each settlement contains robust measures—some of which Harvard has already implemented—

---

[1] Harvard served its First Set of Requests for Production, attached here as Exhibit 1 to the accompanying Declaration of Felicia Ellsworth, before then-plaintiffs SAA and the Brandeis Center dismissed their claims against Harvard. Harvard seeks only responsive documents within Mr. Kestenbaum's possession, custody, and control.

aimed at combating antisemitism. The steps outlined in those agreements reinforce Harvard's ongoing work to confront and eradicate antisemitism from its campuses.

Under these settlements, and consistent with guidance provided by the Department of Education's Office for Civil Rights ("OCR") in 2021 and 2024, Harvard has incorporated the International Holocaust Remembrance Alliance ("IHRA") definition of antisemitism into its published Non-Discrimination and Anti-Bullying Policies ("NDAB"). Harvard has also created, and posted online, in the same location as the NDAB, a Frequently Asked Questions ("FAQ") document that provides further guidance on application of the NDAB's protections to Jewish and Israeli identity. The FAQ guidance is designed to demonstrate how Harvard meets its obligations under Title VI. It clarifies that:

- The NDAB protects "members of the Harvard community from discriminatory disparate treatment or discriminatory harassment based on antisemitism";

- "'Antisemitism' is a certain perception of Jews, which may be expressed as hatred toward Jews. Rhetorical and physical manifestations of antisemitism are directed toward Jewish or non-Jewish individuals and/or their property, toward Jewish community institutions and religious facilities";

- "Harvard, like OCR, uses the definition of antisemitism endorsed by the International Holocaust Remembrance Alliance (IHRA definition) and considers the examples that accompany the IHRA definition to the extent that those examples might be useful in determining discriminatory intent";

- Anti-Israeli discrimination is prohibited by the Non-Discrimination Policy because ancestry and national origin are among its protected categories;

- "Conduct that would violate the Non-Discrimination Policy if targeting Jewish or Israeli people can also violate the policy if directed toward Zionists."

*Frequently Asked Questions*, Harv. Univ. Off. for Cmty. Conduct, https://hwpi.harvard.edu/communityconduct/frequently-asked-questions (last visited Mar. 21, 2025).

Furthermore, Harvard has committed to taking additional steps to combat antisemitism on campus. Harvard both will reaffirm at least annually that antisemitism will not be tolerated at Harvard and will prepare a public annual report for the next five years detailing its responses to complaints of discrimination or harassment based on Title VI-protected traits. The first annual report will specifically include a lookback at disciplinary responses to NDAB complaints based on allegations of antisemitism since October 1, 2023, and will assess Harvard's treatment of such complaints against its treatment of complaints based on allegations of other forms of bias. To oversee the preparation of the annual reports, Harvard will hire a designated individual responsible for consulting on all complaints of antisemitism and for ensuring that Title VI and the NDAB are enforced equally, applying a single standard for all students.

Harvard has also implemented enhanced training on antisemitism and devoted additional academic resources dedicated to the study of antisemitism. These efforts include expert training on combating antisemitism and the IHRA definition of antisemitism for staff involved in reviewing complaints of discrimination; annual training for the Harvard community as a whole focused on recognizing and combating antisemitism; an official partnership with a university in Israel (in addition to its existing programs); an annual academic symposium on the topic of antisemitism; an opportunity for alumni to organize an on-campus event focused on Israeli Jewish democracy; and further opportunities for the Brandeis Center to host events on Harvard's campus. Harvard's commitments under these settlements were further bolstered by a voluntary resolution agreement it reached with the U.S. Department of Education's Office for Civil Rights in January 2025. Under that resolution agreement, Harvard agreed to review and revise as necessary its procedures for receiving, processing, and investigating discrimination and

harassment on the basis of shared ancestry, including Jewish and Israeli identity, to ensure compliance with Title VI.  Harvard also agreed as a part of this voluntary resolution agreement to enhanced training for senior leadership and other university staff.[2]

As a result of Harvard's settlement agreements with SAA and the Brandeis Center, both entities have dismissed their claims against Harvard with prejudice.  In dismissing their claims against Harvard, SAA and the Brandeis Center praised Harvard's "proactive approach to implementing effective long-term changes" and its commitment to "specific, meaningful actions to combat antisemitism, hate and bias."[3]  In fact, Brandeis Center Founder and Chairman Kenneth Marcus recently stated that all universities "should adopt all of the measures accepted by Harvard University in its recent settlement."[4]  Harvard Hillel Executive Director Rabbi Jason Rubenstein praised Harvard's actions in the weeks after the settlements, "celebrat[ing] … 'a type and pace of change' that he would not have anticipated."[5]  The dismissal of those claims leaves Mr. Kestenbaum, who graduated from Harvard Divinity School in May 2024, as the sole plaintiff and with only a retrospective claim for compensatory damages, if any, that he can prove result from the purported loss of any educational opportunities or benefits.  *See* Dkt. 93 at 10 & n.7

---

[2] *See* Voluntary Resolution Agreement: Harvard University, U.S. Dep't of Educ., Off. for Civil Rights Complaint No. 01-24-2155 (Jan. 17, 2025), https://ocrcas.ed.gov/sites/default/files/ocr-letters-and-agreements/01242155-a.pdf.

[3] Press Release, *Harvard and Students Against Antisemitism Announce Settlement of Lawsuit*, Harvard University (Jan. 21, 2025), https://www.harvard.edu/media-relations/2025/01/21/press-release-settlement-harvard-saa/.

[4] Fellig, *Education Department Issues Warning To 60 Universities Under Probes For Alleged Jew-Hatred*, JNS (Mar. 11, 2025), https://www.jns.org/education-dept-warns-60-universities-under-probes-for-alleged-jew-hatred/.

[5] Connolly et al., *Leaders of Harvard Divinity School's Religion And Public Life Program To Depart Abruptly*, Harv. Crimson (Feb. 5, 2025), https://www.thecrimson.com/article/2025/2/5/RPL-Leader-Departs-Abruptly/.

(explaining that punitive damages and emotional distress damages are not available under Title VI). The case that remains for Mr. Kestenbaum to litigate is therefore quite narrow, and the burden of his participation in discovery exceedingly light. Yet Mr. Kestenbaum has for months refused to allow this case to move forward.

### B. Mr. Kestenbaum Has Refused To Litigate His Remaining Claim And Failed To Comply With Discovery Requests

Before Mr. Kestenbaum struck out on his own, he served requests for production on Harvard on October 2, 2024. Shortly afterwards, the parties agreed to an informal pause of discovery while the parties—including Mr. Kestenbaum—pursued settlement. Meanwhile, this Court granted in part and denied in part Harvard's motion to dismiss in *Brandeis Center v. President & Fellows of Harvard College*, 1:24-cv-11354-RGS (D. Mass.), and consolidated that litigation with this case for discovery. Dkt. 100. On November 6, 2024, this Court entered a revised scheduling order under which the parties were expected to serve requests for production by December 27, 2024. Dkt. 101. While Harvard continued to discuss settlement with the plaintiffs in both consolidated litigations, no party sought relief from these Court-mandated deadlines, and on December 27, 2024, per this Court's order, Harvard served its First Set of Requests for Production (the "Requests for Production") on all plaintiffs, including Mr. Kestenbaum. Ellsworth Decl. Ex. 1.

Despite many public pronouncements that he intends to go to trial, Mr. Kestenbaum has never responded to the Requests for Production. Under Federal Rule of Civil Procedure 34(b)(2)(A), Mr. Kestenbaum's deadline to respond to Harvard's discovery requests was January 27, 2025. Not only did he fail to serve responses and objections on that date (or seek a

7

reasonable extension thereto), he has not produced a single document, noticed a single deposition, or otherwise taken any action to move this litigation forward. At the same time, Mr. Kestenbaum has publicly boasted online about his supposed eagerness to engage in discovery: "our lawsuit WILL go to discovery"[6]; "I look forward to discovery"[7]; "[W]e will depose [Harvard administrators] under oath"[8]; "I'm taking Harvard to trial"[9]; "We will go to trial"[10]; "I look forward to issuing subpoenas"[11]; "See you at trial"[12]; "See you in court"[13]; "I look forward to deposing [Harvard administrators]"[14]; "discovery"[15]; "discovery"[16]; "discovery."[17] But in the real world, where this case continues to languish, Mr. Kestenbaum has displayed no such willingness to prosecute his case.

In contrast, Harvard served its Responses and Objections to Mr. Kestenbaum's (and SAA's) requests for production on December 27, 2024. Harvard then finalized the above-described settlement agreements with associational plaintiffs SAA and the Brandeis Center in January 2025. *See* Dkt. 104; *see also Brandeis Center*, Dkt. 81. Recognizing that the settlements substantially narrowed the claims before this Court, Harvard served revised Responses and Objections and Initial Disclosures on Mr. Kestenbaum on February 12, 2025.

---

[6] @ShabbosK, X (Jan. 4, 2025), https://x.com/ShabbosK/status/1875678487270273135.
[7] @ShabbosK, X (Jan. 21, 2025), https://x.com/ShabbosK/status/1881832732118151220.
[8] *Id.*
[9] @ShabbosK, X (Jan. 27, 2025), https://x.com/ShabbosK/status/1883975089924063292.
[10] @ShabbosK, X (Feb. 4, 2025), https://x.com/ShabbosK/status/1886764365006737515.
[11] @ShabbosK, X (Feb. 6, 2025), https://x.com/ShabbosK/status/1887540054673006757.
[12] @ShabbosK, X (Feb. 21, 2025), https://x.com/ShabbosK/status/1892957542529335487.
[13] @ShabbosK, X (Mar. 20, 2025), https://x.com/ShabbosK/status/1902912758732964174.
[14] @ShabbosK, X (Mar. 3, 2025), https://x.com/ShabbosK/status/1896737130140910021
[15] @ShabbosK, X (Jan. 24, 2025), https://x.com/ShabbosK/status/1882821114985840717.
[16] @ShabbosK, X (Jan. 30, 2025), https://x.com/ShabbosK/status/1885182753898979832.
[17] @ShabbosK, X (Dec. 22, 2024), https://x.com/ShabbosK/status/1871024727809999227.

Harvard also sought over the course of months to finalize a proposed protective order. Mr. Kestenbaum's failure until recently to engage with Harvard on the scope of the proposed protective order has delayed Harvard's own efforts to produce documents.

Harvard sought a response to its First Set of Requests for Production from Mr. Kestenbaum on multiple occasions, including on February 12, 2024. Mr. Kestenbaum has declined to provide one.

In an effort to resolve this discovery dispute, the parties held a discovery conference on the morning of March 19, 2025, by telephone.[18] The parties discussed Mr. Kestenbaum's failure to engage in fact discovery, and counsel for Mr. Kestenbaum confirmed that Mr. Kestenbaum does not intend to engage in meaningful production of documents until other issues that have no bearing on Mr. Kestenbaum's discovery obligations are addressed.

## ARGUMENT

### I.   THIS COURT SHOULD COMPEL MR. KESTENBAUM TO PRODUCE RESPONSIVE DOCUMENTS

#### A.   Mr. Kestenbaum Has Waived Any And All Objections To Harvard's Requests For Production

Mr. Kestenbaum has a duty to prosecute his own case. *See* Fed. R. Civ. P. 41(b) (permitting involuntary dismissal "[i]f the plaintiff fails to prosecute"); *McKeague v. One World Techs., Inc.*, 858 F.3d 703, 707-708 (1st Cir. 2017). But more than 15 months after filing his complaint, and just two months before the close of discovery, Mr. Kestenbaum has refused to engage in this essential phase of the litigation. Mr. Kestenbaum has not produced any

---

[18] Felicia Ellsworth, Mark Kirsch, and Jacob Tuttle Newman were present for Harvard and Jason Torchinsky, Mark Pinkert, and John Cycon were present for Mr. Kestenbaum.

Case 1:24-cv-10092-RGS   Document 114   Filed 03/21/25   Page 10 of 14

documents or noticed any depositions. He has willfully refused to respond to Harvard's Requests for Production. Harvard therefore "may move to compel production of the requested information" under Federal Rule of Civil Procedure 37(a)(3). *Close v. Account Resolution Servs.*, 557 F. Supp. 3d 247, 250 (D. Mass. 2021).[19]

The only issue for the Court to decide on this motion to compel is whether Mr. Kestenbaum has waived any and all potential objections to Harvard's First Set of Requests for Production and therefore must produce the requested documents. The Federal Rules, Local Rules, and caselaw applying them confirm that Mr. Kestenbaum has waived all objections and must produce the documents. And with the close of fact discovery rapidly approaching, Harvard must receive Mr. Kestenbaum's documents promptly, so that it can depose Mr. Kestenbaum and other witnesses and inform its defense.[20]

Federal Rule of Civil Procedure 34(b)(2) requires that a party to whom a request for production is directed "respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2)(A). The responding party must then state that he will produce the documents requested or "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Under this Court's Local Rule 34.1(c)(1), "Any ground not stated in an

---

[19] Courts routinely recognize that involuntary dismissal with prejudice is an appropriate sanction for a plaintiff's failure to prosecute his case. *See, e.g.*, *McKeague*, 858 F.3d at 708; *Vazquez-Rijos v. Anhang*, 654 F.3d 122, 127 (1st Cir. 2011). At this juncture, Harvard seeks far less drastic relief: it moves only for an order compelling Mr. Kestenbaum to start litigating his own case, or else dismiss it himself if he no longer wishes to pursue it.

[20] Certain of the requests in Harvard's First Set of Requests for Production were addressed only to SAA or certain of its members who have since dismissed their claims. Harvard therefore limits its motion to compel to the requests that apply to Mr. Kestenbaum, and asks that this Court compel Plaintiff to produce documents responsive to Requests 2-3, 5-14, 16-19, and 21-32.

objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived."

Mr. Kestenbaum's failure—refusal, in fact—to timely object to any of Harvard's requests means he has waived any objections he may have had to those requests. *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991) (when party "fails to make a timely objection, or fails to state the reason for an objection" objections are waived); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1998) ("If a party fails to file *timely* objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests."); *see also Merchia v. United States Internal Rev. Serv.*, 336 F.R.D. 396, 398 (D. Mass. 2020); *Tropix, Inc. v. Lyon & Lyon*, 169 F.R.D. 3, 5 (D. Mass. 1996). A district court therefore "is obligated to enforce Local Rule 34.1 and deem waived any objections not included in" a timely response. *See Controlled Kinematics, Inc. v. Novanta Corp.*, 2019 WL 3082354, at *5 (D. Mass. July 15, 2019). Having failed to either produce documents or state any timely objections, this Court should therefore "deem [them] waived." *Id.*

### B. Harvard's Requests For Production Seek Documents Plainly Relevant To This Litigation

While Mr. Kestenbaum has waived all objections to Harvard's First Set of Requests for Production, including objections based on relevance, the documents requested plainly are relevant to the litigation. *See* Ellsworth Decl. Ex. 1. Requests 2-3, 5-14, 16, 18, 21, and 26-32 seek documents and communications relevant to his allegations that he experienced harassment and discrimination to which Harvard was deliberately indifferent in violation of Title VI— including documents and communications in which Mr. Kestenbaum commented on Harvard's

actions. *See, e.g.*, SAC ¶¶ 312-328. Requests 17 and 19 seek documents and communications relevant to his allegations that Harvard breached the implied covenant of good faith and fair dealing. *See, e.g.*, SAC ¶¶ 285, 289, 294, 335-337. And Requests 22-25 seek documents and communications relevant to assessing any damages to which Mr. Kestenbaum claims he is entitled.

* * *

The time has passed for Mr. Kestenbaum to boast about his lawsuit while refusing to engage in his responsibilities as a litigant. Having risen to fame as an "American suing Harvard,"[21] he must now decide if he is actually willing to engage in the litigation that launched his public persona. Harvard has no desire to litigate against any of its community members—and certainly not its current or former students. But having decided to continue litigating against Harvard despite the historic settlement agreements Harvard reached with every other plaintiff, it is incumbent upon Mr. Kestenbaum to either move the litigation forward or move on.

## CONCLUSION

Harvard respectfully requests that the Court grant the motion and compel Plaintiff to produce documents as described herein.

DATED: March 21, 2025

Respectfully Submitted,

---

[21] https://x.com/ShabbosK (profile) (last visited Mar. 21, 2025).

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

By its attorneys,

*/s/ Felicia H. Ellsworth*

| | |
|---|---|
| Mark A. Kirsch (*pro hac vice*) | Felicia H. Ellsworth, BBO #665232 |
| Gina Merrill (*pro hac vice*) | WILMER CUTLER PICKERING |
| KING & SPALDING LLP |   HALE AND DORR LLP |
| 1185 Avenue of the Americas | 60 State Street |
| 34th Floor | Boston, MA 02109 |
| New York, NY 10036 | Tel: (617) 526-6000 |
| mkirsch@kslaw.com | Fax: (617) 526-5000 |
| gmerrill@kslaw.com | felicia.ellsworth@wilmerhale.com |
| Tel: (212) 790-5329 | |
| Fax: (212) 556-2222 | Seth P. Waxman (*pro hac vice*) |
| | Bruce M. Berman (*pro hac vice*) |
| Zachary Fardon (*pro hac vice*) | Jeremy W. Brinster (*pro hac vice*) |
| KING & SPALDING LLP | WILMER CUTLER PICKERING |
| 110 N. Wacker Drive |   HALE AND DORR LLP |
| Suite 3800 | 2100 Pennsylvania Avenue NW |
| Chicago, IL 60606 | Washington, DC 20037 |
| zfardon@kslaw.com | Tel: (202) 663-6000 |
| Tel: (312) 764-6960 | Fax: (202) 663-6363 |
| Fax: (312) 995-6330 | seth.waxman@wilmerhale.com |
| | bruce.berman@wilmerhale.com |
| | jeremy.brinster@wilmerhale.com |

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Felicia H. Ellsworth*

Felicia H. Ellsworth
