IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER KESTENBAUM, JOHN DOE #1, and JOHN DOE #2,<br><br>Plaintiffs,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Defendant. | Case No. 1:24-cv-10092-RGS |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS JOHN DOE #1 AND JOHN DOE #2'S MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY

**INTRODUCTION**

John Does are Jewish students at Harvard Business School ("HBS") and Harvard Law School ("HLS"). There, they have endured severe antisemitism, including in the form of severe harassment, bullying, public shaming, doxxing, and retaliation by students, faculty, and administrators. John Does therefore seek to join an amended complaint[1] and to do so using pseudonyms, based on their privacy interests and their justified fear of further retaliation and harassment.

Anonymity is warranted because John Does have *already* been subjected to the most serious harassment and retaliation, and they continue to be severely mistreated

---

[1] John Does were members of student associations suing Harvard under Title VI of the Civil Rights Act of 1964 for its deliberate indifference to the hostile educational environment. The associational plaintiffs settled their lawsuits with Harvard, but because John Does were not satisfied with the settlement terms, they are proceeding in their own lawsuits, and, for convenience and efficiency, have moved to join in an amended complaint with Mr. Kestenbaum rather than proceed in a separate track.

1

to this day. Public disclosure of John Does' identities would therefore expose them to even more retaliation and harassment. This Motion is supported by (1) Harvard's deliberate indifference to their privacy and safety concerns, as alleged in the proposed amended complaint and original complaints; (2) this Court's recognition that, based on the allegations, "Harvard has failed its Jewish students," *Kestenbaum v. President & Fellows of Harvard Coll.*, 743 F. Supp. 3d 297, 310 (D. Mass. 2024); and (3) John Does' declarations explaining their wholly justified fear of retaliation.

Harvard opposes the Motion—which itself is indicative of Harvard's disregard for the privacy and safety of its Jewish students and demonstrates why relief is necessary. Harvard's opposition is not only inconsistent with its prior litigation position in this case, but it also exposes that Harvard has no desire to protect its Jewish students when it serves its interests. By contrast, after October 7 and the ensuing antisemitic fervor on campus, Harvard's first step was to protect the *antisemitic protestors*. More recently, after Plaintiff Kestenbaum posted on "X" criticizing Harvard's Chief Diversity and Inclusion Officer, Harvard requested he remove the post for concern that this high-level officer might receive harassing calls and emails. Harvard tries to protect everyone else on campus, except Jews.

Intentionally blinding itself to the reality for Jews, Harvard says that it is "not aware of any basis" for John Does to seek anonymity—notwithstanding that John Doe #1 has been *physically assaulted* by students and then "doxxed" by faculty in the Boston Globe; notwithstanding then-President Claudine Gay's testimony that calling for the *mass murder* of Jews was acceptable on campus depending on the "context";

2

notwithstanding Harvard's inability to protect Jewish organizations from vandalism; and notwithstanding the chaotic and lawless protests that disrupt campus and put students at risk. Moreover, while Harvard opposes John Does' ability to even join this case, it is at the same time collecting John Does' student emails from its server, without disclosing what safeguards, if any, it is implementing to protect their privacy.

The antisemitic and anti-Israel fervor on Harvard's campus is dangerous for Jewish students. Harvard not only fails to protect Jews, but it also condones attacks against them. Worse, Harvard is directly intimidating John Does with invasive, unnecessary, and non-transparent email collections that threaten their privacy and confidentiality. Anonymity is warranted.

## BACKGROUND

Jewish students like John Does #1 and #2 have had targets on their back at Harvard for years, and especially over the last eighteen months since Hamas' horrific terror attack on October 7, without any protection from the Harvard administration. *See* John Doe #1 Decl. ¶¶ 1-4, 25-32; John Doe #2 Decl. ¶¶ 1-4, 34-35; TAC ¶¶ 1-17. These facts have been well-documented in public reports, congressional investigations, the consolidated lawsuits against Harvard, and the proposed amended complaint filed concurrently. This Court held that, based on those facts and allegations, it was plausible to conclude that Harvard is deliberately indifferent to the severe and pervasive hostility that Jews are facing on campus. *Kestenbaum*, 743 F. Supp. 3d at 310.

3

In addition to the general hostility against Jewish students on campus, John Does #1 and #2 have each individually been subjected to serious bullying and cruelty. *See* John Doe #1 Decl. ¶¶ 4-32; John Doe #2 Decl. ¶¶ 4-37.

For example, John Doe #1 was physically assaulted during an anti-Israel protest on October 18, 2023, because he was visibly Jewish. *See* John Doe #1 Decl. ¶¶ 5-13; TAC ¶¶ 168-86. Despite the clear video evidence of this assault—which blatantly violated several of Harvard's policies—Harvard has not taken any reasonable steps to discipline John Doe #1's assailants. The assailants remain on campus today and continue to be a threat to him. *See* John Doe #1 Decl. ¶¶ 19-22; TAC ¶¶ 195-223. Shortly after the assault, a group of Harvard faculty published a statement *justifying* the attack and arguing that the assailants should *not* be punished—thereby condoning and encouraging more violence against John Doe #1. *See* John Doe #1 Decl. ¶ 18; TAC ¶¶ 288-89. A few months after that, a member of Harvard's faculty contributed to a *Boston Globe* report on the assault that revealed John Doe #1's identity. *See* John Doe #1 Decl. ¶ 23; TAC ¶ 222. Finally, despite being the victim of an assault, students and instructors have posted about John Doe #1, vilifying and slandering him. *See* John Doe #1 Decl. ¶¶ 15-19; TAC ¶¶ 187-92. One student sent a series of defamatory messages about John Doe #1 in official Harvard student organization group chats. *See* John Doe #1 Decl. ¶ 24; TAC ¶ 264. As a result of the social media attacks, John Doe #1 has already suffered reputational damage for doing nothing more than walking through campus as a Jew. *See* John Doe #1 Decl. ¶¶ 22-31; TAC ¶¶ 187-91.

John Doe #2 has also been subjected to direct attacks and retaliation on campus. For example, a group of students recently protested outside of the HLS Dean's office, specifically calling for the expulsion of John Doe #2 based on false allegations that he "doxxed" students by releasing a transcript of an otherwise public student government hearing (he did no such thing). *See* John Doe #2 Decl. ¶¶ 14-16; TAC ¶¶ 405-11. John Doe #2 also received adverse grades from a professor who repeatedly argued with him about John Doe #2's pro-Israel stance. *See* TAC ¶¶ 543-45. These are just some of the reasons why John Doe #2 was permitted to file an earlier declaration under seal as SAA Member #1, Dkt. No. 46, and why John Does request the same protection now.

John Does further fear reprisals and retaliation because Harvard is currently collecting their personal, student emails from the Harvard platform. TAC ¶ 494. Harvard is collecting these emails purportedly because of threatened litigation—yet Harvard is simultaneously opposing John Does' ability to join in amended complaint. *Id.* Accordingly, this Orwellian invasion of privacy is not necessary until the Court rules on the Motion for Leave to file an Amended Complaint. Worse still, Harvard has refused to disclose what guardrails, if any, it has put in place to review John Does' email. As far as John Does are aware, Harvard and its counsel are reviewing *all* John Does' emails without filtering those emails for relevance to this case. Harvard's non-transparent and invasive tactics are themselves part of its efforts to intimidate and deter John Does from vindicating their legal rights.

5

In addition to these direct experiences, John Does are aware of what happened to Plaintiff Shabbos Kestenbaum after he filed an initial complaint. *See* John Doe #1 Decl. ¶ 30; John Doe #2 Decl. ¶ 36. Specifically, Plaintiff Kestenbaum was repeatedly harassed by a Harvard employee, who continued to threaten his safety even after he was placed "on leave." TAC ¶¶ 338-47.

While Harvard is unwilling to do anything to prevent Jewish students from being harassed or threatened, it takes immediate action to protect other students and employees even from public criticism. After the explosion of antisemitism after October 7, 2023, Harvard's first action was to create a task force to protect the antisemitic *protestors* from being "doxxed." TAC ¶¶ 150-52. More recently, Harvard requested that Mr. Kestenbaum remove a social media post that merely criticized Harvard's Chief Diversity and Inclusion Officer for subjecting Israeli and Jewish students to a "blatant double standard" when addressing antisemitism on campus. *See* Decl. of J. Torchinsky, Ex. A. According to Harvard, this post about a highly paid and public-facing Chief Officer was too "inflammatory and personal" for the school to take. *See id.* When counsel for Plaintiffs noted that the post simply criticized the Officer's public "conduct and statements as a school official," counsel for Harvard responded that "[i]t doesn't take a Harvard education to figure [ ] out" what types of "personal" responses the Chief Officer might receive. *Id.* Despite its belief that criticism of a high-level, public-facing employee warrants protective measures—and it does not take a "Harvard education" to figure this out—Harvard claims that it is not "aware of any basis" for John Does #1 and #2 to proceed anonymously despite the

6

rampant and severe harassment they have already endured. Harvard's blatant double-standard and intentional disregard Jewish safety is precisely why relief is necessary here.

## LEGAL STANDARD

Although there is a presumption against litigants proceeding anonymously, district courts have broad discretion to determine whether anonymity is warranted under the circumstances. *See Doe v. MIT*, 46 F.4th 61, 70 (1st Cir. 2022).

As the First Circuit has explained, there are "four general categories" in which "anonymity ordinarily will be warranted:" (1) the plaintiff "reasonably fears that coming out of shadows will cause him unusually severe harm (either physical or psychological)"; (2) identifying the plaintiff "would harm innocent non-parties"; (3) "anonymity is necessary to forestall chilling effect on future litigants who may be similarly situated"; and (4) the lawsuit is "bound up with a prior proceeding made confidential by law." *Id.* at 70-72 (internal quotations omitted). Under this framework, a district court deciding whether to grant a request for pseudonymity will first "determine[] whether the case before it fits into one of the four categories," and "[i]f so, 'party anonymity ordinarily will be warranted.'" *Doe v. Town of Lisbon*, 78 F.4th 38, 46 (1st Cir. 2023) (quoting *MIT*, 46 F.4th at 71).

These four categories, however, are not dispositive. As the First Circuit has further explained, "it is possible that a party whose case for pseudonymity appears weak when each paradigm is analyzed separately may nonetheless make a persuasive showing when multiple paradigms are implicated." *MIT*, 46 F.4th at 72. That said,

7

"the inquiry should focus upon the extent to which the facts align with one or more of the [aforementioned] paradigms," and the district court "enjoys broad discretion to quantify" their relative weight. Courts frequently grant pseudonymity when the plaintiff's argument "has at least a foothold in all four *MIT* paradigms," *Doe v. Trs. of Bos. Univ.*, No. CV 24-10619-FDS, 2024 WL 4700161, at *4 (D. Mass. Nov. 6, 2024); *see also Doe v. Trs. of Bos. Coll.*, No. 23-CV-12737-ADB, 2024 WL 816507, at *3 (D. Mass. Feb. 27, 2024), but at the same time, no single factor—such as a reasonable fear of severe harm—is "a *sine qua non* for allowing plaintiffs to seek Doe status." *MIT*, 46 F.4th at 74 (internal quotation omitted).

## ARGUMENT

### I. The Circumstances and First Circuit Guidelines Warrant Anonymity

#### a. The Motion for Anonymity Implicates Two of the "General Categories" Identified by the First Circuit

John Does' request to proceed anonymously falls directly under two of the First Circuit's generalized categories for anonymity: reasonable fear of retaliation and the deterrent effect on similarly situated individuals. *See MIT*, 46 F.4th at 71-72.

##### i. *Reasonable Fear of Retaliation*

There is no bright-line test to determine what constitutes a "reasonable[] fear[]" of retaliation or "severe harm" in the First Circuit. *Id.* at 71. Instead, the First Circuit incorporates the Ninth Circuit's test, which holds that (1) "physical harm presents the paradigmatic case for allowing anonymity" (but that other types of harm are cognizable) and (2) "the surrounding context" determines "the reasonableness of the plaintiffs' fears." *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1043-44 (9th Cir.

8

2010); *see also MIT*, 46 F.4th at 71 (quoting Ninth Circuit cases applying this test); *Doe v. Mills*, 39 F.4th 20, 26 (1st Cir. 2022) (same). "[w]hat is relevant is [whether] plaintiffs were threatened, and [whether] a reasonable person would believe that the threat might actually be carried out." *Kamehameha Sch.*, 596 F.3d at 1044 (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1071 (9th Cir. 2000)).

Here, John Does readily meet this standard. John Does have already "experienced numerous documented incidents of harassment and retaliation as a result of taking a stand against antisemitism." John Doe #1 Decl. ¶ 4; John Doe #2 Decl. ¶ 4. This includes the October 18 assault on John Doe #1, the adverse grading decisions faced by John Doe #2, and the long list of online and in-person harassment directed specifically at both John Does. John Doe #1 Decl. ¶¶ 5-32; John Doe #2 Decl. ¶¶ 6-38; TAC ¶¶ 543-45. These events establish a need for anonymity that goes far beyond that which John Does are required to prove. Under the standard adopted by the First Circuit, "plaintiffs are not required to prove that the defendants intend to carry out the threatened retaliation," but only that "a reasonable person would believe that the threat might actually be carried out." *Kamehameha Sch.*, 596 F.3d at 1044 (quoting Advanced Textile Corp., 214 F.3d 1071). Yet, Plaintiff Does here have established that many of the threats against them have *already been carried out*.

Additionally, the threatened harm that John Does face is at least as severe as that faced by other plaintiffs who have been allowed to proceed under pseudonyms. For example, this Court has held that the potential for "psychological harm" can

9

weigh in favor of anonymity, *Trs. of Bos. Coll.*, 2024 WL 816507, at *3, and other district courts have rendered similar decisions for "allegations concerning sexual relationships," "homosexuality," and "religious beliefs." *Doe v. Butler Univ.*, 22-CV-01828, 2022 WL 18540513, at *3 (Nov. 18, 2022) (collecting cases). Here, John Does will not only face psychological harm if their names are made public, but also potentially even more physical harm than they have already suffered.

The fact that John Does' request meets this standard is enough for this Court to properly grant pseudonymity by itself. This Court has already recognized as much, granting Plaintiffs' April 26, 2024 "Unopposed Motion For Leave to File Under Seal Unredacted Declaration of SAA Member # 1," Dkt. No. 42, because the motion "fit[] neatly into at least one of the paradigms identified by the First Circuit of 'exceptional cases in which . . . anonymity ordinarily will be warranted.'" Dkt. No. 46 (quoting *MIT*, 46 F.4th at 71). Nevertheless, at least one other pseudonymity category applies in a manner that weighs heavily in favor of granting John Does' request.

### ii. *Deter Similarly Situated Students*

The other category that applies to this case is the "third paradigm," under "which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated." *MIT*, 46 F.4th at 71. In evaluating whether a case falls within this category, the First Circuit adopts the Third Circuit's emphasis on the "need to ascertain whether 'other similarly situated litigants [will] be deterred from litigating claims that the public would like to have litigated." *Id.* (quoting *Doe v. Megless*, 654 F.3d 404, 410 (3rd Cir. 2011)). Moreover, "[t]he First Circuit specifically cites, as typical examples," cases where "the injury litigated against would be

10

incurred as a result of the disclosure of the [party's] identity." *Trs. of Bos. Univ.*, 2024 WL 4700161, at *4 (quoting *MIT*, 46 F.4th at 71).

John Does have again established that pseudonymity is appropriate for this case. If John Does' identities are made public, there is no question that other students who have experienced similar incidents of harassment and violence at Harvard will be deterred from seeking judicial relief. This deterrent effect would be in no small part due to the further threats John Does would face due to their efforts. In this sense, "the injury litigated against would be incurred as a result of the disclosure of [John Does'] identity"—John Does filed this lawsuit to hold Harvard accountable for fostering an environment where antisemitic harassment flourishes due to its indifference and inaction, and preventing other students from litigating additional incidents of harassment by exposing John Does' identities would only allow this hostile environment to persist. *Trs. of Bos. Univ.*, 2024 WL 4700161, at *4 (quoting *MIT*, 46 F.4th at 71).

Moreover, this Court has recognized that, when students are "challenging the fairness of an institutional process, and the institution has been identified," "the public's interest in the identity of [the] plaintiff" is of "minimal value." Trs. of Bos. Univ., 2024 WL 4700161, at *4 (quoting *Doe v. Purdue Univ.*, 321 F.R.D. 339, 343 (N.D. Ind. 2017)). Instead, the public's interest is in the fairness of the institutional process itself, which is directly implicated by John Does' suit. *See, e.g.*, TAC ¶¶ 1-19.

Likewise, this interest is implicated by Harvard's hypocritical response to the suit, protecting those who harass Israeli and Jewish students while going after the

11

victims with the hostile litigation tactics described above. As such, additional "parties who wish to litigate the fairness of [Harvard's] proceedings are less likely to do so if it would require waiving their confidentiality," which means this case also "fits neatly" into paradigm three. *MIT*, 46 F.4th at 71.

### b. Harvard Will Not Be Prejudiced by Anonymity

In the interest of fairness, courts often consider whether pseudonymity will prejudice the defendant when deciding whether to grant a plaintiff's request. A crucial component of this inquiry is whether the defendant will be prejudiced by its lack of knowledge of the plaintiff's identity, which could create "difficulties in discovery" and prevent defendants from advancing meritorious defenses. *See, e.g.*, *Butler Univ.*, 2022 WL 18540513, at *3.

Here, Harvard cannot plausibly claim that it will be prejudiced due to any of these factors. Harvard already knows John Does' identities, is already collecting their email communications, and can freely "prosecute any claims that have legal merit." *Id.* In short, the minimal-to-non-existent potential for prejudice resulting from John Does' pseudonymity weighs heavily in favor of granting Plaintiffs' request.

### c. The Totality of Circumstances Warrant Anonymity

Preventing disclosure of Plaintiffs' personal information is proper "after weighing competing interests," such as when public access would interfere with the party's "privacy rights." *United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013) (citation omitted). As demonstrated here, hiding a plaintiff's identity "is particularly important" in cases where their "cause is unpopular; once the participants lose their anonymity, intimidation and suppression may follow." *Sexual Minorities of Uganda*

12

*v. Lively*, 2015 WL 4750931, at *4 (D. Mass. Aug. 10, 2015) (citation omitted). Indeed, "on past occasions, revelation of the identity of [a Jewish individual on Defendant's campus] has exposed [him] to . . . threat of physical coercion . . . and other manifestations of public . . . hostility." *Id.* (citation omitted).

Moreover, allowing the Plaintiffs to proceed pseudonymously would be consistent with this Court's practice of redacting personal information in similar situations. *See e.g.*, *United States v. Swartz*, 945 F. Supp. 2d 216, 221 (D. Mass. 2013) (denying a motion to modify a protective order to disclose identifying information due to documented incidents of harassment and retaliation against individuals connected to the investigation); *United States v. Regeneron Pharms., Inc.*, 2023 WL 3061505, at *5 (D. Mass. Apr. 21, 2023) (unsealing a deposition transcript while requiring the redaction of the witness's name and other personally identifiable information due to concerns about retaliation and harassment"); *see also Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 75 (D.R.I. 1992) (allowing a transgender plaintiff to proceed anonymously due to minimal evidence that the public interest in disclosure outweighs the plaintiff's security concerns).

The First Circuit has also recognized that "[w]hen a student (or former student) files suit against a school and moves for pseudonymity . . . courts cannot ignore the background confidentiality regime [related to the Family Educational Rights and Privacy Act of 1974] in assessing the circumstances relevant to a request for pseudonymity." *MIT*, 46 F. 4th 61, 75. In cases involving student lawsuits against their schools, the First Circuit has also acknowledged that "[i]t makes little sense to

13

lift the veil of pseudonymity that—for good reason—would otherwise cover these proceedings simply because the university erred and left the accused with no redress other than a resort to federal litigation." *Id.* at 76 (quoting *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016)). Here, Plaintiff Does are suing their own school and should, therefore, be afforded a level of privacy to protect their safety.

Finally, the circumstances warrant anonymity based on Harvard's previous litigation positions and Harvard's out-of-court conduct.

First, this Motion is based on circumstances nearly identical to those presented in Plaintiffs' earlier "Unopposed Motion For Leave to File Under Seal Unredacted Declaration of SAA Member # 1" filed on April 26, 2024. Dkt. No. 42. In that motion, Plaintiffs "argue[d] that if his identity is made public, SAA Member #1 may face discrimination, harassment, and retaliation." Harvard did not "contest the reasonableness of this fear." *Id.* Accordingly, this Court allowed the unredacted declaration of SAA Member #1 to be filed under seal to protect SAA Member #1's identity and privacy interests. Harvard has since suggested that the motion to seal was based on the fact that SAA Member #1 (now John Doe #2) was not a named plaintiff in the lawsuit. But that was neither an express or implied basis for the motion to seal, nor a reason underlying the Court's order granting the motion.

Second, Harvard's out-of-Court conduct weighs strongly in favor of relief. Harvard has taken swift actions to protect antisemitic students and high-level officers from any public criticism or "doxxing." TAC ¶¶ 150-52. It cannot claim that it will be prejudiced when Jewish students—who have been severely harassed, bullied, and

14

physically assaulted—seek the same type of protection. Harvard has no interest in protecting those students, however. Indeed, Harvard is currently trying to intimidate John Does through its highly invasive and unnecessary email collection, readying their personal correspondences with no guardrails. Harvard's intentional disregard for John Does' well-being is precisely why relief is so necessary here. When students and faculty inevitably try to retaliate against John Does, Harvard will do nothing to protect them.

## CONCLUSION

For the reasons above, this Court should allow Plaintiffs John Does to proceed pseudonymously in this lawsuit.

Dated: March 21, 2025

Respectfully submitted,

*/s/ Jason Torchinsky*

Jason B. Torchinsky
John J. Cycon
HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK, PLLC
2300 N Street NW
Suite 643
Washington, DC 20037
(202) 737-8808
jtorchinsky@holtzmanvogel.com
jcycon@holtzmanvogel.com

Mark I. Pinkert
HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK, PLLC
119 S. Monroe Street
Suite 500
Tallahassee, FL 32301
mpinkert@holtzmanvogel.com

Jonathan Lienhard
HOLTZMAN VOGEL BARAN TORCHINSKY
& JOSEFIAK, PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
jlienhard@holtzmanvogel.com

*Counsel for Plaintiffs Alexander Kestenbaum, John Doe #1, and John Doe #2*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on March 21, 2025.

*/s/ Jason Torchinsky*
Jason B. Torchinsky
