IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER KESTENBAUM,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Defendant. | Case No. 1:24-cv-10092-RGS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Harvard's Motion to Compel is baseless. Plaintiff Alexander Shabbos Kestenbaum has worked in good faith with Harvard to streamline litigation so that both the Court and the Parties can avoid duplicative and unnecessarily burdensome discovery. Rather than agreeing to reasonable proposals, however, Harvard is trying to exploit the Parties' mutually agreed-upon stay of discovery and subsequent negotiations to make this case impossible to litigate on the merits. It has also used the opportunity to levy unwarranted personal attacks against Mr. Kestenbaum and to make unsubstantiated, irrelevant statements about the merits of this case.

To ensure a full and fair resolution on the merits, this Court should deny the Motion to Compel after vacating or amending the Scheduling Order,[1] or alternatively,

---

[1] See Dkt. 110 (Plaintiff's motion for leave to amend or, in the alternative, request to amend the scheduling order).

1

it should deny the Motion to Compel and afford Plaintiff additional time to respond to Harvard's discovery requests.

*First*, Mr. Kestenbaum did not waive his right to object to Harvard's requests for production. As Harvard acknowledges, the Parties agreed to a pause of discovery deadlines during settlement negotiations. Under that agreement, Harvard waited 86 days to respond to Plaintiff's document requests, missing its deadline by 56 days. Mr. Kestenbaum nonetheless honored the Parties' agreed-upon stay of discovery. Despite taking advantage of the pause for its own benefit, Harvard is now trying to retroactively and unilaterally claim that the pause was lifted at some unspecified date in December 2024.

But the parties never agreed to lift the pause, and Harvard did not communicate its view that the pause had been lifted until *after* the relevant deadline. Still, Plaintiff attempted to negotiate a reasonable discovery plan and indicated his intention to respond to Harvard's requests when that was resolved. That is the reason Plaintiff has not produced documents or responded—during the discovery pause, counsel for Plaintiff tried to make this process efficient for both the Parties and the Court. It is not because Mr. Kestenbaum is unwilling to litigate, as Harvard wrongly suggests. Plaintiff did not waive or intentionally relinquish any rights.

*Second*, while Harvard claims an urgent need for documents, it has produced only ten documents so far (all of which are publicly available), and it has refused to search for documents pertaining to several of Plaintiff's initial requests. At the same time, Harvard has already collected Mr. Kestenbaum's emails on the university email

2

platform. Through its invasive and one-sided collection—without guardrails or transparency—Harvard possess many of the relevant documents in this case, on both the Plaintiff and Defendant side. Because of Harvard's substantial advantage regarding document access, Harvard would not be prejudiced by this Court denying its Motion to Compel and giving Plaintiff an opportunity to serve responses and objections.

*Third*, while Plaintiff tried in good faith to coordinate and streamline discovery in light of the settlement delays and the unique procedural history of the case, Harvard has used its Motion to Compel to levy personal attacks against Mr. Kestenbaum and to opine about the merits of the case without any evidentiary support. This is a waste of judicial resources, and the Court should reject Harvard's gamesmanship. There was no need for motion practice at this time. These issues could have easily been resolved after the Motion to Amend, or by affording Plaintiff a short time to respond to the document requests, especially after Harvard exploited the discovery pause for its own benefit.

**Background**

This lawsuit began when Mr. Kestenbaum and his then co-plaintiff Students Against Antisemitism ("SAA") filed the original complaint on January 10, 2024, alleging that Harvard was deliberately indifferent to a hostile educational environment for Jewish students. *See* Dkt. 1. After filing an amended complaint as of right, Plaintiffs filed a second amended complaint on May 28, 2024. Dkt. 63.

On August 6, 2024, the Court issued an order granting in part and denying in part Harvard's Motion to Dismiss and denying the Motion to Strike. Dkt. 93. The Court allowed Plaintiffs' Title VI and contract claims to proceed. *Id.* at 18 ("[T]he facts as pled show that Harvard failed its Jewish students."). On October 2, 2024, the Plaintiffs in *Kestenbaum* served their first set of Requests for Document Production. Dkt. 112 ¶ 7. On November 5, 2024, the Court consolidated this matter for discovery purposes with a similar lawsuit brought by Brandeis Center and Jewish Americans for Fairness in Education. Dkt. 100. A day later, the Court issued the Scheduling Order establishing joint discovery deadlines. Dkt. 101.

At some point around this time, as Harvard explains, "the parties agreed to an informal pause of discovery while the parties—including Mr. Kestenbaum—pursued settlement." Harvard Mot. 7; *see also* Dkt. 112 ¶ 12. Based on this pause, Harvard did not respond to Plaintiffs' first requests for production until 86 days after service, on December 27, 2024, or 56 days after the 30-day deadline. Fed. R. Civ. P. 34(b)(2); *see also* Dkt. 112 ¶ 15. In its own response, Harvard refused to search for documents on several requests. Dkt. 112, Ex. B. That same day, Harvard served its first requests for production on both Plaintiff Kestenbaum and Plaintiff SAA. Dkt. 112 ¶ 16.

The Parties, however, did not mutually agree to lift the pause of deadlines, nor did Harvard express its own view that the pause for purpose of settlement had been lifted at some earlier date. Dkt. 112 ¶ 25. Instead, the Parties continued to negotiate for settlement well into January 2025. Represented by new counsel, Mr. Kestenbaum negotiated potential settlement with Harvard as late as January 15, 2025. Dkt. 112

4

¶ 20. SAA and Harvard then separately reached a settlement on January 20, 2025, and filed their dismissal the next day. On February 12, 2025, Harvard emailed counsel for Mr. Kestenbaum, claiming that he had missed the deadline for discovery objections and waived his right to respond. Decl. of M. Pinkert ¶ 6. At no point before sending this email did Harvard represent that it believed that the stay had been lifted, nor did it provide any advanced notice that it now expected a 30-day response dating back to December 27, 2024. *Id.* ¶ 7; *see also* Dkt. 112 ¶ 25. Harvard also did not amend or re-serve updated requests that removed the requests for documents solely in SAA's possession and control. Decl. of M. Pinkert ¶ 8.

Shortly after, counsel for Plaintiff contacted Harvard to resolve these issues. It attempted to negotiate a new discovery schedule with Harvard in light of the stay of deadlines and new developments. During a call on February 14, 2025, counsel for Plaintiffs informed Harvard of its view that discovery deadlines had been paused and also informed Harvard that two new John Does sought to join Mr. Kestenbaum's lawsuit. Dkt. 112 ¶ 23. Further, counsel explained that because of the stay and the substantial factual overlap between the cases and likely consolidation (*see, e.g.*, Dkt. 68), the best path forward would be to file an amended complaint and reset discovery on a single track.

Ten days later, on February 24, 2025, Harvard for the first time expressed its view that the discovery pause had been lifted at some point back in December 2024, and that it did not consent to the Plaintiff's proposal to amend the complaint joining John Does and streamlining discovery for efficiency. Dkt. 112 ¶ 27 & Ex. B. Plaintiff

5

responded again, explaining why the amendment proposal was most efficient for the Court and the Parties, as it would avoid two tracks of litigation and duplicative discovery. Dkt. 112 ¶¶ 26, 29. Harvard rejected this proposal again on March 7, 2025. Dkt. 112 ¶¶ 29, 30 & Ex. B.

On March 5, 2025, Harvard made its first document production from Plaintiff's October 2, 2024 requests. That production consisted of ten documents, all of which are Harvard policies that are publicly available. Dkt. 112 ¶ 28. It has not made any other production as of this filing.

At the same time, Harvard has been collecting Mr. Kestenbaum's emails, as well as the emails of potential John Doe plaintiffs—even though it is objecting to their ability to join in this lawsuit. Dkt. 112 ¶ 27 & Ex. B. But Harvard has refused to disclose what guardrails, if any, it has in place to ensure that it is only extracting documents that are relevant to the litigation. Decl. of M. Pinkert ¶¶ 9-16. It has stated that outside lawyers are reviewing the documents, but not that they are filtering the documents for relevance to this case. *Id.* ¶¶ 9, 10, 16.

In its Motion, Harvard repeatedly claims that Mr. Kestenbaum does not wish to litigate this case. *See* Harvard Mot. 7-9. To the contrary, Mr. Kestenbaum has been ready, willing, and able to litigate the case and engage in discovery. Instead, as counsel for Plaintiff explained in several communications, there have already been substantial delays in the case because of mutually agreed upon pauses; and on top of that, two new plaintiffs are proposing to join the lawsuit. Accordingly, counsel for the

Plaintiff explained that resolving scheduling issues and consolidation, first, would be the most efficient path forward. Dkt. 112, Ex. B.

## Argument

### I. Mr. Kestenbaum Did Not Waive Any Rights Because the Parties Agreed To Stay Discovery Deadlines During Negotiations and Never Mutually Agreed To Lift the Stay

Harvard's sole argument is that Mr. Kestenbaum waived his right to respond and object to its December 27, 2024 document requests, which were served on both Mr. Kestenbaum and SAA. Harvard Mot. 10; *see also* Dkt. 112 ¶ 14. But Mr. Kestenbaum did not waive any rights because Harvard agreed to a pause of discovery pending settlement negotiations. Harvard was negotiating with Mr. Kestenbaum as recently as January 15, 2025, and settled with SAA on January 21, 2025. Because the stay was based on settlement discussions, and because the Parties did not mutually agree to lift the stay, Mr. Kestenbaum did not waive any rights. Harvard's "gotcha" email on February 12, 2025, and retroactive assertion on February 24, 2025, do not suffice to establish that Mr. Kestenbaum intentionally relinquished any rights.[2] He continued to press his right that, in light of the stay and ongoing scheduling discussions, he intended to respond when those issues were resolved.

Taking advantage of the discovery pause itself, Harvard missed its 30-day deadline to respond to Plaintiff's October 2, 2024 discovery requests by 56 days. Harvard cannot exploit the Parties' mutual agreement on the one hand, and then

---

[2] Harvard's gamesmanship is further evidenced by its decision not to amend and re-serve the discovery requests, notwithstanding that many of the requests were directed at Plaintiff SAA, which had settled and voluntarily dismissed its claims. *See* Decl. of M. Pinkert ¶ 8.

7

retroactively hold Mr. Kestenbaum to that agreement on the other. *See, e.g.*, *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995) ("[A] court called upon to do equity should always consider whether the petitioning party has acted in bad faith or with unclean hands."); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11, 15 (1st Cir. 2007) ("[W]hen a district court considers whether or not to award equitable relief, one factor that it must consider is the extent to which the plaintiff has engaged in certain misconduct . . . related to the merits of the controversy between the parties." (internal citation omitted)).

Moreover, counsel for Mr. Kestenbaum was trying to reach a mutually agreeable discovery plan considering the already lengthy delays in the case and potential addition of new plaintiffs. During this time, Mr. Kestenbaum did not knowingly or intentionally relinquish any rights. *See, e.g.*, *Bonner v. Triple S Mgmt. Corp.*, 68 F.4th 677, 684 (1st Cir. 2023) ("whether the objections are waived, however, remains in the court's discretion," and the district court did not abuse its discretion in finding objections were not waived because, among other factors, the opposing party "did not show prejudice from the delay"); *Hamelin v. Kinder Morgan, Inc.*, No. 3:21-cv-30054-MGM, 2022 U.S. Dist. LEXIS 227568, at *9 (D. Mass. Dec. 19, 2022) (plaintiffs did not waive objections "[w]here the discovery requests are extensive, the plaintiffs made efforts to respond to discovery and to cooperate in efforts to narrow and focus the parties' disputes, and Defendants have not been significantly delayed in mounting their defense").

This Court should reject Harvard's gamesmanship. Although Plaintiff negotiated for settlement and tried to resolve discovery issues in good faith, Harvard is trying to exploit the agreement and negotiations for its advantage. This case should be resolved on the merits and on a full record. *See Malot v. Dorado Beach Cottages Assocs. S. En C. Por A*, 478 F.3d 40, 43 (1st Cir. 2007) (noting "the strong presumption in favor of deciding cases on the merits"); *Farm Family Life Ins. Co. v. Haacke*, No. 16-12415-IT, 2018 U.S. Dist. LEXIS 210446 (D. Mass. Nov. 19, 2018) (same).

## II.   While Harvard Has Produced Just Ten Documents, It Has Been Collecting Plaintiff's Emails

Despite Harvard's claims that litigation is moving forward on a normal track toward a May 25 discovery deadline, that deadline would be impossible to meet after a four-month, mutually agreed upon pause. Further, Harvard has produced only ten documents to date in response to Plaintiff's October 2, 2025 requests because it, too, understood there was a stay in place. It did not make its first meager production until five months later (apparently to create the false impression that this case is moving forward); and, at the same time, it has declined to even respond to several of Plaintiff's requests, thereby setting up numerous litigation disputes that will take time to resolve.

While it claims litigation is moving apace, and that it needs Mr. Kestenbaum's documents immediately, Harvard in fact has already collected and is reviewing many of those documents through its unilateral email collection. Accordingly, even if this case were to proceed on the current schedule, Harvard cannot claim prejudice by Mr. Kestenbaum's effort to reset and streamline discovery. To the contrary, Harvard is at

9

a substantial advantage at this stage. It now possesses many or most of the relevant documents in this case, having all of Harvard's documents and the emails from Mr. Kestenbaum's (and John Does') @harvard.edu email accounts. Yet it has only produced ten documents thus far. This discovery imbalance and impending discovery deadline favor only Harvard, not Plaintiff.

### III. Harvard Is Exploiting This Dispute To Attack Mr. Kestenbaum and Make Unsubstantiated Claims About the Merits of the Case

Counsel for Plaintiff has attempted in good faith to coordinate on discovery, considering the settlement delays and potential joinder of new plaintiffs. Contrary to Harvard's assertions, *that* is the sole reason for the delay, *not* because Mr. Kestenbaum is unwilling to litigate.

Harvard knows this, and it knows the entire dispute is merely about the counsel for the Parties negotiating procedure. Harvard originally was willing to entertain Plaintiff's proposal to streamline discovery, and it did not reject the proposal until February 24, 2025. The Parties had weeks of back-and-forth negotiations and discussions.

Nonetheless, Harvard now spills most of its ink attacking Mr. Kestenbaum, one of its former students who endured severe and pervasive antisemitism at Harvard. *See* TAC ¶ 12. Rather than working reasonably with opposing counsel to make discovery more efficient for both the Parties and the Court, Harvard exploits this procedural dispute to blame the victim and impugn his motives.

Harvard further claims—without any support or substantiation—that it is working to address antisemitism. *See* Harvard Mot. 1, 3. That unsubstantiated

10

attorney argument, unsupported by declarations or affidavits, bears no relevance to the narrow procedural issue here. This Court should reject Harvard's Motion, which is baseless as a matter of fact and law. It is instead part of a broader campaign to damage Mr. Kestenbaum and deter him from vindicating his legal rights.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Compel Production of Documents or, in the alternative, give Plaintiff additional time to serve responses and objections.

Dated: March 27, 2025

Respectfully submitted,

*/s/ Mark I. Pinkert*

Jason B. Torchinsky
John J. Cycon
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N St. NW
Suite 645
Washington, DC 20037
202-737-8808
jtorchinsky@holtzmanvogel.com
jcyon@hotlzmanvogel.com

Douglas S. Brooks
LIBBY HOOPES BROOKS &
MULVEY PC
260 Franklin St.
Suite 1920
Boston, MA 02110
617-338-9300
dbrooks@lhbmlegal.com

Mark I. Pinkert
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St.
Suite 500
Tallahassee, FL 32301
850-270-5938
mpinkert@holtzmanvogel.com

Jonathan Lienhard
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
540-341-8808
jlienhard@holtzmanvogel.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on March 27, 2025.

*/s/ Mark I. Pinkert*
Mark I. Pinkert
