**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ALEXANDER KESTENBAUM,

Plaintiff,

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

Defendant.

Case No. 1:24-cv-10092-RGS

**HARVARD'S OPPOSITION TO PROPOSED PLAINTIFFS JOHN DOE #1 AND JOHN DOE #2'S MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY**

## INTRODUCTION

Harvard has been, and remains, steadfast in its commitment to protecting the safety and security of all its students. Consistent with that commitment and its obligations under the Family Educational Rights and Privacy Act ("FERPA"), Harvard takes steps to safeguard student privacy wherever possible and appropriate and to prevent the unnecessary disclosure of its students' personal identifying information.

In civil litigation, however, pseudonymity is the rare exception, not the rule. Where, as here, adult students opt to pursue legal action in public proceedings against their current or former university, they must do so consistent with the rules that govern litigation. And, except in extremely limited factual circumstances not presented here, those rules do not permit plaintiffs to pursue litigation pseudonymously. John Doe #1 and John Doe #2 (collectively, the "Proposed Plaintiffs") cannot meet their burden to demonstrate that pseudonymity is warranted in this case. In fact, the Proposed Plaintiffs' identities and involvement in the underlying events giving rise to their claims are, by their own admission, already well-known at Harvard (if not beyond), such that granting them pseudonymity here would not provide any practical benefits or have any meaningful implications.

## BACKGROUND

Mr. Kestenbaum and Students Against Antisemitism ("SAA") first brought this suit on January 10, 2024. The original complaint contained factual allegations detailing the experiences of Mr. Kestenbaum and five anonymous SAA members, including Proposed Plaintiff John Doe #2, referred to at that time as "SAA Member 1." *See* Dkt. 1, ¶ 15. The original complaint also described the October 18, 2023, alleged assault of Proposed Plaintiff John Doe #1. *See id.* ¶¶ 5,

96-97, 107, 115, 132-133, 140. Mr. Kestenbaum and SAA amended their complaint on March 29, 2024, Dkt. 32, adding more allegations related to Proposed Plaintiff John Doe #2's experiences, *id.* ¶¶ 190, 218, 224, 254. Harvard then moved to dismiss. Dkt. 35. In opposing that motion, Mr. Kestenbaum and SAA submitted a declaration from Proposed Plaintiff John Doe #2 detailing a firsthand account of his campus experience. Dkt. 42-1; Dkt. 48. Once that motion was fully briefed, Plaintiffs yet again sought leave to amend and filed a Second Amended Complaint on May 28, 2024, which added still more allegations about Proposed Plaintiff John Doe #2. *See* Dkt. 63, ¶¶ 250-252, 254-255. Meanwhile, the Louis D. Brandeis Center for Human Rights Under Law brought a parallel suit against Harvard on May 22, 2024, with a complaint that contained allegations from five anonymous Brandeis Center members, including Proposed Plaintiff John Doe #1 (identified in the complaint as "Member #4"). *See* Compl., *The Louis D. Brandeis Center for Human Rights Under Law v. President and Fellows of Harvard College*, No. 1:24-cv-11354-RGS (D. Mass. May 22, 2024) (hereinafter, *Brandeis Center*), Dkt. 1, ¶¶ 10-12, 24, 110-132, 144-162, 200-201.

In January 2025, Harvard announced that it had entered into settlement agreements with both of the organizations that had been litigating on behalf of the Proposed Plaintiffs: SAA (for John Doe #2) and the Brandeis Center (for John Doe #1). *See* Dkt. 104; *Brandeis Center*, Dkt. 81. These settlements contain multiple forward-looking commitments that Harvard has already begun to implement and will continue to implement over the course of the coming months and years, as a part of its ongoing work to address antisemitism on its campus.

On March 20, Mr. Kestenbaum and the Proposed Plaintiffs sought leave from this Court to file a Third Amended Complaint that added John Doe #1 and John Doe #2 as Plaintiffs. Dkt.

110. The following day, Mr. Kestenbaum filed a Motion for Leave to Proceed Pseudonymously on behalf of the Proposed Plaintiffs (hereafter, the "Motion"), Dkt. 117. As stated therein, Harvard opposes the Motion. *See* Dkt. 117. Although Harvard had explicitly indicated to counsel for Mr. Kestenbaum and the Proposed Plaintiffs that the certificate of conferral for the Motion should note Harvard's "intent to file an opposition," *see* Dkt. 112-2 at 2, the Motion states only that Harvard "objects to the Motion." Dkt. 117. Less than half an hour later, the Court entered an electronic order granting the Motion, Dkt. 120, before Harvard was permitted to file its brief in opposition and before the Declarations supporting the Motion were filed. *Compare* Dkt. 120 (granting motion at 4:02 pm) *with* Dkt. 121 (declarations of Does #1 and #2 with accompanying motion to seal filed at 4:06 pm). The Court's electronic order also does not cite or apply the exacting standard for proceeding pseudonymously, unlike the Court's prior order in this case allowing a non-plaintiff to submit a declaration anonymously. Dkt. 42. Accordingly, it is unclear to Harvard whether the Court intended to grant the Motion prior to considering the evidence submitted in support of the Motion and receiving Harvard's opposition, but to the extent it did, Harvard respectfully requests that this opposition be treated as a motion for reconsideration, because the Proposed Plaintiffs have not met the standard to proceed pseudonymously.

## **ARGUMENT**

Proposed Plaintiffs fail to carry the heavy burden to demonstrate that this is an "exceptional case" in which the interest in pseudonymity outweighs "the public interest in transparency." *Doe v. MIT*, 46 F.4th 61, 69-72 (1st Cir. 2022). There is a "strong presumption" against pseudonymity in civil suits, *id.* at 67, grounded in the public right to access and be

informed of judicial proceedings, which courts have explained is necessary to preserve public faith in our justice system, *id.* at 68-69, and the principle that "commonplace lawsuit-induced distress" is an insufficient basis to allow a party to avoid public scrutiny, *id.* at 70.  *See also Jakuttis v. Town of Dracut, Mass.*, 656 F. Supp. 3d 302, 350 (D. Mass. 2023) ("The public has a weighty interest in learning the identities of litigants in litigated judicial matters.  This typically overcomes any privacy interest the parties may have in remaining anonymous."); *Doe v. Rentgrow, Inc.*, 2023 WL 4354000, at *2 (D. Mass. July 5, 2023) ("If plaintiff intends to pursue a civil remedy, he or she should do so openly.").  Accordingly, "[t]he party seeking pseudonymity bears the burden of rebutting the strong presumption against it" and must demonstrate that its interests in so proceeding "outweigh[] the public's interest in transparency." *MIT*, 46 F. 4th at 73, 77.

      The Proposed Plaintiffs fail to clear this high bar.  First, the Proposed Plaintiffs' Motion, Declarations, proposed Third Amended Complaint, and the surrounding circumstances all demonstrate that the very publicity which they are seeking to avoid is already a fact, and that pseudonymity would thus serve no purpose.  Second, the Proposed Plaintiffs cannot demonstrate a reasonable fear of harm that would follow if they cannot proceed pseudonymously and choose to continue pursuing litigation.  Third, the Proposed Plaintiffs fail to establish that other similarly situated individuals would be discouraged from coming forward if they were not permitted to do so pseudonymously.  Finally, the totality of the circumstances weigh decisively against pseudonymity.  The Proposed Plaintiffs' Motion should thus be denied.  In the alternative, to the extent it has already ruled on the Motion, this Court should reconsider its initial decision.

## I. THE PROPOSED PLAINTIFFS' INVOLVEMENT IN ISSUES AT THE CENTER OF THIS CASE IS ALREADY KNOWN

"Pseudonymity will never be justified when the public disclosure that the party seeks to forestall is already a fact." *MIT*, 46 F.4th at 72 n.3; *see also Doe v. Trs. of Bos. Univ.*, 2024 WL 4700161, at *6 (D. Mass. Nov. 6, 2024) (same); *Kansky v. Coca-Cola Bottling Co. of New England*, 492 F.3d 54, 56 n.1 (1st Cir. 2007) (denying motion to proceed anonymously when the identity of the movant "ha[d] already been made publicly available").

Here, the Proposed Plaintiffs' identities, their involvement in incidents at issue in this litigation, and the fact that they are Jewish and Israeli Harvard students who have been critical of Harvard, are well known.

As to John Doe #1, pseudonymity is entirely inappropriate given the multiple prior disclosures of his identity in public news articles and the corresponding public knowledge of his involvement in the facts giving rise to his claims. Plaintiff John Doe #1 has been identified in several news reports as having been involved in the October 18 incident central to his allegations in the Complaint. *See, e.g.*, Mike Damiano, *At Harvard, a confrontation during a protest erupts in political controversy – and lands in court*, BOSTON GLOBE (May 26, 2024) ("Last October, [John Doe #1], a Harvard Business School student, walked through a pro-Palestinian demonstration on his campus."); Tonya Alanez, *Hate crime charges dismissed against pro-Palestinian Harvard grad students in protest clash*, BOSTON GLOBE (Feb. 10, 2025) ("[John Doe #1], who is Jewish and was a first year business student, told authorities he was accosted by pro-Palestinian protesters while using his cell phone to record the rally."); Matan Josephy, *Judge Dismisses Hate Crime Charges Against Harvard Graduate Students*, THE CRIMSON, (February 12, 2025) ("A video of the Oct. 2023 confrontation shows Tettey-Tamaklo and Bharmal approaching [John Doe #1], who

was attempting to film the faces of protesters."); Asher Montgomery, *Harvard Grad Students Plead Not Guilty of Assault at Protest, Say HUPD Bias Prompted Charges*, THE CRIMSON (Nov. 16, 2024) (also identifying John Doe #1). Indeed, John Doe #1 himself acknowledges that the Boston Globe's "report on the assault . . . revealed [his] identity." Dkt. 118 at 4. That public reporting by the Boston Globe was informed by John Doe #1's own attorney. Mike Damiano, *At Harvard, a confrontation during a protest erupts in political controversy – and lands in court*, BOSTON GLOBE (May 26, 2024) ("[A] video compilation of the incident . . . was provided to the Havard police *and to the Globe* by [John Doe #1's] attorney." (emphasis added)).

The arguments for pseudonymity put forth by John Doe #1 cannot survive in the face of this prior disclosure. On this point, a comparison with this Court's decision in *Trs. of Bos. Univ.*, 2024 WL 4700161, at *6, is illustrative. There, the court found that pseudonymity was warranted, in part, because if the movant were forced to litigate in his own name, then going forward his name would forever be associated with the allegations in the case (which were not matters of public knowledge) such that "a simple Internet search or background check would connect him with this dispute and these allegations immediately." *Id.* Here, in contrast, John Doe #1's name has been known to the public.

As to John Doe #2, the Motion and his Declaration in support thereof demonstrate that his identity and involvement in the issues and incidents central to the claims in this lawsuit are also well known. The Motion asserts that John Doe #2's involvement in certain events discussed in the Complaint led "a group of students" to "protest[] outside of the HLS Dean's office, specifically calling for [his] expulsion," *id*. at 5; that he "repeatedly argued" with at least one professor "about [his] pro-Israel stance," *id.*; and that at least one student has repeatedly posted

about him on social media and shared John Doe #2's name, and allegations about misconduct on the part of John Doe #2, with Harvard, John Doe #2 Decl. ¶ 18-19.  Where John Doe #2's involvement in, and views on, the issues underlying the litigation are so well-known and widely understood that there are protests identifying him held outside of the Harvard Law School Dean's office, he cannot plausibly argue that pseudonymity would provide any purpose or benefit here.  *See Doe v. Freydin*, 2021 WL 4991731, at *2 (S.D.N.Y. Oc. 27, 2021) (argument that pseudonymity is necessary to prevent retaliation "has no purchase where, as here, the defendants already know the plaintiff's identity" such that pseudonymity "would do nothing to protect him" from retaliation).  Further, John Doe #2's declaration does not aver that throughout the time since inception of this case, where, again, he appeared as "SAA Member #1", he has maintained in confidence his participation in this lawsuit.

## II.    PROPOSED PLAINTIFFS FAIL TO DEMONSTRATE A REASONABLE FEAR OF UNUSUALLY SEVERE PHYSICAL OR MENTAL HARM

The Proposed Plaintiffs wholly fail to demonstrate a reasonable fear of unusually severe physical or mental harm that would result if they were forced to litigate in their own names.  Had they done so, Harvard would take a different position.  But Proposed Plaintiffs have not.

First, as discussed above, the fact that the Proposed Plaintiffs' identities and involvement in the matters giving rise to their claims are already known by the University community, if not the general public, belies any argument for their reasonable fears of harm if forced to litigate in their own names.  *See supra* pp. 6-8.

The Declarations offered by Plaintiffs do not reflect or discuss any specific threats that have been made against them, let alone any threats related to their criticisms of, or potential

participation as Plaintiffs in a lawsuit against, Harvard.[1] Courts have repeatedly emphasized that "to justify the exceptional relief of proceeding anonymously, plaintiff[s] must establish with sufficient specificity the incremental injury that would result from disclosure of [their] identity." *Freydin*, 2021 WL 4991731, at *2; *see also MIT*, 46 F.4th at 67 ("If commonplace lawsuit-induced distress were enough to justify the use of a pseudonym, anonymity would be the order of the day: Does and Roes would predominate."); *Does 1-3 v. Mills*, 39 F.4th 20, 26 (1st Cir. 2022) (Plaintiffs failed to satisfy the reasonable fear test where they relied only on "generalized assertions" and did "not establish any non-speculative present harm from disclosure."). Accordingly, Courts have rejected claims that do not present a "particularized showing of harm" beyond that which is normally associated with litigation, *Williams v. EEOC*, 2024 WL 1771287, at *2 (D. Mass. Apr. 23, 2024).

As the Proposed Plaintiffs concede, the relevant question in this analysis is "whether plaintiffs were threatened, and whether a reasonable person would believe that the threat might actually be carried out." Dkt. 118 at 8-9 (quoting *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1044 (9th Cir. 2010)). The Proposed Plaintiffs' filings are devoid of any such allegations. Each of the Proposed Plaintiffs' Declarations include conclusory and vague assertions that unspecified, allegedly antisemitic individuals have "issued threats both in-person and via social media." Decl. of John Doe #1 ¶ 21; Decl. of John Doe #2 ¶ 5. The

---

1 The Proposed Plaintiffs both attempt to rely on purported retaliation experienced by Mr. Kestenbaum. As previously disclosed to the Court and Plaintiff, *see* Decl, of Meredith Weenick ¶ 8, Dkt. 77, that employee was promptly placed on leave and then terminated for his conduct relating to Mr. Kestenbaum.

Declarations, however, lack any information regarding the particulars of these alleged threats including their substance, source, and level of severity. Where, as here, the Proposed "Plaintiff[s] submit no evidence of continued harm, nor any evidence of the severity or likelihood of retaliation or any physical or mental harm," they instead "simply project[] generalized harm, and more is required for [them] to satisfy [their] burden." *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 406 (S.D.N.Y. 2019); *see also Shakur*, 164 F.R.D. at 362 (declining to find movant had alleged requisite harm where she asserted that she had received death threats but did not provide any specific details about the threats).

In the absence of any allegations regarding specific threats, Plaintiffs' arguments for future retaliatory harms appear to be premised on alleged antisemitic or anti-Israeli sentiment on Harvard's campus generally (indeed, much of both the Motion and the Proposed Plaintiffs' Declarations are devoted to reiterating allegations included in the Third Amended Complaint). These allegations are insufficient to meet the reasonable fear standard necessary to demonstrate the need for pseudonymity. *See Mills*, 39 F.4th at 26 (Plaintiffs failed to satisfy the reasonable fear test where they relied only on "generalized assertions" and did "not establish any non-speculative present harm from disclosure"); *Freedom From Religion Found., Inc. v. Cherry Creek Sch. Dist.*, 2009 WL 2176624, at *5–6 (D. Colo. July 22, 2009) ("[T]he unsubstantiated potential for an adverse public reaction does not establish a compelling reason to depart from the requirements of Rule 10(a)."). In fact, many of these allegations plainly do not involve conduct directed at the Plaintiffs, *see, e.g.*, John Doe #2 Decl. ¶ 21, but rather reflect the same alleged general hostile environment that is at the center of the Complaint. *See Freydin*, 2021 WL 4991731, at *2 ("[A]t issue on a motion to proceed anonymously is whether public disclosure

would cause unique harm above and beyond any harm caused by the underlying events" (citing *Rapp v. Fowler*, 573 F.Supp.3d 521 (S.D.N.Y. 2021)). While these allegedly discriminatory communications and sentiments are undoubtedly "unpleasant and disturbing to the persons receiving them," they "simply do not threaten retaliatory harm to [John Does]." *Doe v. Pittsylvania County*, 844 F. Supp. 2d 724, 735 (W.D. Va. 2012); *see also Kamehameha*, 593 F.3d at 1045 (finding that hostile and threatening online comments, emails, and phone calls were insufficient to satisfy the pseudonymity test where the movant could not demonstrate that the individuals making the threats had an intention to carry them out).

Indeed, even to the extent that either "declaration alleges retaliation or bias," neither "alleges retaliation *in connection with bringing suit in court*," which is the requisite question. *Qualls v. Rumsfeld*, 228 F.R.D. 8, 11 (D.D.C. 2005) (emphasis added). Instead, the allegations concern purported harassment, discrimination, or biases by certain members of the Harvard community in general relating to political and religious issues. Accordingly, "[n]one of the evidence demonstrates that Doe plaintiffs are likely to face physical retaliation as a result of filing this lawsuit; therefore, they cannot proceed under pseudonyms." *Id.* at 12.

## III. PROPOSED PLAINTIFFS FAIL TO DEMONSTRATE THAT SIMILARLY SITUATED INDIVIDUALS WILL BE DISCOURAGED FROM LITIGATING

Proposed Plaintiffs also cannot establish that requiring them to litigate this case in their own names would have a deterrent effect on others seeking to bring similar claims. As the First Circuit has explained, the types of cases in which the concern for a deterrent effect might arise, and could justify anonymity, are those "involving intimate issues such as sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors"; where "a potential party may be implicated in illegal conduct, thereby risking criminal

prosecution"; or those in which "the injury litigated against would be incurred as a result of the disclosure of the [party's] identity" *MIT*, 46 F.4th at 71. In cases in which those concerns are implicated, Harvard routinely agrees to anonymity. Here, no such concerns—or comparatively similar concerns—are present.

First, Proposed Plaintiffs argue that this case involves sensitive issues warranting pseudonymity because of its relationship to religion. However, the case on which they rely involved specific threats of retaliatory physical harm related to participation in the lawsuit, Motion at 10 (citing *Doe v. Butler University*, 2022 WL 18540513, at *3 (S.D. Ind. Nov. 18, 2022) (citing *Doe v. Stegall*, 653 F.2d 180, 182 n.6, 186 (5th Cir. 1981)), and also involved a minor plaintiff—a factor which the court found to be "especially persuasive," *Stegall*, 653 F.2d at 186. Further, the First Circuit has explained that a nexus to religion or religious beliefs does not demand pseudonymity. *Mills*, 39 F.4th at 26 ("[R]eligious freedom cases . . . are often brought in the names of the plaintiffs."). Indeed, as one court has explained it, "[l]awsuits about religion frequently have a tendency to inflame unreasonably some individuals" but "this evidence does not establish the need for anonymity." *Pittsylvania County*, 844 F.Supp.2d at 738 (cleaned up). Finally, courts have previously rejected the arguments that "proceed[ing] anonymously is necessary to avoid discouraging future similarly situated plaintiffs" in discrimination cases generally. *Doe v. MaineGeneral Medical Center*, 2024 WL 3967172 (D. Me. Aug. 28, 2024); *see also Klein v. City of New York*, 2011 WL 3370402, at *1 (S.D.N.Y. Aug. 3, 2011) ("A plaintiff's use of a pseudonym is not justified by the mere fact that a case involves allegations of discrimination; such a result would require a plaintiff's anonymity in every one of the countless discrimination cases before this Court.").

Notably, a raft of cases has been brought by current and former students proceeding in their own names against universities for alleged antisemitism and violations of Title VI in the period since October 7, 2023, including, of course, Mr. Kestenbaum, who brought suit 15 months ago when a student at Harvard Divinity School. *See, e.g.*, *Ingber, et al., v. New York University*, Case No. 23-cv-10023 (S.D.N.Y.) (three students as named plaintiffs); *Yakoby, et al., v. University of Pennsylvania*, Case No. 23-cv-4789 (E.D. Pa.) (three students as named plaintiffs); *Forrest v. Trustees of Columbia University*, Case No. 24-cv-1034 (S.D.N.Y.) (one student as named plaintiff); *Gartenberg, et al., v. The Cooper Union for the Advancement of Science and Art*, No. 24-cv-2669 (S.D.N.Y.) (ten students as named plaintiffs); *Frankel, et al., v. Regents of the Univ. of Calif., et al*, No. 24-cv-4702 (C.D. Cal) (three students as named plaintiffs).

Proposed Plaintiffs point to only one alleged threat of retaliation Mr. Kestenbaum received in response to his bringing this suit which was met with a swift remedial response from Harvard. *See supra* p.9 n.1. And Mr. Kestenbaum's filing of this suit in his own name plainly did not discourage others from filing suit against Harvard, including the associational plaintiffs Brandeis Center and JAFE (not to mention the instant Proposed Plaintiffs).

## IV. PROPOSED PLAINTIFFS FAIL TO DEMONSTRATE THAT THE TOTALITY OF THE CIRCUMSTANCES REQUIRE PSEUDONYMITY

The totality of the circumstances overwhelmingly demonstrate why pseudonymity is inappropriate here.

First, Proposed Plaintiffs assert, incorrectly, that granting the Motion would pose no prejudice to Harvard, merely because Harvard itself already knows the identities of the Proposed Plaintiffs. This argument ignores the fact that this knowledge does not foreclose Harvard from experiencing prejudice in the event the Proposed Plaintiffs are permitted to proceed

pseudonymously. Indeed, courts have previously explained that such a situation can prejudice a party's ability to conduct discovery, *see Freydin*, 2021 WL 4991731, at *3 ("Although defendants know who plaintiff is, concealment of plaintiff's identity from the public can still hamper defendants' ability to conduct discovery."). Further, courts recognize that a private party such as Harvard may be prejudiced in other ways, such as by suffering reputational harm when forced to litigate publicly against an opposing party permitted to litigate pseudonymously. *See Doe v. Gong Xi Fa Cai, Inc.*, 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019) ("While suits against the government 'involve no injury to the Government's reputation," suits against private parties 'may cause damage to their good names and reputations'—which supports denying a request to proceed anonymously"); *Freydin*, 2021 WL 4991731, at *3 ("[P]laintiff levies serious, reputation-threatening accusations against defendants that have already garnered significant media attention. Courts have found that defending against such allegations publicly, while a plaintiff is permitted to make her accusations from behind a cloak of anonymity, is prejudicial." (cleaned up)).

The fact that Proposed Plaintiff John Doe #2 was previously permitted to submit a sealed declaration as a non-party does not in any way bear on the appropriateness of pseudonymity now, where John Doe #2 seeks to join the litigation as a plaintiff. "Courts have found that nonparties have a 'stronger case for anonymity' than a party who brings an action," *Doe v. MIT*, 2022 WL 16554725, at *2 (D. Mass. Oct. 31, 2022) ("*MIT II*"). And, contrary to the Proposed Plaintiffs assertions otherwise, John Doe #2's status as a nonparty was central to this Court's ruling on that unopposed motion. *See* Dkt. 46 (citing case law discussing anonymity for nonparties before stating: "to protect the privacy interests of *non-party* SAA Member #1,

plaintiffs may redact his name from the public version of his declaration.") (emphasis added). Accordingly, a far more particularized showing is now required here than was at that earlier stage. *See MIT II*, at *2 ("[L]itigants must be prepared to accept the public scrutiny that is an inherent part of public trials' by electing to use the courts." (internal quotation marks omitted)).

Proposed Plaintiffs' argument that pseudonymity is required under FERPA is also misplaced. The First Circuit has previously explained that "privacy concerns animating FERPA … become subject to the needs of the judicial process" and do not govern a court's decision "concerning the extent of public access to information on the court's docket." *MIT*, 46 F.4th at 75-76. FERPA was designed to prevent the disclosure by educational institutions of academic records relating to students; it is not designed to shield the identities of students in a situation where, as here, the students themselves have initiated the proceedings in which disclosure of their identity is the general rule. In addition, any argument that FERPA requires pseudonymity is belied by the fact that students' identities are routinely made public when they bring lawsuits against institutions for alleged Title VI violations, including in the numerous similar lawsuits brought by named plaintiffs discussed above. *See supra* p.13. And indeed, further underscoring that FERPA's principles do not extend to litigation, the laws regulations expressly provide that in instances where "an eligible student initiates legal action against an educational … institution, the … institution may disclose to the court, without a court order or subpoena, the student's education records that are relevant for the educational agency to defend itself." 34 CFR § 99.31(9)(iii)(B).

Moreover, the Motion is further undermined by the fact that "[t]he issues in this case will be concrete and factual, rather than abstract and legal, which militates towards disclosure of the

Plaintiff[s'] identit[ies]." *Gong Xi Fa Cai, Inc.*, 2019 WL 3034793, at *2. Accordingly, the Plaintiffs' reliance on *Trustees of Boston University*, for the proposition that pseudonymity is appropriate when a student challenges conduct by their university, is misplaced. This is not a case in which the Proposed Plaintiffs' "claim[s] center on disputed interpretation and application of regulatory law and internal university protocols," 2024 WL 4700161, at *5; the asserted claims concern "unlawful discrimination or other wrongful conduct," which is fact-intensive and in which the public has a significant interest. *Id.*

Finally, in a last-ditch attempt to overcome the significant hurdles they face, Proposed Plaintiffs rely on a host of wholly unrelated and irrelevant facts regarding Harvard's prior actions to protect individuals from harassment. They argue that, because Harvard has previously sought to minimize the public harassment of students and staff in other contexts, it is foreclosed from opposing pseudonymity here in the context of a federal litigation brought by two adults (one of whom had his identity published in multiple news outlets, including in connection with a video provided by his own lawyer). But none of those individuals for whom Harvard has worked to avoid harassment is a party to this litigation, and none of them is seeking to have this court act on their behalf against another party while remaining anonymous.

For the foregoing reasons, this Court should reject the Proposed Plaintiffs' Motion and require that, if they are to proceed with this litigation, they must do so in their own names.

## V. ALTERNATIVELY, THIS COURT SHOULD RECONSIDER ITS GRANT OF PLAINTIFFS' REQUEST FOR PSEUDONYMITY

It appears from the docket that the Court's order granting the Motion was issued prior to receipt of Proposed Plaintiffs' declarations, and the order does not discuss the standards governing pseudonymity requests. And Harvard did not have an opportunity to be heard,

although it certainly intended timely to oppose the motion. Given all these circumstances, the Court should reconsider its decision. *See Villanueva v. United States*, 662 F.3d 124, 128 (1st Cir. 2011) (citing *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008)) ("Reconsideration may be proper where the movant shows a manifest error of law or newly discovered evidence, or where the district court has misunderstood a party or made an error of apprehension.").

**CONCLUSION**

In light of the foregoing, Harvard respectfully requests that the Court deny Proposed Plaintiffs' Motion for Leave to Proceed Pseudonymously or, in the alternative, reconsider its prior decision granting that Motion.

Dated: March 28, 2025

Respectfully Submitted,

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

By its attorneys,

/s/ *Felicia H. Ellsworth*

Felicia H. Ellsworth, BBO #665232
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
Bruce M. Berman (*pro hac vice*)
Jeremy W. Brinster (*pro hac vice*)

Mark A. Kirsch (*pro hac vice*)
Gina Merrill (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
mkirsch@kslaw.com
gmerrill@kslaw.com
Tel: (212) 790-5329
Fax: (212) 556-2222

Zachary Fardon (*pro hac vice*)
KING & SPALDING LLP
110 N. Wacker Drive
Suite 3800
Chicago, IL 60606
zfardon@kslaw.com
Tel: (312) 764-6960
Fax: (312) 995-6330

WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel: (202) 663-6000
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
bruce.berman@wilmerhale.com
jeremy.brinster@wilmerhale.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2025, the foregoing document, entitled "Harvard's Opposition to Proposed Plaintiffs John Doe #1 and John Doe #2's Motion for Leave to Proceed Pseudonymously" was served in accordance with the Federal Rules of Civil Procedure and/or the Local Rules of the United States District Court for the District of Massachusetts upon the attorneys for the Plaintiffs in the above-entitled actions by electronic mail.

Dated:  March 28, 2025
        Boston, MA

By: */s/ Felicia H. Ellsworth*