**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALEXANDER KESTENBAUM, <br><br>        Plaintiff, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE, <br><br>        Defendant. | Case No. 1:24-cv-10092-RGS |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR LEAVE TO JOIN ADDITIONAL PLAINTIFFS**
**<u>AND FILE THIRD AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ..............................................................................................1

BACKGROUND ...............................................................................................3

    A.    Mr. Kestenbaum Has Known About the Proposed Plaintiffs—And Their Factual Allegations—For More Than A Year .......................................3

    B.    Harvard's Historic Settlement Agreements Have Left Only A Narrow Damages Claim By Mr. Kestenbaum Before This Court .......................................4

    C.    Mr. Kestenbaum Seeks To Expand This Litigation, Relying Largely On Dated Allegations He Could Have Brought At The Outset ................................6

ARGUMENT ...................................................................................................8

    I.    Mr. Kestenbaum Has Failed To Demonstrate Good Cause To Modify The Scheduling Order, As Required by Rule 16.................................................9

        A.    Mr. Kestenbaum Lacked The Diligence Required To Show Good Cause ............10

        B.    Amendment Would Prejudice Harvard By Expanding The Scope Of This Case.......................................................................................15

    II.    Permitting Amendment And Joinder At This Stage Would Add Complexity And Cause Further Delay............................................................17

    III.    The Court Should Not Modify The Current Scheduling Order ...................18

CONCLUSION ................................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J. Properites, LLC v. Stanley Black & Decker, Inc.*,
2013 WL 4046329 (D. Mass. Aug. 7, 2013) ........................................................................14

*Amyndas Pharms., S.A. v. Zealand Pharma A/S*,
48 F.4th 18 (1st Cir. 2022) ..................................................................................................11

*Boston Scientific Corp. v. Radius International, L.P.*,
2008 WL 1930423 (D. Mass. May 2, 2008) ........................................................................10

*Carmona v. Toledo*,
215 F.3d 124 (1st Cir. 2000) ................................................................................................11

*Carreiro v. Toter, LLC*,
2021 WL 3726939 (D. Mass. Aug. 3, 2021) ........................................................................10

*Doe v. Massachusetts Institute of Technology*,
46 F.4th 61 (1st Cir. 2022) ..................................................................................................14

*Elliott v. USF Holland, Inc.*,
2002 WL 826405 (S.D. Ind. Mar. 21, 2002) ........................................................................17

*Grant v. News Group Boston, Inc.*,
55 F.3d 1 (1st Cir. 1995) ......................................................................................................15

*Great Lakes Insurance SE v. Andersson*,
338 F.R.D. 424 (D. Mass. 2021) ....................................................................................12, 15

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ................................................................................................15

*Klunder v. Brown University*,
778 F.3d 24 (1st Cir. 2015) ..................................................................................................15

*Kress Stores of Puerto Rico., Inc. v. Wal-Mart Puerto Rico, Inc.*,
121 F.4th 228 (1st Cir. 2024) ..............................................................................................17

*Maroney as Trustee of Premiere Realty Trust v. Fiorentini*,
673 F. Supp. 3d 62 (D. Mass. 2023) ..............................................................................10, 14

*Miceli v. JetBlue Airways Corp.*,
914 F.3d 73 (1st Cir. 2019) ............................................................................................10, 12

*O'Connell v. Hyatt Hotels of Puerto Rico,*
    357 F.3d 152 (1st Cir. 2004)..................................................................10, 11, 12, 15

*O'Neal v. Cargill, Inc.,*
    178 F. Supp. 3d 408 (E.D. La. 2016) ...................................................................18

*Massachusetts ex rel. Powell v. Holmes,*
    2022 WL 20505709 (D. Mass. Feb. 4, 2022) ..................................................11, 13

*RFF Family Partnership, LP v. Ross,*
    814 F.3d 520 (1st Cir. 2016) ................................................................................18

*Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.,*
    730 F.3d 23 (1st Cir. 2013)...................................................................................19

*Savoy v. White,*
    139 F.R.D. 265 (D. Mass. 1991)...........................................................................11

*Steir v. Girl Scouts of the USA,*
    383 F.3d 7 (1st Cir. 2004).................................................................................10, 15

*Stepanischen v. Merchants Despatch Transportation Corp.,*
    722 F.2d 922 (1st Cir. 1983) ................................................................................15

*Stuart v. Town of Framingham,*
    2018 WL 11241962 (D. Mass. Nov. 15, 2018) .....................................................11

*Tracey v. Massachusetts Institute of Technology,*
    332 F.R.D. 50 (D. Mass. 2019)............................................................................12

*Trans-Spec Truck Services, Inc. v. Caterpillar Inc.,*
    524 F.3d 315 (1st Cir. 2008)................................................................................13

**Rules**

Fed. R. Civ. P. 12.....................................................................................................17

Fed. R. Civ. P. 13.....................................................................................................17

Fed. R. Civ. P. 15.........................................................................................10, 11, 14

Fed. R. Civ. P. 16.................................................................8, 9, 10, 11, 12, 14, 15

Fed. R. Civ. P. 20.....................................................................................................17

Fed. R. Civ. P. 21.....................................................................................................17

iii

D. Mass. Local Rule 15.1(a) ................................................................................11, 12

**Docketed Cases**

*The Louis D. Brandeis Center for Human Rights Under Law v. President and
Fellows of Harvard College*, No. 1:24-cv-11354-RGS (D. Mass.)................2, 3, 4, 6, 7, 9, 10

**Other Authorities**

Amponsah et al., *Harvard Yard Closed Overnight After Vandalism of University
Hall, John Harvard Statue*, Harvard Crimson (Oct. 10, 2024), https://www.
thecrimson.com/article/2024/10/10/yard-closure-huid-vandalism/ ...........................................8

Burns, *Harvard, Other Universities Crack Down On Israel-Hamas War Protests*,
Boston Globe (Sept. 30, 2024),
https://www.bostonglobe.com/2024/09/30/metro/college-protest-restrictions-
free-speech/ ................................................................................................................................8

Edwards & Montgomery, *Police Investigating Antisemitic Stickers Discovered
Near Harvard Hillel*, Harvard Crimson (Oct. 15, 2024),
https://www.thecrimson.com/article/2024/10/15/antisemitic-stickers-outside-
hillel/ ...........................................................................................................................................8

Hung & Lippit, *Harvard Law Students Banned From Library Over Study-In*,
HOOP Says at Rally, Harvard Crimson (Nov. 1, 2024),
https://www.thecrimson.com/article/2024/11/1/hoop-rally-gaza-divestment/ .........................8

Press Release, *Harvard and Students Against Antisemitism Announce Settlement
of Lawsuit*, Harvard University (Jan. 21, 2025),
https://www.harvard.edu/media-relations/2025/01/21/press-release-settlement-
harvard-saa/ .................................................................................................................................5

Press Release, *The Brandies Center and Jewish Americans for Fairness in
Education Agree with Harvard to Settle Title VI Litigation*, Harvard
University (Jan. 21, 2025), https://www.harvard.edu/media-
relations/2025/01/21/press-release-settlement-harvard-brandeis-ctr-jafe/. ..............................5

Shah, *Faculty Members Suspended From Harvard's Main Library After 'Study-
In' Protest*, Harvard Crimson (Oct. 25, 2024),
https://www.thecrimson.com/article/2024/10/25/faculty-members-suspended-
harvard-library/ ...........................................................................................................................8

## <u>INTRODUCTION</u>

Harvard is deeply committed to protecting its Jewish and Israeli students and ensuring that its campus is a place free from harassment and discrimination. Following the tragic terrorist attack of October 7, 2023, Harvard bolstered resources for students experiencing discrimination, implemented new policies to ensure respectful protest and dissent, and took appropriate action to investigate complaints. And in January 2025 Harvard reached wide-ranging settlement agreements with Students Against Antisemitism ("SAA") and the Louis D. Brandeis Center for Human Rights for Human Rights Under Law and Jewish Americans for Fairness in Education (collectively, the "Brandeis Center"), by which Harvard further committed to robust measures that have been heralded by Jewish leaders as steps every university should follow, steps that reinforce Harvard's ongoing work to confront and eradicate antisemitism from its campuses.

These settlements left Mr. Kestenbaum as the sole remaining plaintiff, with only claims for compensatory, retrospective money damages. Yet Mr. Kestenbaum—who, as plaintiff, bears the burden of proving his claims—has refused to move this litigation forward. Rather than respond to discovery requests, produce any documents, or notice any depositions, he has chosen to air grievances and cast aspersions through social media. In the meantime, Harvard has continued to fulfill its discovery obligations by serving responses and objections to discovery requests, amending its responses and its disclosures to reflect the narrowed case, and producing documents. Now, with the deadline for fact discovery just seven weeks away, Mr. Kestenbaum seeks to upend the schedule for this litigation that was first filed in January 2024 by joining new plaintiffs—a member of SAA and a member of the Brandeis Center—and filing a proposed Third Amended Complaint. Dkt. 110.

This motion comes much too late and provides no adequate justification for its tardiness. The deadline set by the Court to join additional parties and amend pleadings passed on December 6, 2024, three-and-one-half months prior to Mr. Kestenbaum's motion.  That deadline may now only be modified upon a showing of good cause, which Mr. Kestenbaum cannot make. The proposed Third Amended Complaint makes that clear, adding allegations that relate primarily to events that took place over a year ago and that were detailed long ago both in the multiple prior pleadings in this case, Dkts. 1, 32, 63, and in the complaint filed in parallel litigation brought by the Brandeis Center, Compl., *The Louis D. Brandeis Center for Human Rights Under Law v. President and Fellows of Harvard College*, No. 1:24-cv-11354-RGS (D. Mass. May 22, 2024) (hereinafter, *Brandeis Center*), Dkt. 1.  Yet Mr. Kestenbaum waited to seek leave to amend and join new parties until after the parties fully briefed multiple motions to dismiss; the Court heard oral argument and decided those motions; this Court entered, then revised, the scheduling order; this Court's deadline to amend all pleadings and join any new parties passed; and SAA and the Brandeis Center settled with Harvard.  Then, with the discovery period running, he waited another two months.  Good cause requires diligence, not delay.

Amendment and joinder are also improper because they would prejudice Harvard. Joining John Doe #1, a student in the Harvard Business School Class of 2025, Dkt. 121-2, and John Doe #2, a student in the Harvard Law School Class of 2026, Dkt 121-3 (collectively, the "Proposed Plaintiffs"), would change the contours of this damages-only case, adding new claims for injunctive relief even as Harvard works to implement the significant, substantive commitments it made to resolve its litigation with SAA and the Brandeis Center.[1]  Amendment and joinder would therefore expand the scope of discovery and its attendant burdens on Harvard.

---

[1] The John Does' Motion to Proceed Pseudonymously is pending before the Court.  Dkt. 117.

Mr. Kestenbaum's motion in fact largely ignores that he is seeking to join additional plaintiffs, making no attempt to explain how these Proposed Plaintiffs from different schools, alleging different facts, and seeking different relief meet the standard for joinder.

This Court should deny the motion.

**BACKGROUND**

A.    **Mr. Kestenbaum Has Known About the Proposed Plaintiffs—And Their Factual Allegations—For More Than A Year**

Mr. Kestenbaum has been familiar with the Proposed Plaintiffs and their alleged experiences at Harvard—and they with this litigation—since Mr. Kestenbaum and SAA first brought suit on January 10, 2024. The original complaint in this case contained factual allegations detailing the experiences of Mr. Kestenbaum and five pseudonymous SAA members, including John Doe #2, referred to at that time as "SAA Member 1." *See* Dkt. 1, ¶ 15. The original complaint also described an alleged assault upon John Doe #1 that took place at Harvard Business School on October 18, 2023. *See id.* ¶¶ 5, 96-97, 107, 115, 132-133, 140. Mr. Kestenbaum and SAA amended their complaint on March 29, 2024, Dkt. 32, expanding on their factual allegations related to John Doe #2's experiences, *id.* ¶¶ 190, 218, 224, 254. Harvard then moved to dismiss. Dkt. 35. In opposing that motion, Mr. Kestenbaum and SAA submitted a sealed declaration from John Doe #2 providing an account of his campus experience. Dkt. 42-1; Dkt. 48. Once that motion was fully briefed, Mr. Kestenbaum and SAA again sought leave to amend their complaint, and, over Harvard's opposition, were allowed to file a Second Amended Complaint, the now-operative complaint in this action, on May 28, 2024. Dkt. 63. That complaint added more allegations about John Doe #2. *See id.* ¶¶ 250-252, 254-255.

In the meantime, the Brandeis Center brought a parallel suit against Harvard on May 22, 2024. *See Brandeis Center*, Dkt. 1. The *Brandeis Center* complaint focused in large part on

3

allegations related to John Doe #1, identified in the *Brandeis Center* complaint as "Member #4," *id.*, ¶ 24, describing his alleged assault and his concerns about Harvard's handling of the subsequent investigation, *see id.* ¶¶ 10-12, 24, 110-132, 144-162, 200-201.  The Court granted in part and denied in part Harvard's motions to dismiss both complaints—Mr. Kestenbaum and SAA's operative complaint on August 6, 2025, Dkt. 93, and the *Brandeis Center* complaint on November 5, 2024, *Brandeis Center*, Dkt. 73.  The Court then consolidated the cases for discovery purposes and, on November 6, 2024, entered a scheduling order stating, "[a]ll amendments to the pleadings and/or joinder of additional parties shall be completed by 12/6/24." Dkts. 100, 101.  The Court set the close of fact discovery for May 23, 2025.  Dkt. 101.

## B.    Harvard's Historic Settlement Agreements Have Left Only A Narrow Damages Claim By Mr. Kestenbaum Before This Court

Throughout this litigation, Harvard has remained focused on providing a welcoming, open, and safe environment free from harassment and discrimination.  Even as Harvard has defended its actions in Court, it has worked continually to improve campus life for all its community members.  To this end, Harvard finalized settlement agreements in January 2025 with SAA and the Brandeis Center.  *See* Dkt. 104; *see also Brandeis Center*, Dkt. 81.  Under these settlements, Harvard has implemented multiple forward-looking commitments and will continue to do so over the course of the coming months and years as a part of its ongoing work to address antisemitism on its campus.  These commitments, detailed in the papers accompanying Harvard's Motion to Compel Production of Documents, Dkts. 113-114, include incorporation of the International Holocaust Remembrance Alliance ("IHRA") definition of antisemitism, and consideration of the IHRA's accompanying examples, into Harvard's Non-Discrimination and Anti-Bullying Policies ("NDAB") to the extent they are relevant to discriminatory intent; the publication of a Frequently Asked Questions ("FAQ") document to provide additional guidance

on the application of the NDAB to Jewish and Israeli identity; annual reporting that details Harvard's responses to complaints of discrimination or harassment based on Title VI-protected traits, with a lookback at responses since October 1, 2023; assessment of Harvard's treatment of antisemitism complaints against its treatment of complaints based on allegations of other forms of bias; the hiring of a designated individual responsible for ensuring that Title VI and the NDAB are enforced equally; and additional training and educational opportunities related to antisemitism.  These commitments were further bolstered by a voluntary resolution agreement Harvard reached with the U.S. Department of Education's Office for Civil Rights in January 2025, under which Harvard agreed to review and revise as necessary its procedures for receiving, processing, and investigating discrimination and harassment on the basis of shared ancestry, including Muslim, Jewish, Arab, and Israeli identity.

These efforts meet and even exceed those taken by other universities.  In dismissing their claims against Harvard, SAA praised Harvard's "proactive approach to implementing effective long-term changes" and its commitment to "specific, meaningful actions to combat antisemitism, hate and bias."[2]  Brandeis Center Founder and Chairman Kenneth Marcus thanked Harvard for its agreement to "ensure that Jewish students are able to learn and thrive in an environment free from anti-Semitic hate, discrimination, and harassment."[3]  These measures also far surpass the scope of relief that this Court could have ordered had SAA's or the Brandeis Center's claims gone to judgment, *see* Dkt. 93 at 24-25 ("[M]any of these requests are facially impractical or

---

[2] Press Release, *Harvard and Students Against Antisemitism Announce Settlement of Lawsuit*, Harvard University (Jan. 21, 2025), https://www.harvard.edu/media-relations/2025/01/21/press-release-settlement-harvard-saa/.

[3] Press Release, *The Brandies Center and Jewish Americans for Fairness in Education Agree with Harvard to Settle Title VI Litigation*, Harvard University (Jan. 21, 2025), https://www.harvard.edu/media-relations/2025/01/21/press-release-settlement-harvard-brandeis-ctr-jafe/.

outside the jurisdictional authority of the court"). They certainly go well beyond any judicial remedies that Proposed Plaintiffs John Doe #1 and John Doe #2 could possibly obtain.

As a result of Harvard's agreements with SAA and the Brandeis Center, both entities have dismissed their claims against Harvard with prejudice. *See* Dkts. 104, 105; *see also Brandeis Center*, Dkt. 81. Those dismissals leave Mr. Kestenbaum, who graduated from Harvard Divinity School in May 2024, as the sole plaintiff and with only a retrospective claim for compensatory damages, if any, that he can prove result from the purported loss of any educational opportunities or benefits. *See* Dkt. 93 at 10 & n.7.

### C.    Mr. Kestenbaum Seeks To Expand This Litigation, Relying Largely On Dated Allegations He Could Have Brought At The Outset

Mr. Kestenbaum nonetheless moved for leave to amend his complaint for the third time on March 20, 2025. Dkt. 110. This motion came three-and-one-half months after Mr. Kestenbaum's December 6, 2024, deadline to amend pleadings or join parties had passed, Dkt. 101; more than two months after, by his own account, Mr. Kestenbaum cut off settlement discussions with Harvard, Dkt. 111 at 6-7; and five weeks after Mr. Kestenbaum informed Harvard of his intention to file this motion, Dkt. 111 at 7.

The product of this extended delay is a proposed Third Amended Complaint that balloons Mr. Kestenbaum's complaint from 337 to 582 paragraphs. *Compare* Dkt. 63, *with* Dkt. 110-1. This latest pleading makes no more than superficial edits to the allegations involving Mr. Kestenbaum's own experiences at Harvard through his graduation in May 2024. Instead, it seeks to expand the scope of this case to include allegations that involve different plaintiffs, at different schools, over different periods of time. Many of his "new" allegations are, in fact, paragraphs that Mr. Kestenbaum simply lifts from the dismissed *Brandeis Center* complaint, often verbatim. *Compare* Dkt 110-1, ¶¶ 129-132, 158-166, 171-192, 193-203, 206-207, 209-211, 388-392, *with*

*Brandeis Center*, Dkt. 1, ¶¶ 139-142, 93-101, 110-132, 144-154, 155-156, 157-159, 103-107 (listed in corresponding sequence). This includes dozens of paragraphs about the alleged assault on John Doe #1 on October 18, 2023. *See* Dkt. 110-1 ¶¶ 171-203, 206, 209-211.[4] The only other proposed allegations that relate to John Doe #1 involve incidents that occurred in November 2023, long before the operative complaint in this case—or in *Brandeis Center*—was filed, *see id.* ¶¶ 264-266, or recount John Doe #1's continued frustration with the pace of the criminal investigation into his alleged assault, *see id.* ¶¶ 212-220.

The operative pleading in this case also already contained a handful of allegations concerning John Doe #2; Mr. Kestenbaum now seeks to add dozens of paragraphs alleging that John Doe #2 witnessed, experienced, or reported incidents that *predate* the Second Amended Complaint, and therefore could have been alleged when that document was filed.[5] *See, e.g.*, Dkt. 110-1 ¶¶ 222, 264-266, 396-411, 450-452. Mr. Kestenbaum also seeks to add allegations about a handful of incidents from the 2024-2025 academic year (when he was no longer a student). *See, e.g.*, *id.* ¶ 456, 459-460, 462-465. Some of these incidents were allegedly experienced by John Doe #2; some of them were not. But each incident was met with swift responses by Harvard, including increased security, law enforcement investigations, and discipline for policy violations

---

[4] Other allegations copied and pasted from the *Brandeis Center* complaint with minimal modifications include several paragraphs that pertain only to Brandeis Center members who have dismissed their claims against Harvard with prejudice, *see* Dkt. 110-1 ¶¶ 129-132; and several more that reference anonymous, undated social media posts, *see id.* ¶¶ 158-166, or events that neither Mr. Kestenbaum nor the John Does even allege they attended, *see id.* ¶¶ 388-393. That the proposed Third Amended Complaint is simply an effort to revive the now-dismissed *Brandeis Center* action is even more evident by the fact that it does not even replace the term "HKS Members"—a term defined in the *Brandeis Center* complaint but defined nowhere in the proposed Third Amended Complaint. *See id.* ¶ 129.

[5] Similarly, Mr. Kestenbaum proposes a number of additions and revisions that are unnecessarily cumulative, quoting and characterizing public documents that were available when he filed the operative complaint. *See, e.g.*, *id.* ¶¶ 17, 33-34, 48-85.

where appropriate.[6]  Mr. Kestenbaum also proposes new allegations involving statements, speaking events, and demonstrations that are not even alleged to have violated any policies, and some of which involved individuals and schools in no way connected to the Proposed Plaintiffs' experiences at Harvard.  *See, e.g.*, *id.* ¶¶ 452-455, 461, 466-469, 471-484.  And, rather than delete the allegations involving SAA members who have dismissed their claims against Harvard with prejudice, Mr. Kestenbaum just relabels them as allegations involving unnamed Jewish and Israeli students.  *See, e.g.*, Dkt. 110-1 ¶¶ 104-107, 147, 225-229, 231-232, 241, 245, 249, 286, 371, 373, 394, 431, 435-436.

## ARGUMENT

Mr. Kestenbaum's belated effort to amend his complaint and join Proposed Plaintiffs John Doe #1 and John Doe #2 should be rejected because he cannot satisfy Rule 16's requirement of good cause to justify amending this Court's scheduling order.  Mr. Kestenbaum did not act diligently, and amendment and joinder now would prejudice Harvard.  Amendment and joinder would also introduce further complexity and ensure further delay by expanding the scope of this case and raising new issues, including the inability of Mr. Kestenbaum and the Proposed Plaintiffs to satisfy the standard for permissive joinder.

---

[6] *See* Burns, *Harvard, Other Universities Crack Down On Israel-Hamas War Protests*, Boston Globe (Sept. 30, 2024), https://www.bostonglobe.com/2024/09/30/metro/college-protest-restrictions-free-speech/; Amponsah et al., *Harvard Yard Closed Overnight After Vandalism of University Hall, John Harvard Statue*, Harv. Crimson (Oct. 10, 2024), https://www.thecrimson.com/article/2024/10/10/yard-closure-huid-vandalism/; Edwards & Montgomery, *Police Investigating Antisemitic Stickers Discovered Near Harvard Hillel*, Harv. Crimson (Oct. 15, 2024), https://www.thecrimson.com/article/2024/10/15/antisemitic-stickers-outside-hillel/; Shah, *Faculty Members Suspended From Harvard's Main Library After 'Study-In' Protest*, Harv. Crimson (Oct. 25, 2024), https://www.thecrimson.com/article/2024/10/25/faculty-members-suspended-harvard-library/; Hung & Lippit, *Harvard Law Students Banned From Library Over Study-In*, HOOP Says at Rally, Harv. Crimson (Nov. 1, 2024), https://www.thecrimson.com/article/2024/11/1/hoop-rally-gaza-divestment/.

# I.    MR. KESTENBAUM HAS FAILED TO DEMONSTRATE GOOD CAUSE TO MODIFY THE SCHEDULING ORDER, AS REQUIRED BY RULE 16

*First*, under Rule 16(b), a scheduling order "may be modified only for good cause."  Mr. Kestenbaum and John Does #1 and #2 cannot demonstrate good cause for their failure to meet the Court's long-passed deadline to amend.  The touchstone of the good-cause standard is diligence in moving to amend the complaint once new parties or new factual allegations are known.  But Mr. Kestenbaum, as well as the Proposed Plaintiffs, have been familiar with the intricacies of this litigation for more than a year—at least since the original complaint filed in January 2024 detailed the Proposed Plaintiffs' experiences at Harvard.  The choice to exclude John Doe #1 and John Doe #2 as pseudonymously named plaintiffs from the first, second, and third iterations of the complaint in this case (as well as the *Brandeis Center* complaint)—even those complaints referenced them in many allegations—was a strategic choice made with knowledge of the facts at issue, and a belated desire to try a different tack does not supply good cause to modify the schedule.

*Second*, while no showing of prejudice to Harvard is necessary to deny modification under Rule 16(b), the prejudice that amendment and joinder will cause Harvard only underscores the lack of good cause.  With more than half the time allotted for discovery now passed, the proposed amendment and joinder will upend the current schedule entered by the Court, resulting in significant delay to the resolution of this matter.  The proposed Third Amended Complaint will expand the scope of the narrow damages claims Harvard now faces, adding factual allegations involving different schools, different time frames, different alleged harms, and a broad claim for injunctive relief.

### A.     Mr. Kestenbaum Lacked The Diligence Required To Show Good Cause

Mr. Kestenbaum's motion for leave to amend comes three-and-one-half months after the December 6, 2024, deadline to join parties or amend pleadings.  Dkt. 101.  At this point, leave to amend is no longer "freely given" under Rule 15.  Instead, once "the court issues a scheduling order setting a deadline for amendments to the pleadings," any "party wishing to file an out-of-time amendment must show good cause for delay under Rule 16(b)."  *Boston Sci. Corp. v. Radius Int'l, L.P.*, 2008 WL 1930423, at *1 (D. Mass. May 2, 2008) (citing *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)).  "Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment."  *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004).  Mr. Kestenbaum cannot meet this standard.

Waiting months to add known individuals and their well-understood factual allegations to the complaint is incompatible with the diligence Rule 16(b) requires.  Courts have said time and again that they do not "look kindly upon a plaintiff who seeks belatedly to amend h[is] complaint based on 'information that [he] had or should have had from the outset of the case.'"  *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019).  "If the moving party had the opportunity to obtain the relevant information and amend the complaint before the deadline, there is no good cause to allow late amendment."  *Carreiro v. Toter, LLC*, 2021 WL 3726939, at *2 (D. Mass. Aug. 3, 2021).  Indeed, courts routinely find a lack of diligence, and thus deny leave to amend, where (like here) the movants "knew *all* of the relevant facts" prior to the scheduling order's deadline to amend pleadings.  *See, e.g.*, *Maroney as Tr. of Premiere Realty Tr. v. Fiorentini*, 673 F. Supp. 3d 62, 67 (D. Mass. 2023).  As detailed above, the proposed Third Amended Complaint seeks to add as parties two individuals who have been identified since the inception of this litigation and have participated in this and the related, consolidated *Brandeis*

10

*Center* litigation from the beginning. *See supra* pp.3-4. These circumstances are fatal to a finding of good cause.

Moreover, this District's Local Rules emphasize that a party cannot establish good cause to amend if it fails to act promptly upon discovering new parties and new claims. "Local Rule 15.1(a) provides that '[a]mendment adding parties shall be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party.'" *Massachusetts ex rel. Powell v. Holmes*, 2022 WL 20505709, at *5 (D. Mass. Feb. 4, 2022). "[F]ailure to comply with the local rules may be an independent ground for denial of a motion to amend." *Id.* Courts therefore deny leave to amend when the movant previously amended the complaint and then seeks to add a new party for the first time "[d]espite knowing the existence of [the party] at the time the initial complaint was filed." *See Stuart v. Town of Framingham*, 2018 WL 11241962, at *1 (D. Mass. Nov. 15, 2018). There is no dispute that Mr. Kestenbaum and his attorneys have been aware of the identities of John Doe #1 and John Doe #2 since the time of filing of Mr. Kestenbaum's Second Amended Complaint (if not earlier).

Mr. Kestenbaum cites no case finding good cause to modify the schedule when a litigant who has overshot his deadline by months seeks to add parties and allegations he knew about well before the lapsed deadline. In fact, the cases on which he principally relies do not even apply Rule 16(b)'s good cause standard. Dkt. 111 at 10. They instead apply the far more forgiving standard of Rule 15(a). *See Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 38-39 (1st Cir. 2022); *Carmona v. Toledo*, 215 F.3d 124, 136 (1st Cir. 2000); *Savoy v. White*, 139 F.R.D. 265, 268-269 (D. Mass. 1991). But "Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely given' standard, governs motions to amend filed after scheduling order deadlines." *O'Connell*, 357 F.3d at 154. Application of this "more stringent" standard

11

"preserves the integrity and effectiveness of Rule 16(b) scheduling orders." *Id.*; *see also Miceli*, 914 F.3d at 86.  And under Rule 16(b)'s good cause standard, courts regularly find good cause lacking where a party has delayed for several months after discovering the facts alleged in a proposed amended pleading.  *See, e.g.*, *O'Connell*, 357 F.3d at 155 (denying motion for leave to amend because, "[f]or Rule 16(b) to operate effectively, litigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril" (cleaned up)); *Great Lakes Ins. SE v. Andersson*, 338 F.R.D. 424, 427 (D. Mass. 2021) (no good cause shown when movant "had earlier notice of—or good reason to suspect the existence of—th[e] cause of action" alleged in proposed amended complaint); *Tracey v. Massachusetts Inst. of Tech.*, 332 F.R.D. 50, 52 (D. Mass. 2019) (no good cause shown when movants "were aware of enough colorable evidence to assert their purported claim" months before moving to amend).

The settlements do not provide good cause to excuse this delay.  Mr. Kestenbaum could have sought leave to amend the complaint and add either or both of the Proposed Plaintiffs irrespective of any settlement discussions and long before the December 6, 2024 deadline. Instead, he elected for more than a year to pursue a litigation strategy that did not involve joining John Doe #1 or John Doe #2 as parties, despite knowing of their existence and even relying on them to furnish information for inclusion in his serial pleadings.  (Nor did either of the Proposed Plaintiffs seek to join the litigation as parties.)  Even now, the vast majority of allegations Mr. Kestenbaum seeks to add about Proposed Plaintiffs predate the operative complaint—if not the original complaint—in this action.  *See supra* pp.6-8.  Neither Rule 16(b) nor Local Rule 15.1(a) allow good cause to be established when "[t]here is no apparent reason, other than litigation strategy, why the [new parties] could not have been named in the version of the complaint that

was submitted" earlier.  *See Powell*, 2022 WL 20505709, at *5; *see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008) (movant could not show good cause based on "consequences of its litigation strategy").

Nor is good cause demonstrated by the Proposed Plaintiffs' initial participation as nonparties represented by SAA and the Brandeis Center or their decision not to join the settlement of their claims.  This Court's decision on Harvard's Motion to Dismiss, entered on August 6, 2024, put Proposed Plaintiffs on notice that the organizations pursuing litigation would not be able to seek monetary damages on their behalf, Dkt. 93 at 10 n.7, but they did not then seek to join the litigation at that time to seek compensatory damages.  Yet again, in December 2024, the Proposed Plaintiffs chose to remain on the sidelines of this litigation as their deadline to join as parties passed, and as Mr. Kestenbaum struck out on his own—publicly announcing his intent to continue litigating and bringing on two attorneys to appear in this case and represent his interests separate and apart from SAA's.  *See* Dkt. 112 ¶ 13; Dkt. 130 at 2 n.1 ("I'm not interested in settling with you idiots."); Dkts. 102-103 (December 6, 2024, Notices of Appearance by current counsel).[7]  Those choices were simply another facet of the litigation strategy that Mr. Kestenbaum and the Proposed Plaintiffs have apparently come to regret.  At the same time, the Proposed Plaintiffs' nonparty status has yielded strategic benefits throughout this litigation, including when this Court granted John Doe #2 leave to file a declaration under a pseudonym precisely because nonparties have a "stronger case for anonymity" than named

---

[7] Shortly thereafter, on December 9, 2024, Mr. Kestenbaum served a supplement to his Initial Disclosures that identified his current counsel as counsel for John Doe #2 in addition to himself. Meanwhile, Mr. Kestenbaum's current counsel had represented John Doe #1 since before they appeared as counsel for the Brandeis Center, whose Complaint relied heavily on John Doe #1's experiences, *see supra* pp.3-4.

parties.  *See* Dkt. 46 (quoting *Doe v. Massachusetts Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022)).

Even if the Court were to consider Mr. Kestenbaum and Proposed Plaintiffs' conduct only after the settlements were finalized on January 20, 2025—although it should not—they cannot establish good cause for delaying two more months before bringing this motion for leave to amend.  The finalization of settlement agreements with SAA and the Brandeis Center was not a "factual development[]" that supplies good cause to amend a pleading after the deadline has passed.  *Contra* Dkt. 111 at 10 (citing cases applying Rule 15, not Rule 16).  While "the unexpected discovery of new evidence" then included in amended factual allegations may furnish good cause under Rule 16(b), *see A.J. Props., LLC v. Stanley Black & Decker, Inc.*, 2013 WL 4046329, at *1 (D. Mass. Aug. 7, 2013), the settlements were neither "unexpected" nor "evidence" relevant to any factual allegations in the proposed Third Amended Complaint.  The allegations Mr. Kestenbaum seeks to add are instead, for the most part, the *same* allegations that were—or could have been—recounted in previous pleadings filed months ago.  *See supra* pp.6-8. Despite spanning 582 paragraphs, the proposed Third Amended Complaint references just a handful of events that occurred after this Court's deadline to amend passed on December 6, 2024, none of which alter the nature of the claims or excuse the failure to timely amend.[8] Because Mr. Kestenbaum "knew *all* of the relevant facts" by that date, and continued to delay, he cannot establish good cause.  *See Maroney*, 673 F. Supp. 3d at 67.

---

[8] These alleged events include two rallies in January 2025, Dkt. 110-1 ¶¶ 481-482, a student government resolution critical of Israel proposed in February 2025, *id.* ¶ 480, an alleged conversation between counsel John Doe #1 and outside investigators in February 2025, *id.* ¶ 205, proceedings in the state-court criminal inquiry into John Doe #1's alleged assault, *id.* ¶¶ 218-219, and Harvard's March 2025 notification that it would begin reviewing documents relevant to John Doe #1 and John Doe #2 in anticipation of this long-delayed motion, *id.* ¶ 494.

**B.      Amendment Would Prejudice Harvard By Expanding The Scope Of This Case**

While Harvard does not need to establish prejudice, because Mr. Kestenbaum's lack of diligence alone provides sufficient grounds to deny leave to amend, *see O'Connell*, 357 F.3d at 155 (lack of diligence forecloses relief under Rule 16(b) "irrespective of prejudice"); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [the moving] party was not diligent, the inquiry should end."), the prejudice that amendment and joinder will cause nonetheless "remains relevant" under Rule 16(b), *O'Connell*, 357 F.3d at 155.  Prejudice under Rule 16(b) includes "additional, prolonged discovery and postponement of trial," *Klunder v. Brown Univ.*, 778 F.3d 24, 34-35 (1st Cir. 2015); *see also Steir*, 383 F.3d at 12 (discussing "additional costs" of discovery and "a significant postponement of the trial").  Courts therefore deny leave to amend where the opposing party would have to undertake additional discovery burdens "to defend itself properly against the claims asserted in the amended complaint."  *See Grant v. News Grp. Bos., Inc.*, 55 F.3d 1, 6-7 (1st Cir. 1995); *see also, e.g.*, *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 933 (1st Cir. 1983) (finding prejudice where "the addition of new claims would likely have required additional discovery and caused further delay"); *Great Lakes Ins. SE*, 338 F.R.D. at 428 (similar).  Moreover, the prejudice caused by "protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."  *Steir*, 383 F.3d at 12.

This motion for leave comes over two months after Harvard reached expansive settlement agreements with SAA and Brandeis Center—organizations that represented the interests of John

15

Doe #2 and John Doe #1, respectively, throughout their involvement in this litigation.[9]  As part

of those agreements, Harvard made extensive, forward-looking commitments to combat

antisemitic discrimination and harassment; enhance student, faculty, and administrator training;

and bolster academic resources for the study of antisemitism.  The subsequent dismissal of

SAA's and Brandeis Center's claims narrowed this case substantially, leaving only Mr.

Kestenbaum's claims for monetary damages he allegedly incurred before graduating last May.

 Harvard's discovery efforts and trial planning have since been tailored to those focused

claims.  Following the dismissal of SAA from this matter, Harvard served amended Initial

Disclosures and amended Objections and Responses to Plaintiff's Revised First Set of Requests

for Production reflecting these narrowed claims, began reviewing documents relevant to these

narrow claims, and—now that a stipulated protective order has been entered, Dkt.120—is in the

process of producing documents relevant to these narrowed claims.  In contrast, Mr. Kestenbaum

has refused to even meaningfully confer regarding discovery while the instant motion is

pending—further revealing the dilatory tactics at issue here.  Amendment and joinder now would

upset the case schedule, introduce new injunctive claims, and potentially balloon the scope of

discovery, while rewarding Mr. Kestenbaum's continuous efforts to delay.  For example, Mr.

Kestenbaum proposes to add allegations involving the outside investigation and criminal inquiry

into John Doe #1's alleged assault, as well as Harvard's response to events over the past

academic year (that is, after Mr. Kestenbaum had graduated in May 2024), all of which would

introduce into Mr. Kestenbaum's damages-only litigation incidents involving different students,

---

[9] Notably, these organizations did not (and could not) seek damages on behalf of their individual
members, damages that Proposed Plaintiffs would now seek for the first time if they were
permitted to join Mr. Kestenbaum's complaint as individuals.  *See* Dkt. 93 at 10 n.7.

different schools, different decisionmakers, and different policies, all over different periods of time.  This prejudice warrants denial of leave to amend.

## II.     PERMITTING AMENDMENT AND JOINDER AT THIS STAGE WOULD ADD COMPLEXITY AND CAUSE FURTHER DELAY

Mr. Kestenbaum's motion ignores the other considerations that would further delay the case.  For instance, if leave to amend is granted, Harvard would be entitled to—and likely would—file a motion to dismiss the amended complaint under Rule 12, a motion that this Court has not addressed in the context of assessing John Doe #1 and John Doe #2's individual claims (as opposed to the organizational ones raised on behalf of multiple individuals by SAA and the Brandeis Center).  Nor has this Court considered the impact of the settlements into which Harvard entered on the availability of prospective relief for John Doe #1 and John Doe #2.

In addition, because Mr. Kestenbaum and Proposed Plaintiffs have not moved for joinder under Rule 20, this Court would need to address arguments Harvard might raise regarding misjoinder or severance under Rule 21.  Claims that "rest on different sets of supporting facts" are not properly joined.  *See Kress Stores of P.R., Inc. v. Wal-Mart P.R., Inc.*, 121 F.4th 228, 245 (1st Cir. 2024) (applying Rule 13(a) standard under Rule 20).  Even claims that allege "similar types of discriminatory acts" may not be properly joined if they involve "different facilities … at different times and/or by different supervisors."  *Elliott v. USF Holland, Inc.*, 2002 WL 826405, at *1 (S.D. Ind. Mar. 21, 2002).

Here, Mr. Kestenbaum, John Doe #1, and John Doe #2 each attend (or, in Mr. Kestenbaum's case, attended) different schools at Harvard, each of which has a separate campus (none of which includes Harvard Yard), a distinct student body, different administrators, and its own set of policies and procedures that cover student conduct and discipline.

17

John Doe #1's claims rest entirely on a single incident of alleged assault that took place on the Harvard Business School campus in Allston and his frustration with Harvard's response, *See* Dkt. 110-1 ¶¶ 172-222, 264-266, a set of facts that involves neither Mr. Kestenbaum nor John Doe #2.  Meanwhile, John Doe #2's claims hinge on allegations that Harvard responded unreasonably to events at Harvard Law School, *see, e.g.*, *id.* ¶¶ 224-232, 236-237, 240-246, 252, 255, 276-277, 279-281, 348, 378, 384-385, 395-411, 457-458, 462-469, 474-479, alleged events that did not involve Mr. Kestenbaum or John Doe #1.  Each Proposed Plaintiff, therefore, raises claims that would "require different witnesses and evidence" than Mr. Kestenbaum's, underscoring that joinder is improper and would prejudice Harvard.  *O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 424 (E.D. La. 2016).

Mr. Kestenbaum's argument that Harvard is "estopped" from opposing joinder (or consolidation) is meritless.  *Contra* Dkt. 111 at 13-14.  For judicial estoppel to apply, "a party's earlier and later positions must be clearly inconsistent."  *RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 528 (1st Cir. 2016).  In its motion to consolidate, Harvard took the position that the then-existing proceedings involved "a common party and common issues of fact or law."  Dkt. 68 at 3.  And they did—both proceedings involved Title VI claims against Harvard brought by associational plaintiffs that sought expansive injunctive relief on behalf of non-party students. That is no longer the case.  All that remains is Mr. Kestenbaum's time-bound monetary damages claim.  The Proposed Plaintiffs' individual claims rest on distinct factual allegations, and Harvard's opposition to their joinder is fully consistent with its earlier motion to consolidate.

## III.    THE COURT SHOULD NOT MODIFY THE CURRENT SCHEDULING ORDER

Mr. Kestenbaum argues in the alternative that, if this Court denies his motion for leave to amend, it should modify its scheduling order to extend discovery deadlines by at least six months.  Dkt. 111 at 17.  It should not.  Like Mr. Kestenbaum's untimely request to amend his

complaint, his request to extend discovery deadlines requires a showing of good cause. *See Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 26 (1st Cir. 2013). While Mr. Kestenbaum complains of "limited disclosures and an incomplete record," and "insufficient time … to schedule and take depositions," Dkt. 111 at 18, he neglects to mention that he refused for months to negotiate a stipulated protective order governing documents, Dkt. 123-4 at 2; Dkt. 123-5 at 3-4, 7-8; has made no effort to discuss Harvard's responses and objections, negotiate custodians and search terms, or notice depositions; and continues to refuse to produce any documents or respond to any of Harvard's document requests. Mr. Kestenbaum makes no effort to demonstrate that he has attempted to build an evidentiary record, notice any depositions, or otherwise move this litigation forward, because he has not. *See* Dkt. 114. Indeed, in light of Mr. Kestenbaum's failure to respond to discovery requests, this Court has ordered that Mr. Kestenbaum has waived his objections to Harvard's requests for production of documents and must produce responsive documents on April 7. Dkt. 131. His sole argument is that good cause exists because the parties were discussing settlement during part of the discovery period. Dkt. 111 at 17-18. But he cites no authority indicating that good cause exists to modify the schedule just because a party failed to pursue ongoing litigation while participating in settlement discussions that ultimately led nowhere.

## CONCLUSION

Harvard respectfully requests that the Court deny Mr. Kestenbaum's Motion for Leave to File a Third Amended Complaint.

19

DATED:  April 3, 2025

Respectfully Submitted,

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE

By its attorneys,

/s/ Felicia H. Ellsworth

| | |
|---|---|
| Mark A. Kirsch (*pro hac vice*) | Felicia H. Ellsworth, BBO #665232 |
| Gina Merrill (*pro hac vice*) | WILMER CUTLER PICKERING |
| KING & SPALDING LLP |   HALE AND DORR LLP |
| 1185 Avenue of the Americas | 60 State Street |
| 34th Floor | Boston, MA 02109 |
| New York, NY 10036 | Tel:  (617) 526-6000 |
| mkirsch@kslaw.com | Fax: (617) 526-5000 |
| gmerrill@kslaw.com | felicia.ellsworth@wilmerhale.com |
| Tel: (212) 790-5329 | |
| Fax: (212) 556-2222 | Seth P. Waxman (*pro hac vice*) |
| | Bruce M. Berman (*pro hac vice*) |
| Zachary Fardon (*pro hac vice*) | Jeremy W. Brinster (*pro hac vice*) |
| KING & SPALDING LLP | WILMER CUTLER PICKERING |
| 110 N. Wacker Drive |   HALE AND DORR LLP |
| Suite 3800 | 2100 Pennsylvania Avenue NW |
| Chicago, IL 60606 | Washington, DC 20037 |
| zfardon@kslaw.com | Tel:  (202) 663-6000 |
| Tel: (312) 764-6960 | Fax: (202) 663-6363 |
| Fax: (312) 995-6330 | seth.waxman@wilmerhale.com |
| | bruce.berman@wilmerhale.com |
| | jeremy.brinster@wilmerhale.com |

20

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2025, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Felicia H. Ellsworth

Felicia H. Ellsworth