IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER KESTENBAUM,<br><br>            Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>            Defendant. | Case No. 1:24-cv-10092-RGS |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF JOHN DOE #1 AND JOHN DOE #2'S MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY**

**INTRODUCTION**

By opposing John Does' request to proceed pseudonymously, Harvard again demonstrates its indifference to the safety and well-being of its Jewish students. While Harvard claims to be addressing antisemitism (Dkt. 114 at 1), and even though it touts its "anti-doxing" policies,[1] it nonetheless refuses to honor the letter and spirit of those policies when it comes to protecting Jewish students. After October 7, Harvard sprung to action to shield the lawless and antisemitic protestors from public identification. *See* Dkt. 118 at 2. And Harvard later promised that it would protect *all* students from unwanted "public disclosure" of "personal information" that would result in "harmful interpersonal aggression" by third parties.[2] Not so for Jews.

To proceed with pseudonyms in the First Circuit, John Does only need to establish that they "reasonably fear[] that coming out of shadows will cause [them] unusually severe harm (either physical or psychological)," *Doe v. MIT*, 46 F.4th 61, 70–72 (1st Cir. 2022), *or* that a lack of anonymity would deter similarly situated individuals, *Doe v. Town of Lisbon*, 78 F.4th 38, 46 (1st Cir. 2023) ("[T]he district court determines whether the case before it fits into *one* of the four [*MIT*] categories. If so, '*party anonymity ordinarily will be warranted*.'" (emphases added) (quoting *MIT*, 46 F.4th at 71)). John Does easily establish both. Harvard, by contrast, does not address the *Town of Lisbon* decision and does not offer any rebuttal evidence (save unsubstantiated attorney argument). The Motion should be granted.

---

[1] Alan Garber, et al., Guidance on Addressing Online Harassment (Sept. 5, 2024), https://www.harvard.edu/president/news/2024/guidance-on-addressing-online-harassment/.
[2] *See id.*

1

**ARGUMENT**

**A.** John Does are Jewish students who have already been subject to "unusually severe harm" by antisemitic students, staff, and faculty. *See generally* Dkt. 110-1 ("TAC"). John Doe #1 was assaulted on Harvard's campus, and his assailants still roam Harvard's campus. *Id.* ¶¶ 1, 168–86. And both John Does have endured severe and pervasive harassment from antisemitic agitators. *Id.* ¶¶ 16, 187–223, 224–89.

Harvard's Opposition ignores the high likelihood that the public identification of John Does as plaintiffs in this lawsuit—which seeks to remedy antisemitism—will provoke even more harassment, retaliation, and threats to their safety from antisemitic employees and students that wish to prevent those goals. *See, e.g.*, Dkt. 121-2 ("John Doe #1 Decl.") ¶¶ 4, 28 ("I have . . . experienced numerous documented incidents of harassment and retaliation *as a result of taking a stand against antisemitism*") (emphasis added); Dkt. 121-3 ("John Doe #2 Decl.") ¶¶ 4, 6, 11–15, 22–25 (similar). Rather than defend this case on the merits, Harvard wants to open the door for the antisemitic mob to chase off John Does and deter this lawsuit.

Harvard's counterargument that John Does' fear of retaliation is "conclusory" and "vague" (Dkt. 127 at 9) is bizarre. There is a plethora of evidence of severe antisemitism on campus—including irrefutable video evidence of an assault by an antisemitic mob, TAC ¶¶ 168–86, 192–95, Harvard's investigation establishing a hostile class environment and professor retaliation, *id.* ¶¶ 124–28, ex-President Claudine Gay refusing to condemn calls for the mass murder of Jews, *id.* ¶¶ 290–97, congressional investigations finding blatant and unaddressed antisemitism, *id.*

2

¶¶ 306, 313–19, explicit threats of violence against Jews, *id.* ¶¶ 341–63, and this Court's statement that "Harvard has failed its Jewish students." *Kestenbaum v. President & Fellows of Harvard Coll.*, 743 F. Supp. 3d 297, 310 (D. Mass. 2024). *Just yesterday*, the federal government sent a letter to Harvard stating that it "fundamentally failed to protect American students and faculty from antisemitic violence and harassment in addition to other alleged violations of Title VI and Title VII of the Civil Rights Act of 1964."[3] Harvard's argument that John Does do not have a real fear of harm is callous denialism and indifference. And its failure to rebut John Does' declarations with actual evidence is fatal to its Opposition.

**B.** Worse still, Harvard has tried to ensure that John Does would be outed before this Court could decide the pending Motion. In its Opposition, Harvard listed and quoted several articles that would prompt readers to search for and try to identify John Doe #1. *See* Dkt. 127 at 6.

Indeed, soon after Harvard's Opposition, journalists from the *Harvard Crimson* emailed the undersigned asking for comment on Harvard's brief, attaching that brief, and indicating that they would identify two current students as the John Does. The *Crimson* published an article the next day, doing just that. Having tipped off the *Crimson* through its filing, Harvard seemingly tried to circumvent this Court's ability to decide the Motion for itself. Beyond callous indifference, this is a broader strategy to intimidate John Does and deter Jewish students from suing.

Notwithstanding the *Crimson* identifying two students as John Does, the

---

[3] Josh Gruenbaum et al., Letter to Harvard (April 3, 2025).

3

Motion is not moot. A journalist's unconfirmed theory about John Does' identities is different from the students' identities being confirmed in court filings—and continually referenced in court records. Moreover, courts have discretion to grant pseudonymity even when a party's name was previously disclosed, as new harms can arise. *See Doe v. Aetna Life Ins. Co.*, 2016 U.S. Dist. LEXIS 194383, at *4 (D. Mass. Apr. 18, 2016) (plaintiff permitted to use pseudonym even though she "prosecuted her previous case against [defendants] in her own name," and rejecting argument that request for pseudonym was moot). The same goes for Harvard's arguments regarding the newspaper articles about John Doe #1 and the mob of students trying to get John Doe #2 expelled. *See* Dkt. 127 at 6–8. For any litigant trying to proceed anonymously, there will usually be a subset of witnesses or third parties who can personally identify the litigant by reviewing the facts. But, here, it is the ongoing identification in court filings that would most harm John Does, amidst the antisemitic fervor on campus.

    **C.** Harvard should not benefit from its own litigation conduct and indifference to John Does' safety. To the extent that John Does' allegations can be used by certain individuals to track them down and identify them, as Harvard suggests, it was Harvard's failure to protect them that made that possible in the first place. And, in the case of John Doe #1, Harvard's employee contributed to an article that outed him. Dkt. 118 at 4. Harvard's suggestion that John Doe #1's lawyer provided his name to a newspaper is false. A reporter, who is also a Harvard professor, contacted John Doe #1, likely learning his identity by way of his Harvard affiliation. John Doe #1's attorney specifically requested that the newspaper adhere to its general practice of

4

not identifying crime victims over their objection. The newspaper and Harvard professor identified John Doe #1 anyway, over his objection.

**D.** Harvard's remaining arguments are unpersuasive. Harvard argues that anonymity would hinder discovery. Dkt. 127 at 13–14. But Harvard does not offer a single example or explanation about *how* anonymity would hinder discovery—nor could it, as Harvard already knows who John Does are and has already collected their emails. Harvard also did not previously argue that anonymity through associational litigation would hinder discovery—yet John Doe #1 and #2 were members of the associations and their stories were part of the associational complaints. Accordingly, Harvard cannot now claim there is some unspecified hinderance to discovery.

Further, Harvard did not object to John Doe #2 filing an affidavit under seal. Contrary to Harvard's point that this was because John Doe #2 was not a party (Dkt. 127 at 14–15), the Plaintiffs did not make that argument before, and this Court did not grant the motion on that basis. Dkt. 46 ("[P]laintiffs argue that if his identity is made public, SAA Member #1 may face discrimination, harassment, and retaliation. *Harvard does not contest the reasonableness of this fear.*" (emphasis added)).

Harvard's opposition to pseudonymity is part of a litigation tactic that it believes is advantageous now, but it is not persuasive on the law, facts, or balance of competing interests. It also conflicts with Harvard's prior litigation positions and its own policies intended to protect current students, like John Does #1 and #2.

## Conclusion

The Court should grant the motion for John Does to proceed with pseudonyms.

5

Dated: April 4, 2025

Jason B. Torchinsky
John J. Cycon
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
2300 N St. NW
Suite 645
Washington, DC 20037
202-737-8808
jtorchinsky@holtzmanvogel.com
jcyon@hotlzmanvogel.com

Douglas S. Brooks
LIBBY HOOPES BROOKS &
MULVEY PC
260 Franklin St.
Suite 1920
Boston, MA 02110
617-338-9300
dbrooks@lhbmlegal.com

Respectfully submitted,
*/s/ Mark I. Pinkert*

Mark I. Pinkert
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St.
Suite 500
Tallahassee, FL 32301
850-270-5938
mpinkert@holtzmanvogel.com

Jonathan Lienhard
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
540-341-8808
jlienhard@holtzmanvogel.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on April 4, 2025.

*/s/Mark I. Pinkert*
Mark I. Pinkert